**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

MACK BUTLER, DASHAUN SIMS, CLYDE LOFTON,
PAUL ALVER, KEVIN KING, and RICKEY LYNCH,
on behalf of themselves and all others similarly situated,

*Plaintiffs,*

*vs.*                                                    11-cv-02602 (JS) (GRB)

SUFFOLK COUNTY, VINCENT F. DEMARCO, in his
individual and official capacity, JOSEPH T. CARACAPPA,
in his individual and official capacity, and JOHN P.
MEYERRICKS, in his individual and official capacity,

*Defendants.*

-----------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR CLASS CERTIFICATION

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000
Daniel H. R. Laguardia
Melissa J. Godwin
Alexis Scott Berkowitz

*Counsel for Plaintiffs*

NEW YORK CIVIL LIBERTIES UNION
125 Broad Street
New York, New York 10004
(212) 607-3300
Corey Stoughton
Taylor Pendergrass

*Of Counsel*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.   The Requirements For Class Certification.................................................... 3

II.  The Proposed Class Structure ...................................................................... 4

III. The Proposed Injunctive And Damages Classes Satisfy The Prerequisites Of
     Rule 23(a)............................................................................................................ 6

     A.   The Numerosity Requirement of Rule 23(a)(1) is Satisfied ................................. 6

     B.   The Commonality Requirement of Rule 23(a)(2) is Satisfied .............................. 9

     C.   The Typicality Requirement of Rule 23(a)(3) is Satisfied................................... 11

     D.   The Adequacy of Representation Requirement of Rule 23(a)(4) is
          Satisfied.......................................................................................................... 13

IV.  Classes Should Be Certified Under Rules 23(b)(2) And 23(b)(3) ............................... 15

     A.   An Injunctive Class Should Be Certified Under Rule 23(b)(2) ........................... 15

     B.   A Damages Class Should Be Certified Under Rule 23(b)(3) ............................... 17

          1.   Common Questions of Law and Fact Predominate ...................................... 17

          2.   A Class Action is Superior to Other Methods of Adjudication .................... 18

CONCLUSION..................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

### CASES

*All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, No. 08 civ. 1816,
2012 WL 360011 (E.D.N.Y. Jan. 27, 2012) ........................................................5

*Allen v. Cuomo*, 100 F.3d 253 (2d Cir. 1996).................................................................3

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)......................................13, 15, 19

*In re AMF Bowling Sec. Litig.*, No. 99 civ. 3023 (DC), 2002 WL 461513
(S.D.N.Y. Mar. 26, 2002) ...............................................................................4

*In re Ashanti Goldfields Sec. Litig.*, No. Civ. A. cv-000717 (DGT), 2004 WL 626810
(E.D.N.Y. Mar. 30, 2004) ..............................................................................19

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994)..........................9, 15

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000)...........13

*Boucher v. Syracuse Univ.*, 164 F.3d 113 (2d Cir. 1999).............................................7

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)..............................................................18

*Clarkson v. Coughlin*, 145 F.R.D. 339 (S.D.N.Y. 1993)...........................................3, 7

*Coco v. Inc. Village of Belle Terre*, 233 F.R.D. 109 (E.D.N.Y. 2005)........................19

*Coley v. Clinton*, 635 F.2d 1364 (8th Cir. 1980) ....................................................3, 16

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................6

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007)..........17

*Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D 194 (E.D.N.Y. 2005)....................8

*Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989) .......................................................12

*D.S. ex. rel S.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59 (E.D.N.Y. 2008) .............9, 10

*Dean v. Coughlin*, 107 F.R.D. 331 (S.D.N.Y. 1985).............................................3, 7, 15

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) ..............................................17, 18

*Dittimus-Bey v. Taylor*, 244 F.R.D. 284 (D.N.J. 2007) ...............................................13

*Dunn v. City of Chicago*, 231 F.R.D. 367 (N. D. Ill. 2003)............................................................17

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ........................................................12

*Eng v. Smith*, 849 F.2d 80 (2d Cir. 1988) ..........................................................................................3

*Fox v. Cheminova, Inc.*, 213 F.R.D. 113 (E.D.N.Y. 2003)...........................................................7, 8

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)..............................................................17

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988)................................................................................3

*Hiatt v. Cnty of Adams*, 155 F.R.D. 605 (S.D. Ohio 1994) ..........................................................8

*Hirschfeld v. Stone*, 193 F.R.D. 175 (S.D.N.Y. 2000)..................................................................12

*Ingles v. City of New York*, No. 01 Civ. 8279 (DC), 2003 WL 402565
    (S.D.N.Y. Feb. 20, 2003) ........................................................................................................12

*Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12 (2d Cir. 1971) ...........................5, 10

*Jones v. Goord*, 190 F.R.D. 103 (S.D.N.Y. 1999)........................................................................12

*Jones v. Smith*, 784 F.2d 149 (2d Cir. 1986)....................................................................................3

*Langley v. Coughlin*, 715 F. Supp. 522 (S.D.N.Y. 1989) ..........................................10, 17, 19, 20

*MacNamara v. City of New York*, 275 F.R.D. 125 (S.D.N.Y 2011)..............................................9

*Maneely v. City of Newburgh*, 208 F.R.D. 69 (S.D.N.Y. 2002) ..................................................20

*Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir. 1979), *vacated on other grounds sub nom.*
    *Lombard v. Marcera*, 442 U.S. 915 (1979) .......................................................................15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .....................................................3, 9, 12, 13

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ........................................................17

*In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ....................................11, 18

