**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

MACK BUTLER, DASHAUN SIMS, CLYDE LOFTON,
PAUL ALVER, KEVIN KING, and RICKEY LYNCH,
on behalf of themselves and all others similarly situated,

*Plaintiffs,*

**vs.**                                          11-cv-02602 (JS) (GRB)


SUFFOLK COUNTY, VINCENT F. DEMARCO, in his
individual and official capacity, JOSEPH T. CARACAPPA,
in his individual and official capacity, and JOHN P.
MEYERRICKS, in his individual and official capacity,

*Defendants.*

------------------------------------------------------------------------x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000
Daniel H.R. Laguardia
Melissa J. Godwin
Edward G. Timlin
Sheila Jain

*Counsel for Plaintiffs*

NEW YORK CIVIL LIBERTIES UNION
125 Broad Street
New York, New York 10004
(212) 607-3300
Corey Stoughton
Taylor Pendergrass

*Of Counsel*

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................ 1

I.    The PLRA Exhaustion Requirement Does Not Preclude Class Certification ........ 1

II.   The Proposed Classes Satisfy The Requirements For Class Certification ............. 3

      A.    The Numerosity Requirement Is Satisfied .................................................. 3

      B.    The Commonality Requirement Is Satisfied ............................................... 4

      C.    The Typicality Requirement Is Satisfied .................................................... 5

      D.    Class Counsel and Lead Plaintiffs Provide Adequate Representation ........ 6

III.  A Class Action Is Maintainable Under Rule 23(b)(2) ........................................... 8

IV.   A Class Action Is Maintainable Under Rule 23(b)(3) ........................................... 9

CONCLUSION ......................................................................................................... 10

i

## TABLE OF AUTHORITIES

### Cases

*Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) ........................................................ 2, 3

*Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011) ............................................................ 1

*Amador v. Superintendents of the Dep't of Corr. Servs.*,
  2005 WL 2234050 (S.D.N.Y. Sept. 13, 2005) ............................................................ 2

*Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) ..................................................... 1

*Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 205875 (S.D.N.Y. Jan. 19, 2012) ..................... 9

*Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 2912741 (S.D.N.Y. July 17, 2012) ................... 9

*Clarkson v. Coughlin*, 145 F.R.D. 339 (S.D.N.Y. 1993) ................................................. 4

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ................................. 4

*Folsom v. Blum*, 87 F.R.D. 443 (S.D.N.Y. 1980) ....................................................... 4

*Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) ......................................................... 1

*Gibson v. Comm'r of Mental Health*, 2006 WL 1234971 (S.D.N.Y. May 8, 2006) ..................... 2

*Gray v. Golden Gate Nat'l Recreation Area*, 279 F.R.D. 501 (N.D. Cal. 2011) ......................... 7

*Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004) ................................................... 2

*Hirschfeld v. Stone*, 193 F.R.D. 175 (S.D.N.Y. 2000) ................................................. 5

*In re Ins. Brokerage Antitrust Litig.*, 2012 WL 1071240 (D.N.J. Mar. 30, 2012) ..................... 7

*In re Nassau Cnty. Strip Search Cases*, 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) ................ 10

*In re Nassau Cnty. Strip Search Cases*, 2010 WL 3781563 (E.D.N.Y. Sept. 22, 2010) .............. 3

*Ingles v. City of New York*, 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) ................................. 8

*Inmates of Lycoming Cnty. Prison v. Strode*, 79 F.R.D. 228 (M.D. Pa. 1978) ......................... 3

*Jane B. by Martin v. N.Y.C. Dep't of Soc. Servs.*, 117 F.R.D. 64 (S.D.N.Y. 1987) ..................... 8

*Jeffries v. Pension Trust Fund of Pension, Hosp. & Benefit Plan of Elec. Indus.*,
  172 F. Supp. 2d 389 (S.D.N.Y. 2001) ..................................................................... 4

*Kapiti v. Kelly*, 2008 WL 3874310 (S.D.N.Y. Aug. 18, 2008) ......................................... 4

*Kingsepp v. Wesleyan Univ.*, 1992 WL 230136 (S.D.N.Y. Sept. 3, 1992) ..................................... 7

*Koss v. Wackenhut Corp.*, 2009 WL 928087 (S.D.N.Y. Mar. 30, 2009) ....................................... 7