*In re Nassau Cnty. Strip Search Cases*, Nos. 99-CV-3126 (DRH), 99-CV-2844
    (DRH), 99-CV-4238 (DRH), 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) .........18, 19, 20

*Nicholson v. Williams*, 205 F.R.D. 92 (E.D.N.Y. 2001)................................................................9

*Ormiston v. Nelson*, 117 F.3d 69 (2d Cir. 1997)............................................................................6

*Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13 (2d Cir. 2003) .........................................16

*Powell v. Ward*, 487 F. Supp. 917 (S.D.N.Y. 1980) ......................................................................7

*Ray M by Juana D. v. Bd of Educ. of City School Dist. of N.Y.*,
    884 F. Supp. 696 (E.D.N.Y. 1995) ...........................................................................9

*Reynolds v. Giuliani*, 118 F. Supp. 2d 352 (S.D.N.Y. 2000).......................................................14

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)..................................................................7, 12

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001) ...............................11, 16

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ..................................................17

*Seekamp v. It's Huge, Inc.*, No. 09 Civ. 00018 (LEK), 2012 WL 860364
    (N.D.N.Y. Mar. 13, 2012).........................................................................................5, 18

*Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004).................................................................5

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134 (2d Cir. 2001) .................4

*Tyler v. Suffolk Cnty.*, 253 F.R.D. 8 (D. Mass. 2008)..................................................................10

*Tyson v. City of New York*, No. 97 Civ. 3762 (S.D.N.Y. filed May 22, 1997)..............................20

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (E.D.N.Y. 2000)....................18, 20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................................16

*Woe ex rel. Woe v. Cuomo*, 729 F.2d 96 (2d Cir. 1984) ..............................................................4

## RULES

Fed. R. Civ. P. 23(a) ........................................................................................................ *passim*

Fed. R. Civ. P. 23(b) ..............................................................................................4, 15, 18

Fed. R. Civ. P. 23(c)(4)(B) ...........................................................................................4

## OTHER AUTHORITIES

3B J. Moore & J. Kennedy, *Moore's Federal Practice* 23.40[1] ..................................................16

H.B. Newberg, *Newberg On Class Actions*, § 3.05 (2d ed. 1985)...................................................6

H.B. Newberg, *Newberg On Class Actions*, § 3.15 (2d ed. 1985)...................................................12

H.B. Newberg, *Newberg On Class Actions*, § 4.11 (2d ed. 1985)...................................................15

## INTRODUCTION

As this Court is well aware, current and former inmates of the Suffolk County

Correctional Facilities located at Riverhead and Yaphank (the "SCCF") have already brought

dozens of *pro se* actions seeking redress under the United States Constitution and the

Constitution of the State of New York for the inhumane conditions under which they are

incarcerated at the SCCF.  And, as this Court observed in its January 23, 2012 Order

consolidating 59 of those actions, Plaintiffs' claims all "assert[ ] similar unsanitary and

hazardous conditions at the SCCF."  *See* Or. 14, Jan. 23, 2012, ECF No. 327 (the "Consolidation

Order").  Indeed, the claims are virtually identical because the inhumane treatment is the result

of facility-wide practices and policies.  Plaintiffs now bring this motion for class certification to

further focus and facilitate their claims for relief.

In the Amended Class Action Complaint (the "Complaint")[1], Plaintiffs seek redress and

remedy for chronic exposure to, and injuries resulting from: human waste; mold-covered, rusty

showers smelling of sewage; inadequate ventilation; rust; vermin; freezing temperatures

exacerbated by leaking water; and contaminated drinking water and food.  The Classes allege

that Defendants were deliberately indifferent to the health and safety of the Lead Plaintiffs and

the men in the SCCF, and that Defendants' systematic neglect of the conditions in the SCCF

constitute policies, practices and customs of Suffolk County. (Compl. ¶¶ 152-184.)

Lead Plaintiffs Mack Butler, Dashaun Sims, Clyde Lofton and Paul Alver, each of whom

was confined in the SCCF at the time of filing the Complaint, seek to represent a class

established under Rule 23(b)(2) of the Federal Rules of Civil Procedure of persons who are or

will be confined in SCCF.  The Injunctive Class is entitled to prospective injunctive and

---

[1] A full statement of the relevant facts is included in the Plaintiffs' Consolidated Amended Class Complaint, dated
April 5, 2012 (the "Complaint" or "Compl.") and will not be repeated herein.  (*See* Compl. ¶¶ 29-184.)  All defined
terms utilized in this memorandum of law have the same meaning as those terms defined in the Complaint.

declaratory relief to remedy the unconstitutional conditions described above and in the Complaint, as well as an award of incidental damages.  (Compl. ¶ 21.)  Class certification under Rule 23(b)(2) is a standard and well established means of efficiently addressing civil rights violations – and prison reform litigation in particular – where injunctive and declaratory relief is necessary to foreclose the strong likelihood of ongoing and future harm.  Such certification should be granted here.

Lead Plaintiff Kevin King seeks to represent a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure of persons who have been held at the SCCF since April 5, 2009, and who are entitled to damages for the harm they have suffered as a result of the facilities' unconstitutional conditions.  (Compl. ¶ 22.)  Again, the certification of a class under Rule 23(b)(3) is a standard and well established mechanism for plaintiffs seeking damages for injuries suffered from a single cause or set of causes, particularly in the context of civil rights violations, and is appropriate in this case as well.