*Lewis v. Gross*, 663 F. Supp. 1164 (E.D.N.Y. 1986) ................................................................... 4

*Orafan v. Goord*, 2003 WL 21972735 (N.D.N.Y. Aug. 11, 2003) ............................................... 1

*Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498 (S.D.N.Y. 2011) ............................................. 10

*Poplawski v. Metroplex on the Atlantic, LLC*, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ........ 7

*Powell v. Ward*, 487 F. Supp. 917 (S.D.N.Y. 1980) ..................................................................... 3

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ................................................... 2

*Shook v. El Paso Cnty.*, 386 F.3d 963 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 1869 (2005) ...... 1

*Smalls v. Jummonte*, 2010 WL 3291587 (S.D.N.Y. Aug. 13, 2010) .............................................. 2

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................... 6

*Stinson v. City of New York*, 2012 WL 1450553 (S.D.N.Y. Apr. 23, 2012) .................................. 8

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................................... 4, 5, 9

*Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ..................... 10

*Williams v. City of Philadelphia*, 270 F.R.D. 208 (E.D. Pa. 2010) .......................................... 3, 6

**Statutes**

18 U.S.C. § 3626(f) ....................................................................................................................... 1

**Rules**

Fed. R Civ. P. 23(g)(1)(A) ............................................................................................................ 7

Plaintiffs respectfully submit this Reply Memorandum of Law in Further Support of Their Motion for Class Certification (the "Reply").[1]

## ARGUMENT

As this Court implicitly recognized in its January 24, 2012 Consolidation Order, ECF No. 327 ("Order"), this case, like other prison conditions cases, is precisely the type of litigation best prosecuted as a class action.  Plaintiffs' claims are all based on the same questions of law and fact, and Plaintiffs all allege the same exposure to grossly inhumane conditions within the Suffolk County Correctional Facilities ("SCCF").  Defendants' arguments in their opposition brief ("Opp.") are based on irrelevant case law and a strained and deliberately myopic view of Plaintiffs' case.

## I.    The PLRA Exhaustion Requirement Does Not Preclude Class Certification

Defendants cannot rely on the Prison Litigation Reform Act's ("PLRA") exhaustion requirement to oppose class certification.[2]  As a threshold matter, Defendants improperly assert that each and every class member must establish exhaustion at the class certification stage.  That is incorrect:  members of the Injunctive and Damages Classes may rely on the exhaustion of remedies by Lead Plaintiffs.[3]  In any event, it is premature to determine whether Defendants

---

[1] All capitalized terms used but not defined in this Reply have the same meaning as in Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, dated May 17, 2012, ECF No. 350 ("Motion" or "Br."), and Plaintiffs' Consolidated Amended Class Action Complaint, dated April 5, 2012, ECF No. 334 (the "Complaint" or "Compl.").

[2] Throughout their opposition, Defendants raise Plaintiffs' purported failure to exhaust administrative remedies as a basis for denying class certification, including with respect to the numerosity, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a).  But Defendants do not cite a single case in which a court denied a motion for class certification as a result of plaintiffs' failure to exhaust.  And, as discussed in detail in this Section of Plaintiffs' Reply, Defendants' exhaustion arguments fail with respect to each Rule 23 factor.

[3] This is supported by the overwhelming weight of authority on this issue, and the intended purpose of the PLRA, which includes provisions relating to the administration of class action suits, revealing that Congress intended for class actions to remain available as a device for challenging conditions of imprisonment.  *See* 18 U.S.C. § 3626(f) (governing the use of special masters in prison conditions cases); *see also Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) ("requiring all class members to exhaust their administrative remedies [] could impose an intolerable burden upon the inmate complaint review system") (internal citation omitted); *Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004) (finding exhaustion of administrative remedy by one class member "enough to satisfy the requirement for the class"); *Shook v. El Paso Cnty.*, 386 F.3d 963, 969-71 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 1869 (2005); *Orafan v. Goord*, 2003 WL 21972735, at *5 n.7 (N.D.N.Y. Aug. 11, 2003) (stating in dictum that a single class member can exhaust for the class).  Defendants' position would effectively end class action litigation by detainees, and their argument that it is "unlikely" that the Second Circuit would adopt Plaintiffs' position is groundless.  The single case cited in support, *Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011), did not even consider