Courts routinely grant class certification in matters like those at bar.  That is because, as discussed below, the procedural hurdles are easily jumped by classes of thousands of individuals who are or have been incarcerated and, thereby, purposefully treated in uniform ways and subjected to uniform (and, in this case, unconstitutionally injurious) conditions.  The alternative to class certification – permitting the independent but consolidated litigation of each individual's claims as alleged in each of the original *pro se* complaints – would waste the resources of the parties and require a far greater degree of active management and expenditure of resources by this Court.  (*See* Consolidation Order 14.)  In addition, given the critically low resources of the Plaintiffs involved in this litigation, it is likely that many Plaintiffs would never have an

opportunity to have their claims presented.  Thus, as the Court itself has directly implied, and as

discussed below, the only reasonable means by which to proceed is on a class basis.

Accordingly, Plaintiffs respectfully request that this Court grant the proposed class

representatives' motion for class certification, and certify a Rule 23(b)(2) Injunctive Class and a

Rule 23(b)(3) Damages Class in this case.

## ARGUMENT

Class certification is an "especially appropriate" litigation vehicle in a case like this,

which seeks remedies based on unconstitutional conditions that have violated the civil rights of

thousands of men, and which are the result of policies and practices that are applicable to all

proposed class members.  *Hassine v. Jeffes*, 846 F.2d 169, 180 (3d Cir. 1988) (stating that class

certification "is an especially appropriate vehicle for actions seeking prison reform") (citing

*Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980)).  Indeed, class actions "tend to be the

norm" in prison condition cases.  *Clarkson v. Coughlin*, 145 F.R.D. 339, 346 (S.D.N.Y. 1993)

(citing *Jones v. Smith*, 784 F.2d 149, 151 (2d Cir. 1986) (suggesting the appropriateness of class

actions in challenges to prison rules)); *Dean v. Coughlin*, 107 F.R.D. 331, 332 (S.D.N.Y. 1985)

(noting that class actions are well-suited for actions brought by prisoners because of the "fluid

composition" of the prison population); *see also Allen v. Cuomo*, 100 F.3d 253 (2d Cir. 1996);

*Eng v. Smith,* 849 F.2d 80 (2d Cir. 1988).  As described below, both of the proposed classes

easily meet the legal requirements for class certification under Rule 23 of the Federal Rules of

Civil Procedure.

## I.      The Requirements For Class Certification

Class certification is appropriate under the Federal Rules of Civil Procedure and relevant

precedent where the prerequisites of Rule 23(a) are satisfied and the lawsuit may be maintained

pursuant to one of the subsections of Rule 23(b).  *See Marisol A. v. Giuliani*, 126 F.3d 372, 376-

377 (2d Cir. 1997).  Rule 23(a) permits class certification if:  (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

of the class; and (4) the representative parties will fairly and adequately protect the interests of

the class.  *See* Fed. R. Civ. P. 23(a).  Plaintiffs are entitled to class certification under

Rule 23(b)(2) where Defendants have "acted or refused to act on grounds that apply generally to

the class" such that injunctive or declaratory relief is appropriate "respecting the class as a

whole."  *See* Fed. R. Civ. P. 23(b)(2).  Plaintiffs may seek relief pursuant to Rule 23(b)(3) where

"the court finds that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3).

A federal district court is afforded broad discretion in certifying a class due to the fact

that "the district court is often in the best position to assess the propriety of the class [action] and

has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever

warranted."  *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir.

2001) (citing Fed. R. Civ. P. 23(c)(4)(B)).  "[B]ecause courts are given discretion to tailor the

scope of the class later in the litigation, liberal consideration of the requirements for class

certification is permitted in the early stages of litigation."  *In re AMF Bowling Sec. Litig.*, No. 99

civ. 3023 (DC), 2002 WL 461513, at *3 (S.D.N.Y. Mar. 26, 2002) (citing *Woe ex rel. Woe v.*

*Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)).

## II.    The Proposed Class Structure

In cases where plaintiffs seek both declaratory and monetary relief, "the court may certify

a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under

Rule 23(b)(2)."  *Seekamp v. It's Huge, Inc.*, No. 09 Civ. 00018 (LEK), 2012 WL 860364, at *8

(N.D.N.Y. Mar. 13, 2012) (citing *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, No. 08 civ. 1816, 2012 WL 360011, at *7 (E.D.N.Y. Jan. 27, 2012)).  Plaintiffs request that the Court certify two such distinct but overlapping classes here.  The two proposed classes differ only in terms of relief sought and class period.

Plaintiffs Mack Butler, Dashaun Sims, Clyde Lofton, and Paul Alver, all incarcerated at the time of filing the Complaint,[2] seek to represent a class of persons (the "Injunctive Class") seeking injunctive and declaratory relief (as well as incidental damages) to redress the injuries suffered as a result of the constitutional violations alleged and defined as follows:

> All persons who, now or at any time in the future, are or will be detainees or prisoners in the custody of the Suffolk County Sheriff's Department and housed in the Suffolk County Correctional Facilities located in Riverhead, New York and Yaphank, New York.

(Compl. ¶ 21.)  The scope of the proposed Injunctive Class is appropriate because all current and future inmates housed in the facilities, not only those individuals who have already been harmed by the conditions, have a common interest in the improvement of the conditions in the SCCF. *See infra* IV(A); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971) (concluding that preliminary injunctive relief should have been granted to protect against future mistreatment of inmates); Order 37, *Floyd v. City of New York*, No. 08-cv-01034 (SAS) (HBP) (S.D.N.Y. May 16, 2012) ECF No. 206 ("Both the Second Circuit and numerous district courts in the circuit have approved of class definitions without precise ascertainability under Rule 23(b)(2)); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) (noting that class treatment for plaintiffs seeking injunctive relief is "well suited" to cases in which the exact composition of a class is not readily ascertainable, such as where "plaintiffs attempt to bring suit on behalf of a shifting prison population").