have established the affirmative defense of failure to exhaust under the PLRA at this point in the case.  Plaintiffs are entitled to submit evidence both demonstrating their efforts to exhaust, and in support of the class-wide issue that the exhaustion defense is unavailable to Defendants because: "(a) [Plaintiffs'] administrative remedies were unavailable, (b) [Plaintiffs were] inhibited from exhausting available remedies by one or more Defendant's actions,[4] or (c) special circumstances exist that justify [any] failure to comply with the exhaustion requirements."  *Smalls v. Jummonte*, 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) (citing *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004)).  These issues go to Defendants' policies and practices and are properly resolved on a class-wide basis.  The factual record remains too underdeveloped to undertake a *Hemphill* inquiry, and since there is no reason to resolve the issue now, this Court should decline to evaluate this question based on the meager evidence Defendants have submitted in opposition to this Motion.

Even if this Court were to evaluate the merits of exhaustion at this juncture, however, it would find Defendants cannot support their affirmative defense.  There can be no dispute that Lead Plaintiffs had exhausted their administrative remedies by April 5, 2012 – the date on which the operative Complaint was filed.[5]  And the declarations submitted by Lead Plaintiffs Butler and Lofton further evidence their repeated efforts to grieve the conditions in the SCCF, the obstacles imposed by Defendants in connection with those efforts,[6] and the lack of improvement even after

---

the issue of vicarious exhaustion, because it was not a subject of dispute on appeal (the issue had been raised at the district court level, *see Amador v. Superintendents of the Dep't of Corr. Servs.*, 2005 WL 2234050, at *8 n.9 (S.D.N.Y. Sept. 13, 2005)).

[4] *See Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (defendant "estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit[ed] an inmate's ability to utilize grievance procedures").

[5] *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss at 18-19, dated July 3, 2012, ECF No. 354 ("MTD Opp.") describing how even those few documents improperly filed by Defendants in connection with their Motion to Dismiss demonstrate that Lead Plaintiffs exhausted their administrative remedies with respect to unconstitutional conditions within the SCCF and citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) and *Gibson v. Comm'r of Mental Health*, 2006 WL 1234971, at *6 (S.D.N.Y. May 8, 2006), among others, for the proposition that the date of the amended complaint is the appropriate date to consider.

[6] *See, e.g.*, Declaration of Mack Butler ¶ 4, dated Oct. 25, 2012 ("Butler Decl.") ("[W]hen I request a grievance form . . . Officers often refuse to give me the form."); *id.* at ¶ 9 ("Officers also refuse to accept grievances on the basis that another inmate has already grieved about the same condition."); *id.* at ¶ 11 ("Officers regularly retaliate against inmates who attempt to file grievance forms."); *id.* at ¶ 12 ("Officers threaten[] inmates who inquire about grievance forms."); Declaration of Clyde Lofton ¶ 4, dated Oct. 25, 2012 ("Lofton Decl.") ("Yaphank Corrections Officers often refuse to give inmates grievance forms."); *id.* at ¶ 5 ("Sometimes, the Officer will tell me not to file a

2

Plaintiffs received notice that their grievances had been "resolved."[7] Both the SCCF Inmate Handbook and the relevant case law demonstrate that Defendants' purported favorable "resolutions" of these grievance forms satisfy Lead Plaintiffs' grievance-related PLRA requirements.[8] Finally, and contrary to Defendants' arguments, King, Lead Plaintiff for the Damages Class, is not even subject to the exhaustion requirement because he is not incarcerated. *See In re Nassau Cnty. Strip Search Cases*, 2010 WL 3781563, at \*4 (E.D.N.Y. Sept. 22, 2010) ("The purpose of the PLRA patently was to curb the litigiousness of detainees presently in custody."); *see also* MTD Opp. at 12-14, 19 (collecting cases). In any case, he too has exhausted his administrative remedies.[9]

## II.   The Proposed Classes Satisfy The Requirements For Class Certification

### A.   The Numerosity Requirement Is Satisfied

Defendants do not contest that, currently, "there are more than 1700 detainees confined" in Defendants' facilities. The Classes seek redress on behalf of *all* of those individuals, as well as future detainees.[10] Defendants nevertheless contend that Plaintiffs do not meet the numerosity

---

grievance, because another inmate has already filed a grievance related to the same condition."); *id.* at ¶ 7 ("Officers regularly retaliate against inmates who attempt to file grievance forms.").