---

[2] Plaintiffs Mack Butler, Clyde Lofton, and Paul Alver remain incarcerated at the time of filing this Motion.

Plaintiff Kevin King seeks to represent a class of persons (the "Damages Class") seeking damages for harms incurred as a result of the conditions described herein and defined as follows:

> All persons who are or were detainees or prisoners in the custody of the Suffolk County Sheriff's Department and housed in the Suffolk County Correctional Facilities ("SCCF") located in Riverhead, New York and Yaphank, New York, and who were or will be released from the SCCF on or after April 5, 2009.

(Compl. ¶ 22.)  The scope of the proposed Damages Class is also appropriate because it is sufficiently definite, not overbroad, and comports with the three-year statute of limitations for damages in this case.  *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (reiterating that "New York's three-year statute of limitations for unspecified personal injury actions governs section 1983 actions in New York") (citations omitted).  The conditions in the SCCF have been below constitutional minima and have caused injuries to Plaintiffs from at least as far back as April 5, 2009.  (*See* Compl. ¶¶ 162-175, 181.)

## III.   The Proposed Injunctive And Damages Classes Satisfy The Prerequisites Of Rule 23(a)

Both proposed classes satisfy the four criteria of Rule 23(a), which are addressed in turn below.

### A.   The Numerosity Requirement of Rule 23(a)(1) is Satisfied

Rule 23(a)(1)'s numerosity requirement is met here because (i) the proposed classes both number in the thousands; (ii) the Injunctive Class contains future inmates who cannot now be enumerated or joined; and (iii) individual joinder is impracticable and would create a strain on judicial resources.

Numerosity can be presumed at a level of 40 members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing H.B. Newberg, *Newberg On Class Actions*, § 3.05 (2d ed. 1985)).  In cases involving classes numbering in the hundreds or thousands, the numerosity requirement of Rule 23(a)(1) is easily met.  *See Newberg* § 3.05.  The

currently consolidated cases alone now number 59.  *See* Consolidation Order 14.  Furthermore,

there are more than 1700 prisoners confined in the SCCF, all of whom are subject to the

conditions described in the Complaint.  (Compl. ¶ 23.)  Accordingly, the proposed classes in this

case, which consist of (1) all present and future men incarcerated in the SCCF and (2) all men

who were or will be released from the SCCF on or after April 5, 2009, are so numerous that

joinder of all members of the class is impracticable and numerosity may be presumed.

Class certification is also particularly appropriate in this case because the Injunctive Class

includes future inmates who cannot now be enumerated, identified, or joined.  *See, e.g.*, *Boucher*

*v. Syracuse Univ.*, 164 F.3d 113, 119 n.11 (2d Cir. 1999) (noting that a class including future

college students would satisfy the numerosity requirement because joinder would be

impracticable).  The Second Circuit has explicitly held that the potential of prospective

injunctive relief to future class members is a factor to be given weight when deciding whether to

certify a class of plaintiffs.  *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)

("[r]elevant considerations [under Rule 23(a)(1)] include . . . requests for prospective injunctive

relief which would involve future class members); *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 122

(E.D.N.Y. 2003) (identifying "any requests for prospective or injunctive relief affecting future

class members" as a "[f]actor[] in determining impracticability of joinder.")  As acknowledged in

*Dean*:  "The fluid composition of a prison population is particularly well suited for class status,

because, although the identity of the individuals involved may change, the nature of the wrong

and the basic parameters of the group affected remains constant."  107 F.R.D. at 332-33 (citing

*Powell v. Ward*, 487 F. Supp. 917, 922 (S.D.N.Y. 1980)); *see also Clarkson*, 783 F. Supp. at 797

("Prisoners frequently come and go from institutions for a variety of reasons.  Veteran prisoners

are released or transferred, while new prisoners arrive every day.  Nevertheless, the underlying

claims tend to remain.  Class actions therefore generally tend to be the norm in actions [brought by incarcerated persons].").  This is all the more true with respect to the inmate populations at the SCCF, the majority of whom are pretrial detainees.  (Compl. ¶ 29.)  *See Hiatt v. Cnty. of Adams*, 155 F.R.D. 605, 608 (S.D. Ohio 1994) (holding that the "short term nature of [plaintiffs'] incarceration" in county jail created a situation where plaintiffs' claims were "distinctly capable of repetition, yet [ ] evading judicial review," and thus finding that "class action is the only vehicle whereby the legality of the operation of the [jail] can be reviewed") (citations omitted).  Until relief is obtained, both current and future inmates at Yaphank and Riverhead will continue to be at risk from the deliberate indifference of the defendants and the system-wide policies and practices that create unconstitutional conditions for all those who are now or may be incarcerated in those facilities.  The proposed class is thus an identifiable group with a cognizable risk of future injury.