[7] *See, e.g.*, Butler Decl. ¶ 7 (describing how on September 5, 2011, Butler received a Grievance Processing Decision Form, stating that his September 2, 2011 grievance regarding human waste from other inmates sitting stagnant in his cell had been "resolved," while "the plumbing and toilet issues ha[d] not been resolved, and [he] continued to be exposed to other men's waste"); Lofton Decl. ¶ 6 (describing the fact that, on those occasions where Lofton has managed to get a grievance form and file it, "[o]fficers tell [him] that they are aware of the problem and . . . are 'looking into it,'" and no further action is taken to improve the condition).

[8] *See* Declaration of Nicholas Desimone Ex. A [Inmate Handbook] at 15-16, dated May 15, 2012 ("Desimone Decl.") ECF No. 344 (stating, in the Inmate Handbook, that inmates may not "appeal the *acceptance* of [their] grievance") (emphasis added); *see also Abney*, 380 F.3d at 668 (plaintiff exhausted his administrative remedies where he repeatedly received favorable decisions from prison officials but the prison failed to implement adequate changes); *Williams v. City of Philadelphia*, 270 F.R.D. 208, 214 (E.D. Pa. 2010) (exhaustion requirement did not apply where grievance system specifically excluded the issue that was the basis of the complaint).

[9] *See* Declaration of Kevin King ¶ 4, dated Nov. 13, 2012 ("King Decl.") ("On many occasions, when I have requested a grievance form from an Officer, he refused to give me a form."); *id.* at ¶ 5 ("[O]n June 7, 2011, I filed a grievance complaining of the unsanitary conditions in my cell . . . . No action was taken in response to this grievance and this was the last I heard about this grievance."); *id.* at ¶ 6 ("[O]n August 1, 2011, I filed a grievance to complain about the unsanitary conditions in my cell and the showers . . . as well as the tainted drinking water . . . . No action was taken in response to this grievance."); *id.* at ¶¶ 7-8 (noting that, although grievances were marked as "accepted" and "resolved," the SCCF failed to remedy the complained-of conditions).

[10] Contrary to Defendants' position, it is indisputably proper to seek injunctive redress on behalf of future detainees. Over the past 40 years, district courts across the country have found class actions that include future detainees to be a "desirable and logical way to challenge prison conditions." *Inmates of Lycoming Cnty. Prison v. Strode*, 79 F.R.D. 228, 231 (M.D. Pa. 1978) (listing cases in which such classes were certified); *see also Powell v. Ward*, 487 F. Supp.

requirement because they present no evidence "that any particular plaintiff, named or potential, has actually suffered harm as a result of defendants' purported conduct." Opp. at 4-6.[11] That is incorrect. Plaintiffs assert that all of the detainees' constitutional rights are being (and for years have been) violated due to their chronic and facility-wide exposure to human waste; mold-covered, rusty showers smelling of sewage; inadequate ventilation; rust; vermin; freezing temperatures exacerbated by leaking water; and contaminated drinking water and food, and that the conditions have caused widespread intestinal illnesses, skin conditions, respiratory infections, fungal infections, nose-bleeds, headaches, blurred vision, and dizziness, as well as mental anguish among the Injunctive and Damages Classes. *See* Compl. ¶¶ 15, 23, 150; Br. at 7; Butler Decl. at ¶¶ 2, 6; Lofton Decl. at ¶ 2; King Decl. at ¶¶ 2, 5-6. There can be no question that the proposed classes are sufficiently numerous – indeed, the filed cases alone would be numerous enough to support a class.[12]

### B.      The Commonality Requirement Is Satisfied

This Court has already stated that Plaintiffs' claims "involve a common question of law or fact" regarding "the existence of unhealthy, unsanitary, and hazardous conditions at [SCCF]" to which all class members have been subjected. *See* Order at 13-14. This is the very essence of the Rule 23(a)(2) commonality requirement, and Defendants' reliance on the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) is entirely misplaced.

917, 921 (S.D.N.Y. 1980) (granting class certification to "all persons who are now and who may be incarcerated in Bedford Hills Correctional Facility"); *Clarkson v. Coughlin*, 145 F.R.D. 339, 347-48 (S.D.N.Y. 1993) (similar).