The various other factors that courts often consider in connection with the impracticality of individual joinder of all class members also weigh in favor of certification here, including (a) that many class members are unlikely to bring their own suits because of limited access to legal representation and fear of reprisal (*see Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204-05 (E.D.N.Y. 2005) (citing class members' fear of reprisals, mental disabilities, and lack of resources to prosecute their own claims in certifying class in group residence case)) – a particularly acute concern in prison litigation; and (b) the judicial economy achieved from the avoidance of multiple concurrent actions.  *See Fox*, 213 F.R.D. at 122 ("Factors in determining impracticality of joinder include: judicial economy achieved from the avoidance of multiple concurrent actions; the geographic dispersion of members of the class; the relative financial resources of the class members; the ability of claimants to institute individual

actions; and any requests for prospective or injunctive relief affecting future class members.")
As this Court is already well aware, the ability of Plaintiffs to retain counsel on an individual
basis is limited, and the most likely scenario is that, absent class certification, many Plaintiffs
will resume prosecution of *pro se* complaints, while others will remain unfairly silenced.

     **B.**     **The Commonality Requirement of Rule 23(a)(2) is Satisfied**

     Plaintiffs also clear the "low hurdle" for showing commonality under Rule 23(a), which
requires only a single common issue of law or fact as to all or most of the class members.  *See
Marisol A.*, 126 F.3d at 376; *MacNamara v. City of New York*, 275 F.R.D. 125,
138 (S.D.N.Y 2011) (holding even a single common issue of law may be sufficient to satisfy the
commonality prong where the common question is "at the core of the cause of action alleged").
In fact, as this Court acknowledged in its January 23, 2012 Order, this case abounds with
common issues because Plaintiffs are challenging treatment, policies and practices which all
class members confined at the SCCF have been subjected to.  *See* Consolidation Order 14
(identifying as a reason for consolidation of 59 *pro se* complaints, the various common questions
of fact at issue).

     Where, as here, Plaintiffs "are challenging a practice" of Defendants that violates the
Plaintiffs' civil rights, and not merely Defendants' "conduct with respect to the individual
plaintiff," the commonality requirement of Rule 23(a) is readily met.  *Ray M by Juana D. v. Bd
of Educ. of City School Dist. of N.Y.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) (citations omitted);
*see also Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (citing *Marisol A.*, 126 F.3d
at 377); *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("Indeed, (b)(2)
classes have been certified in a legion of civil rights cases where commonality findings were
based primarily on the fact that defendant's conduct is central to the claims of all class members
irrespective of their individual circumstances and the disparate effects of their conduct.").

Indeed, there is an assumption of commonality where plaintiffs seek certification to right alleged constitutional wrongs.  *See D.S. ex. rel S.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 71 (E.D.N.Y. 2008) ("When 'the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional [or illegal] practice or policy that allegedly injured or will injure the proposed class members,' the commonality requirement is met") (citations omitted).  And, because prisons are designed in such a way as to standardize prisoners' experiences, courts have regularly found common questions among classes of inmates that challenge a variety of different conditions of confinement and/or where "inmates have a common interest in preventing the recurrence of the objectionable conduct."  *Inmates of Attica Corr. Facility*, 453 F.2d at 24; *see also Langley v. Coughlin*, 715 F. Supp. 522, 555 (S.D.N.Y. 1989) (conditions-of-confinement claim presented common issues, including "whether the alleged conditions . . . can amount to a violation of constitutional standards; the actual nature of the conditions . . . throughout the time period in question; and the effect that such conditions are likely to have on [those subjected to them]"); *Tyler v. Suffolk Cnty.*, 253 F.R.D. 8, 10 (D. Mass. 2008) (finding common questions in Rule 23(b)(3) damages class action because the nature of conditions of confinement claim was the constitutional injury of being housed in a makeshift detention center unfit for human occupancy rather than the denial of access to bathrooms by any plaintiff at any particular moment).

On its face, the Complaint raises questions of fact common to all Lead Plaintiffs and proposed class members, including: whether inmates have experienced chronic exposure to human waste (*see* Compl. ¶¶ 40-44, 82-84), mold-covered, rusty showers smelling of sewage (*see* Compl. ¶¶ 50-51, 86-87), inadequate ventilation (*see* Compl. ¶¶ 73-76, 106-107), prolonged exposure to mold, rust, vermin, freezing temperatures, and leaking water (*see* Compl. ¶¶ 58-59,

61-62, 64-65, 67-71, 93-94, 96-97, 99-100, 102-103, 105), and contaminated drinking water and food (*see* Compl. ¶¶ 97, 113-116, 123-128, 134-136, 141-143, 148); as well as Defendants' awareness of the unconstitutional conditions (*see* Compl. ¶¶ 152-184).

The question of whether these common predicates violate the United States Constitution and the Due Process Clause of the New York Constitution, and whether Plaintiffs state a tort claim for negligence and ministerial negligence under New York law, present legal questions which can also be resolved with common proof.  *See, e.g.*, *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof") (citation omitted).  All of the Lead Plaintiffs assert claims against Suffolk County and the individual Defendants, and all of them allege that they were injured as a result of Suffolk County's pattern of systemic neglect.  The common questions of law include, but are not limited to, whether the policies and practices and acts and omissions of the Defendants exhibit deliberate indifference to the risk of violation of the men's rights under the 8th and 14th Amendments; whether Defendants have posed an unreasonable risk of harm to the men's health, safety, and welfare, in violation of the 8th and 14th Amendments (a mixed question of law and fact); whether the individual Defendants were directly involved as policy-makers for the SCCF (a mixed question of law and fact); and whether the individual Defendants' failure to exercise proper oversight of the facilities renders them liable as supervisors.  Accordingly, commonality is easily established.