[11] In support of this argument, Defendants cite two cases which are factually distinct and otherwise irrelevant. *See Kapiti v. Kelly*, 2008 WL 3874310 (S.D.N.Y. Aug. 18, 2008) (numerosity lacking where putative lead plaintiff was unable to establish that a single other person had their leased motor vehicle seized by the NYPD pursuant to arrest); *Jeffries v. Pension Trust Fund of Pension, Hosp. & Benefit Plan of Elec. Indus.*, 172 F. Supp. 2d 389 (S.D.N.Y. 2001) (numerosity lacking where plaintiff was unable to establish how many laid off employees would have been entitled to pension benefits if the pension fund were found liable for its failure to award such benefits). Unlike the cited cases, the case at bar involves a uniform and standardized environment which houses thousands of detainees, who are subjected to the same (or very similar) experiences on a daily basis.

[12] *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing H.B. Newberg, *Newberg On Class Actions*, § 3.05 (2d ed. 1985)) (numerosity is presumed at a level of 40 members); *see also Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986) (certifying class where exact number of class members could not be determined by plaintiffs because the pertinent information was within the defendants' control); *Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980) (same). Defendants' suggestion that Class members should proceed individually (Opp. at 5-8) is untenable. That some individuals have filed suits *pro se* does not account for the hundreds of other men who have had their constitutional rights violated and have not brought suit, or would or could not bring suit, including those detainees housed in the SCCF only for short periods.

Defendants argue that *Dukes* precludes class certification because Plaintiffs cannot establish that they all "sustained the same harm as a result of the same acts." *See* Opp. at 9-11.  But *Dukes* merely requires "a single [common] question" of law or fact that can be answered in a manner common to all class members.  131 S. Ct. at 2557.[13]  Here, Plaintiffs are confined to two SCCF facilities which operate under the supervision of a centralized management system – the Suffolk County Sheriff's Office – from which all decisions regarding housing conditions are made.  *See* Compl. ¶¶ 17, 152-55.  Thus, *all* members of the proposed Classes are *equally* subjected to, and affected by, Defendants' policies, practices, and conduct which violate their constitutional and civil rights.  *See also* Br. at 10.  The conditions of the facilities, the cause of those conditions, and the constitutional violations caused by those conditions are common to all class members. The resulting common questions of law and fact therefore fully satisfy the Supreme Court's holding in *Dukes*.

### C.    The Typicality Requirement Is Satisfied

*First*, Defendants' argument that Plaintiffs' claims are not typical of putative class members because class members were housed in different parts of the SCCF, on different dates, *see* Opp. at 13, is wholly unsupported by any case law.  Typicality is met in prison conditions cases where the same *course of conduct* affects all detainees, even if they were confined in non-identical conditions.  *See* Br. at 12 (citing *Hirschfeld v. Stone*, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) ("[The] typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability . . . irrespective of minor variations in the fact patterns underlying the individual claims.") (citations omitted)).

*Second*, Defendants argue that the Injunctive Class representatives are susceptible to atypical defenses where:  (i) claims brought by Plaintiffs no longer incarcerated in the SCCF are

---

[13] In *Dukes*, plaintiffs sought certification of a *nationwide* class of approximately 1.5 million current or former female employees regarding "millions of employment decisions" affecting their pay and promotions.  *Id.* at 2544-45. The court held that "[w]ithout some glue holding together the alleged reasons" behind "literally millions of employment decisions," made by "thousands of managers," plaintiffs could not possibly assert any basis for commonality capable of class-wide resolution.  *Id.* at 2545, 2552.  No such issues arise here.