C.    **The Typicality Requirement of Rule 23(a)(3) is Satisfied**

A proposed class representative's claims should be considered typical under Rule 23(a)(3) when they arise from the same general "course of events" as those of the class and rely on "similar legal arguments."  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  The typicality requirement is thus satisfied here because the Lead Plaintiffs'

claims all arise out of the same unconstitutional conditions of confinement and present identical

legal questions as the claims of the Classes. *See Ingles v. City of New York*, No. 01 Civ. 8279

(DC), 2003 WL 402565, at *1, *4, *9 (S.D.N.Y. Feb. 20, 2003) (holding that allegation of a

"system-wide policy" and "pattern and practice" of excessive force at 12 different New York

City correctional facilities must be presumed true at class certification stage); *Hirschfeld v.

Stone*, 193 F.R.D. 175, 183 (S.D.N.Y. 2000) (finding if the lead plaintiffs prevailed, the putative

class members would also benefit since all were subject to the same allegedly unconstitutional

course of conduct).

Moreover, typicality is determined by the nature of the claims of the class representatives

and not by the specific facts from which they arose. *See generally Newberg* § 3.15.  In other

words, when the same course of conduct affects both the lead plaintiffs and the putative class

members, the typicality requirement is met even though the precise fact patterns underlying the

individual claims may vary. *See, e.g.*, *Marisol A.*, 126 F.3d at 377 (in class action challenging

supervisory failings that led to pervasive abuse of wards of state, commonality, and typicality

requirements do "not require that plaintiffs all suffer the same actual injury"); *Robidoux*, 987

F.2d at 936.  In civil rights cases involving unconstitutional prison conditions, the possibility that

proposed class representatives may have been confined in non-identical conditions, or suffered

different physical injuries, is immaterial to their ability to satisfy the typicality requirement. *See,

e.g., Hirshfeld*, 193 F.R.D. at 182, 198; *Jones v. Goord*, 190 F.R.D. 103 (S.D.N.Y. 1999).  Thus,

typicality does not turn on questions such as whether one inmate was injured as a result of a

fungal infection caused by the unsanitary showers while another woke up vomiting from the

smell of human waste – such differences are irrelevant to typicality where the Lead Plaintiffs

assert the same theories of liability on behalf of the Classes.

Courts have also found typicality satisfied where "all class members of the putative class would benefit by the success of the named plaintiff." *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)).  Here, all class members plainly share the same interest in ameliorating the inhuman conditions in the SCCF and obtaining redress for the injuries suffered thereby.  Thus, the typicality requirement of Rule 23(a)(3) is also satisfied.

### D.    The Adequacy of Representation Requirement of Rule 23(a)(4) is Satisfied

Rule 23(a)(4) requires both Lead Plaintiffs and Plaintiffs' counsel to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy of representation requirement serves to prevent conflicts of interest between named parties and the class they seek to represent.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).  As the Second Circuit held in *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52 (2d Cir. 2000), "adequacy of representation entails inquiry as to whether:  1) plaintiff[s'] interests are antagonistic to the interest of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation." *Id.* at 60.

As to the first prong of Rule 23(a)(4), there is no conflict of interest between the proposed class representatives and the putative class members.  No class member has an interest in maintaining the current conditions in the SCCF, and all class members may and do seek damages based on the harm caused by those conditions.  *See, e.g.*, *Dittimus-Bey v. Taylor*, 244 F.R.D. 284,  292 (D.N.J. 2007) ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.") (citations omitted). *Marisol A.*, 126 F.3d at 378 (holding that broad-based relief seeking to improve all services is in

the interest of all class members); *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 390 (S.D.N.Y. 2000) (same).

Turning to the second prong of Rule 23(a)(4), adequacy of class counsel cannot reasonably be questioned.  *See* Fed. R. Civ. P. 23(a)(4) (permitting class representation where, *inter alia,* "the representative parties will fairly and adequately protect the interests of the class"). Plaintiffs are represented, at this Court's *Pro Se* office's request, by Shearman & Sterling LLP ("Shearman & Sterling") and the New York Civil Liberties Union ("NYCLU"), both of which are unquestionably qualified to litigate this case.  (*See* Compl. ¶¶ 26-28; Declaration of Daniel H. R. Laguardia in Support of Motion for Class Certification, dated May 17, 2012 ("Ex. A"); Declaration of Corey Stoughton in Support of Motion for Class Certification, dated May 17, 2012 ("Ex. B").)

Shearman & Sterling brings a wealth of relevant experience to this litigation and is well-acquainted with complex federal litigation and class actions.  The firm has successfully represented clients and classes of clients on a variety of constitutional matters over its nearly 140-year history.  The NYCLU is a non-profit membership organization founded in 1951 as the New York State affiliate of the American Civil Liberties Union.  As such, the NYCLU has long been devoted to protecting the fundamental rights and values embodied in the Bill of Rights of the United States Constitution and in the New York Constitution.  In this role, the NYCLU frequently litigates cases raising constitutional questions in New York's federal and state courts. Additionally, Plaintiffs' counsel have already invested many hundreds of hours into this representation, on a *pro bono* basis, and will continue to diligently and vigorously pursue all rights and interests of the Lead Plaintiffs and the putative Classes.  Accordingly, it is respectfully submitted that Plaintiffs' counsel have the interest, ability, and resources to represent the classes.

**IV.**     **Classes Should Be Certified Under Rules 23(b)(2) And 23(b)(3)**

In addition to satisfying the prerequisites of Rule 23(a), the Injunctive Class may properly

be maintained under Rule 23(b)(2) and the Damages Class may properly be maintained under

Rule 23(b)(3).