moot; and (ii) Plaintiffs failed to exhaust their administrative remedies.  Exhaustion is addressed above, and mootness will be addressed (and should be denied as a defense) in the context of the pending motion to dismiss.   *See* MTD Opp. at 9-11.  Critically, however, the question at issue with respect to this Court's typicality analysis is *not* whether Plaintiffs have exhausted – it is whether their alleged lack of exhaustion would provide Defendants with a unique defense, which has the propensity to "become the focus of the litigation, thus overshadowing the primary claims, and prejudicing other class members."  *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 94-94 (S.D.N.Y. 2010) (internal citation omitted) (granting class certification and explicitly stating that the "rule barring certification of plaintiffs subject to unique defenses is 'not rigidly applied in this Circuit . . .'").  Defendants make no such showing here.  They have not alleged that *other* inmates have in fact managed to exhaust and, furthermore, have maintained that *none* of the more than 100 individuals who filed *pro se* complaints related to the conditions in the SCCF exhausted their remedies prior to bringing suit.[14]  *See, e.g.*, MTD at 1, 8; Opp. at 2 n.1.  Defendants cannot have it both ways.  Rule 23(a)(3)'s typicality requirement is thus satisfied.

### D.    Class Counsel and Lead Plaintiffs Provide Adequate Representation

Shearman & Sterling LLP and the New York Civil Liberties Union ("NYCLU") have vast combined experience in complex litigation and civil rights cases, and are unquestionably qualified to litigate this case. *See* Br. at 14.   A dedicated team of attorneys has already invested thousands of hours in identifying and investigating potential claims, and in managing this large and complex action – all on a *pro bono* basis – and will continue to do so.

Defendants' suggestion that Class Counsel do not satisfy Rule 23(a)(4)'s requirement that they be able to "fairly and adequately protect the interests" of the proposed Injunctive and Damages Classes is both entirely unfounded, and particularly inappropriate where (i) this Court's *pro se* office sought Shearman & Sterling's participation as *pro bono* counsel in this matter; and

---

[14] *Cf. Williams v. City of Philadelphia*, 270 F.R.D. at 221-22 (internal citation omitted) (rejecting typicality and adequacy arguments based on failure to exhaust because "detainees had no meaningful access to a grievance procedure through which they could have objected to the conditions of their detention" and noting that "the evidence in this case suggest[s] that it is the inmate who successfully shepherds his claims through the [jail's] dysfunctional grievance procedures who would truly be unique").

(ii) the Court specifically contemplated Counsel's prosecution of this matter as a class action, and accordingly extended Shearman & Sterling's representation to all Consolidated Plaintiffs. *See* Order at 15.[15]

It strains reason to suggest that Shearman & Sterling lacks the relevant expertise to litigate this case, given the firm's extensive litigation experience in both the public and private sectors, constant involvement in class action cases of all stripes, and recognition as one of the leading litigation practices in the United States.[16]  And, although Defendants' insistence that attorney resumes be subject to court scrutiny is wholly unsupported by any case law,[17] the qualifications set forth in Defendants' own opposition papers and the Laguardia Declaration would undoubtedly satisfy any such requirement.  *See* Declaration of Daniel H.R. Laguardia ¶¶ 5, 7, 10, 11, dated May 17, 2012 ("Laguardia Decl."), ECF No. 348.[18]

With respect to the adequacy of Lead Plaintiffs as Class representatives, Defendants argue that Sims is inadequate because he is "serving a sentence . . . in Upstate Correctional

---

[15] In certifying a class, a court must consider:  (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A); *Poplawski v. Metroplex on the Atlantic*, *LLC*, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012)  (describing same, in a case Defendants cite in support of their argument that Class Counsel do not meet the requirements of Rule 23(a)(4)).

[16] *See, e.g.*, *Benchmark Litig.* 2013:  *Definitive Guide to America's Leading Litig. Firms & Attorneys*, http://www.benchmarklitigation.com (last visited Nov. 9, 2012) (identifying Shearman & Sterling as a leading litigation firm); Chambers & Partners, Litigation: New York, http://www.chambersandpartners.com/uk/Editorial/43211#org_3654 (last visited Nov. 9, 2012) (noting that the Litigation group at Shearman and Sterling "is prized for its strong offering in securities litigation, handling federal and state shareholder class actions"); *see also* Laguardia Decl. ¶ 10 (noting that Shearman and Sterling received The Legal Aid Society's highest honor, the 2011 Pro Bono Publico and Public Service Law Firm Award, recognizing the firm's outstanding pro bono service to The Legal Aid Society and its clients).