**A.**     **An Injunctive Class Should Be Certified Under Rule 23(b)(2)**

Rule 23(b)(2) provides that class actions are to be maintained when "the party opposing

the class has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

whole." Rule 23(b)(2) provides an ideal basis for certifying a class in actions challenging a

pattern and practice of constitutional violations, including in particular with respect to prison

conditions. The rule was designed especially for civil rights cases like this one seeking broad

declaratory or injunctive relief for a large class of persons. *See* Fed. R. Civ. P. 23(b)(2) advisory

committee notes (1966); *Amchem Prods.*, 521 U.S. at 614; *Newberg* § 4.11. For that reason, it is

the Rule 23 (b)(2) class "which serves most frequently as the vehicle for civil rights actions and

other institutional reform cases that receive class action treatment." *Baby Neal,* 43 F.3d at 58-59;

*Dean*, 107 F.R.D. at 335 (holding that "it is well established that civil rights actions are the

paradigmatic 23(b)(2) class suits") (citing *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir.

1979), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915 (1979)).

The Complaint in this action challenges policies and practices that apply to all prisoners

at the SCCF, that have generated identical violations of law against each class member (*i.e.*,

violations of each class member's constitutional rights and torts by the individual Defendants),

and that call for the same injunctive remedies including, but not limited to: necessary repairs to

the physical facilities; institution of policies and practices that properly function to uphold the

standards set forth by law and remedy existing violations; and enforcement of existing laws and

- 15 -

policies that do the same.  Thus, Plaintiffs have adequately alleged that Defendants have "acted

or refused to act on grounds that apply generally to the class," thereby rendering this type of suit

appropriate to pursue "final injunctive relief or corresponding declaratory relief . . . respecting

the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Coley v. Clinton*, 635 F.2d 1364, 1378

(8th Cir. 1980) (Rule 23(b)(2) "is an especially appropriate vehicle for civil rights actions

seeking . . . declaratory relief 'for prison and hospital reform'") (quoting 3B J. Moore & J.

Kennedy, *Moore's Federal Practice* 23.40[1]).  Indeed, injunctive and declaratory relief is

particularly necessary here because of the strong likelihood of ongoing and future harm, and

thus, certification under Rule 23(b)(2) is the most efficient and effective way to uphold the rights

of all current and future prisoners subjected to the inhumane conditions in the SCCF.

Rule 23(b)(2) is also an appropriate vehicle to seek monetary damages that are incidental

to the injunctive and declaratory relief sought.  The Second Circuit has recognized that incidental

damages claims should ordinarily be certified along with injunctive and declaratory relief claims

under Rule 23(b)(2). *See Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 21

(2d Cir. 2003).  This is "because entitlement to [incidental] damages does not vary based on the

subjective considerations of each class members' claims, but 'flow[s] directly from a finding of

liability on the . . . claims for class-wide injunctive and declaratory relief.'" *Id.* at 21 (citing

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 165 (2d Cir. 2001).  The damages

arising from the harm alleged in this case are based on the same underlying conduct as the

injunctive and declaratory relief sought, thus an award of damages in this action would be

incidental to the declaratory and injunctive relief and class-wide incidental monetary damages

should be available under Rule 23(b)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2560 (2011) (Monetary relief is considered "incidental" where it "flow[s] directly from liability

to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.")

(emphasis omitted).

### B.     A Damages Class Should Be Certified Under Rule 23(b)(3)

Under Rule 23(b)(3), it must be determined that:  (1) "questions of law or fact common to

the members of the class predominate over any questions affecting only individual members;"

and (2) proceeding by class action "is superior to other available methods for the fair and

efficient adjudication of the controversy."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252

(2d Cir. 2002) (quoting Fed. R. Civ. P. 23(b)(3)).  Courts routinely certify classes under

Rule 23(b)(3) in civil rights cases on behalf of prisoners and detainees asserting a common legal

grievance based on the same policy or practice.  *Dunn v. City of Chicago*, 231 F.R.D. 367, 373

(N. D. Ill. 2003) (finding class of detainees satisfied Rule 23(b)(3) and noting that "[c]ourts

routinely address conditions of confinement claims in class actions"); *see also Langley*, 715 F.

Supp. at 556-57, 559-61 (certifying Rule 23(b)(3) class of inmates challenging noise, filth, odor,

and other hazardous conditions as well as (b)(3) classes of mentally ill inmates).

### 1.     Common Questions of Law and Fact Predominate

Meeting the Rule 23(a) typicality requirement is a strong indicator that the predominance

requirement of Rule 23(b)(3) is satisfied.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590,

598 (2d Cir. 1986) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Issues applicable to the class are said to "predominate if the plaintiff can establish that the issues

in the class action that are subject to generalized proof, and thus applicable to the class as a

whole, predominate over those issues that are subject only to individualized proof."  *Cordes &*

*Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-108 (2d Cir. 2007).  In

determining whether common issues predominate, "a court's inquiry is directed primarily toward

whether the issue of liability is common to members of the class."  *Dietrich v. Bauer*, 192 F.R.D.

119, 127 (S.D.N.Y. 2000).  As described above (*see supra* III(b)-(c)), this action abounds with common questions of law and fact, and the predominance requirement is easily met.