[17] Defendants cite *In re Ins. Brokerage Antitrust Litig.*, 2012 WL 1071240 (D.N.J. Mar. 30, 2012) and *Gray v. Golden Gate Nat'l Recreation Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) to argue that the "necessary inquiry centers on examination of the abilities of the individual attorneys handling the matter."  Opp. at 17.  But in each of these cases, the court merely noted, after ruling that class counsel was adequate, that the individual attorneys were particularly qualified and experienced.  Those cases Defendants do cite in which a particular attorney was found to be inadequate involved an extensive history of disciplinary actions and professional misconduct, *see* Opp. at 17 (citing *Koss v. Wackenhut Corp.*, 2009 WL 928087 (S.D.N.Y. Mar. 30, 2009); *Kingsepp v. Wesleyan Univ.*, 1992 WL 230136 (S.D.N.Y. Sept. 3, 1992)), neither of which Defendants allege here.

[18] Defendants acknowledge, as they must, that Corey Stoughton and Taylor Pendergrass have relevant prisoners' rights class action experience, and are unquestionably qualified to litigate this case.  *See* Opp. at 18.  The search of court appearances for Shearman & Sterling attorneys supplied by Defendants is oddly incomplete, but it is also irrelevant.

7

Facility, located on the Canadian border over 300 miles from Long Island . . . [which places] restrictions upon his ability to communicate with counsel and potential plaintiffs." Opp. at 16. Defendants, however, fail to describe how those alleged restrictions will impact Class Counsel's communications with Sims, nor do Defendants cite to any case law that even remotely suggests the physical location of a proposed representative is a factor to be considered in determining the adequacy of his role as a class representative.[19] Counsel have utilized all resources at their disposal to communicate with Plaintiffs as necessary and will continue to do so.

Defendants also argue that all proposed representatives are "unsuitable [because] . . . they have not shown that they have the financial ability to fund this litigation." Opp. at 16. Defendants rely on *Stinson v. City of New York*, 2012 WL 1450553, at *11 (S.D.N.Y. Apr. 23, 2012), but in that case the court *granted* class certification, noting that it was "irrelevant that [the] named plaintiffs were unaware of potential liability for defendants' fees and costs, particularly as plaintiffs' counsel are likely paying the costs of this action." *Id.* at *11 (internal citation omitted). As described above, Class Counsel have invested considerable resources into this action, including financial resources, and will continue to do so.[20] Accordingly, Rule 23(a)(4) is satisfied. [21]

## III.    A Class Action Is Maintainable Under Rule 23(b)(2)

Courts have uniformly found that prison conditions cases are precisely the type of litigation for which the Rule 23(b)(2) class action format was created. This case is no exception: injunctive relief is an especially effective remedy for all members of the class, who invariably seek to live in more humane conditions during their imprisonment. *See* Br. at 15-16.

---

[19] The very nature of prison litigation means that lead plaintiffs will often be incarcerated and subject to the limitations that come with incarceration. This has not prevented courts from finding them to be adequate lead plaintiffs. *Ingles v. City of New York*, 2003 WL 402565, at *7 (S.D.N.Y. Feb. 20, 2003) (detainee subject to punitive solitary confinement adequate lead plaintiff).

[20] Defendants' claim that Plaintiffs' Motion lacks any statement that Counsel will make a financial contribution to the cost of litigation is at odds with the Consolidation Order, as well as Plaintiffs' filings, which make reference to Shearman & Sterling's designation as *pro bono* counsel. *See* Order at 15; MTD Opp. at 13; Br. at 14.

[21] Defendants also argue in a footnote that Plaintiffs Butler and Lofton are not suitable because they are facing felony charges. The law permits only an "inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Jane B. by Martin v. N.Y.C. Dep't of Soc. Servs.*, 117 F.R.D. 64, 70-71 (S.D.N.Y. 1987). The crimes of which Butler and Lofton are *accused* have nothing to do with this lawsuit.

Defendants nevertheless argue that class-wide injunctive relief is inappropriate here because: (i) some Plaintiffs' claims are moot; (ii) Plaintiffs do not identify the elements of their incidental damages request; and (iii) a new Suffolk County jail facility "is expected to soon open." *See* Opp. at 20. None of these arguments bar certification of the Injunctive Class.