Although there are several common questions of fact and law at issue in this litigation, the overarching common question is whether the conditions in the SCCF have been and continue to be violative of the 8th and 14th Amendments to the U.S. Constitution, and the Due Process Clause of the New York Constitution.  This question does not vary among class members, and every prospective class member would be forced to address this issue at trial in the absence of class certification.  Thus, the class action device in Rule 23(b)(3) is well suited for this case because all Plaintiffs have been aggrieved by the policies and practices of Defendants, which creates a "strong commonality of the violation and the harm."  *Brown v. Kelly*, 609 F.3d 467, 468 (2d Cir. 2010) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001)).  *Accord It's Huge, Inc.*, 2012 WL 860364, at *11 (holding plaintiffs' claims for damages pursuant to 23(b)(3) were appropriate since defendants' policies formed the basis for class-wide liability).

### 2.  A Class Action is Superior to Other Methods of Adjudication

In addition, Rule 23(b)(3)'s superiority requirement has been met in this case because the class action device is the most "fair and efficient" method of resolving the case.  *Nassau Cnty.*, 461 F.3d at 230 (citing Fed. R. Civ. P. 23(b)(3)).  Courts consider a non-exclusive list of factors to answer the superiority analysis, including (1) the desirability of concentrating the litigation in a particular forum; (2) whether individual class members wish to bring, or have already brought, individual actions; and (3) the difficulties of managing the case as a class action.  *Id.* (citing Fed. R. Civ. P. 23(b)(3)).  Each of those factors weighs in favor of certification here.

A Rule 23(b)(3) class action is an efficient method of adjudication for a lawsuit with a large number of plaintiffs with commonality of claims.  *See Coco v. Inc. Village of Belle Terre*,

233 F.R.D. 109, 116 (E.D.N.Y. 2005) (stating that "a class action is superior to other available methods. Given the large number of potential plaintiffs and the commonality of their claims, certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would do."). In the absence of certification here, there is a strong likelihood of ongoing *pro se* claims by numerous litigants on identical claims. The dozens of identical complaints already filed are striking evidence of this. Moreover, Rule 23(b)(3) is the more efficient method of adjudication because "the interest of members of the class in individually controlling the prosecution of separate actions is minimal," because the practical barriers and considerable costs of bringing viable individual suits are likely to prevent members of a prison population from obtaining effective relief. *In re Ashanti Goldfields Sec. Litig.*, No. Civ. A. cv-000717 (DGT), 2004 WL 626810, at *17 (E.D.N.Y. Mar. 30, 2004)*; see also Amchem Prods.*, 521 U.S. at 617 (holding that the drafters of Rule 23(b)(3) had predominantly in mind the vindication of the rights of groups of people who individually would be without effective strength to have their fair day in court).

Litigation of the case on a class basis will also be manageable. The core issue in this case – whether the conditions in the SCCF were unconstitutional – may be addressed through common evidence as to, *inter alia*, the physical conditions inside the facilities and the policies and practices of the Defendants affecting their maintenance. *See Langley*, 715 F. Supp. at 557-558 (holding class damages would be manageable since the court could determine the periods of time conditions fell below constitutional minima and only prisoners there during those periods would be eligible for a damage award); *see also Nassau Cnty.*, 2008 WL 850268, at *6 (holding general damages for constitutional deprivations of liberty awardable to each member of the class based on defendants' unlawful policy could be properly ascertained at trial). The Court

also has a number of devices available to it to manage the damages claims in this class action, including by employing representative sampling techniques or appointing a special master to assess damages, if that should be necessary.  *See Nassau Cnty.*, 2008 WL 850268, at *6 ("Courts have approved various methods of discovery and determining damages in class actions on the basis of classwide, rather than individualized proof of damages and the use of statistics and representative samples are one such method.") (internal quotations and citations omitted); *Langley*, 715 F. Supp. at 558 (discussing potential management devices and noting that "it bears emphasis that courts have been perfectly willing, based simply on proof of objective conditions in a prison, to award per diem damages to an inmate unconstitutionally confined").  The Southern District of New York, in a strip-search class action with 50,000 members (many times larger than the classes at issue in this litigation), applied such techniques when certifying a class action to address the New York City Police Department's blanket strip-search policy.  *See Tyson v. City of New York*, No. 97 Civ. 3762 (S.D.N.Y. filed May 22, 1997).  Other federal courts, faced with management issues, have not hesitated to certify class actions.  *See, e.g., Maneely v. City of Newburgh*, 208 F.R.D. 69, 78 (S.D.N.Y. 2002).  Importantly, the Second Circuit has held that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check/Master Money*, 280 F.3d at 141.

The purpose of the class action device is to allow many individuals with similar complaints to efficiently vindicate their rights, and to do so with sufficient resources to hold a defendant fully accountable for their actions.  That purpose is fulfilled by this proposed class action litigation.  For these reasons, Plaintiffs have fulfilled the requirements of Rule 23(b)(3) for the certification of a monetary damages class.

## CONCLUSION

The proposed classes meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and qualify for certification under Rule 23(b).  For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for class certification.


Dated:      May 17, 2012
            New York, New York


                              Respectfully submitted,

                              SHEARMAN & STERLING LLP

                              */s/ Daniel H. R. Laguardia*
                              Daniel H.R. Laguardia
                              Melissa J. Godwin
                              Alexis Scott Berkowitz
                              599 Lexington Avenue
                              New York, New York 10022
                              Tel:  212-848-4000
                              Email: daniel.laguardia@shearman.com

                              *Counsel for Plaintiffs*


                              NEW YORK CIVIL LIBERTIES UNION
                              Corey Stoughton
                              Taylor Pendergrass
                              125 Broad Street
                              New York, New York 10004
                              Tel:  212-607-3300
                              Email:  cstoughton@nyclu.org

                              *Of Counsel*