*First*, mootness is being addressed in the context of the motion to dismiss and is not relevant in a prison case such as this. *See* MTD Opp. at 9-11. *Second*, *Dukes* did not establish that incidental damages need be established at the class certification stage (*see* discussion *supra* at II.B), and Defendants' claim to that effect is contradicted by the very authority they cite.[22] *Finally*, Defendants' assertion that the horrendous conditions in the SCCF need not be remedied because a new jail is "expected to soon open" is shameful. It is also asserted without any evidentiary support, and ultimately, is irrelevant where public records indicate that the new jail (when it finally opens) will be dedicated to housing those detainees currently incarcerated *outside* Suffolk County.[23]

## IV.    A Class Action Is Maintainable Under Rule 23(b)(3)

The Damages Class should also be certified because Plaintiffs allege that common questions of law and fact predominate and the class action vehicle is a vastly superior method for litigating this case.

The overarching predominating common question is whether Defendants' policies, practices, and conduct in permitting the unsanitary and hazardous conditions at the SCCF violated Plaintiffs' constitutional rights. This fundamental question will be addressed at trial for each and every Plaintiff through generalized, class-wide proof of the conditions, the time periods over which they occurred, and the systematic causes thereof. The fact that Plaintiffs were

---

[22] Defendants improperly cite a provision in a proposed order from a magistrate judge in *Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 205875, at *7 (S.D.N.Y. Jan. 19, 2012) that was not adopted by the District Court in its final order. *See Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 2912741 (S.D.N.Y. July 17, 2012). Moreover, the damages sought in that case were *statutorily required* to be determined on an individual basis, so the court could make the finding as a matter of law. *Chen-Oster*, 2012 WL 205875, at *7. Here, there is no such requirement.

[23] *See* Declaration of Melissa J. Godwin, Esq., dated November 15, 2012, Ex. A [Meeting Minutes of Pub. Safety Comm., Suffolk County Legislature] at 37-38 (stating anticipated new jail would not eliminate overcrowding at Riverhead and Yaphank, but would instead allow Suffolk County to house all its own detainees).

housed in "2 different buildings, during varying periods of incarceration from 2009 into the indefinite future," *see* Opp. at 22, does not erode those common questions of law and fact. *See supra* at II.B-II.C.[24]  And, if the Damages Class is successful, it will provide a basis for damages for each and every member.  Whether the quantum of such damages need be determined subsequently is a damages issue that cannot stand in the path of certification.  *See* Br. at 19-20 (citing *In re Nassau Cnty. Strip Search Cases*, 2008 WL 850268, *6 (E.D.N.Y. Mar. 27, 2008) (holding general damages for constitutional deprivations of liberty awardable to each member of the class based on defendants' unlawful policy could be properly ascertained at trial)).  Indeed, Defendants' approach – *i.e.*, separate litigation of hundreds of *pro se* cases that would need to establish the exact same predicate issues – would unjustifiably squander judicial time and resources, particularly given the strong likelihood that future detainees will continue to file complaints bringing identical claims based on identical allegations.  There is no basis to take such a path here, and Defendants provide no authority suggesting there is.

## CONCLUSION

The proposed Injunctive and Damages Classes meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and qualify for certification under Rule 23(b)(2) and 23(b)(3).  For the foregoing reasons, Plaintiffs respectfully request that the Court grant its Motion for Class Certification.

---

[24] Both of the cases Defendants cite in support of their predominance argument presented factual scenarios wholly distinct from this case. *See Oscar v. BMW of N. Am.*, *LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011) (products liability cases involving breach of warranty tend to involve complex individual issues); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) (predominance lacking where class members needed to prove their reliance on particular representations made by Snapple).

Dated: November 15, 2012
       New York, New York

                                  Respectfully submitted,

                                    SHEARMAN & STERLING LLP

                                    /s/ Daniel H.R. Laguardia
                                    Daniel H.R. Laguardia
                                    Melissa J. Godwin
                                    Edward G. Timlin
                                    Sheila Jain
                                    599 Lexington Avenue
                                    New York, New York 10022
                                    Tel:  212-848-4000
                                    Email:  daniel.laguardia@shearman.com
                                    *Counsel for Plaintiffs*

                                    NEW YORK CIVIL LIBERTIES UNION
                                    Corey Stoughton
                                    Taylor Pendergrass
                                    125 Broad Street
                                    New York, New York 10004
                                    Tel:  212-607-3300
                                    Email:  cstoughton@nyclu.org

                                    *Of Counsel*

11