UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MACK BUTLER, DASHAUN SIMS, CLYDE
LOFTON, PAUL ALVER, KEVIN KING, and
RICKEY LYNCH, on behalf of themselves
and all others similarly situated,

                    Plaintiffs,                    MEMORANDUM & ORDER

        -against-                                  11-CV-2602(JS)(GRB)

SUFFOLK COUNTY, VINCENT F. DeMARCO,
in his individual and official
capacity, JOSEPH T. CARACAPPA, in his
individual and official capacity, and
JOHN P. MEYERRICKS, in his individual
and official capacity,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Daniel Hector Rees LaGuardia, Esq.
                    Alexis Scott Berkowitz, Esq.
                    Edward Garth Timlin, Esq.
                    Melissa Jane Godwin, Esq.
                    Sheila Jane, Esq.
                    Shearman & Sterling LLP
                    599 Lexington Avenue
                    New York, NY 10022

                    Corey Stoughton, Esq.
                    Taylor Scott Pendergrass, Esq.
                    New York Civil Liberties Union
                    125 Broad Street
                    New York, NY 10004

For Defendants:     Brian C. Mitchell, Esq.
                    Arlene S. Zwilling, Esq.
                    Suffolk County Attorney's Office
                    H. Lee Dennison Building, Fifth Floor
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, NY 11788

SEYBERT, District Judge:

        Pending before the Court are Defendants Suffolk County, Vincent F. DeMarco, Joseph T. Caracappa, and John P. Meyerricks' (collectively, "Defendants") motion to dismiss the Consolidated Amended Class Action Complaint (the "Consolidated Amended Complaint" or "CAC") (Docket Entry 344) and Plaintiffs Mack Butler, Dashaun Sims, Clyde Lofton, Paul Alver, Kevin King, and Rickey Lynch's (the "Named Plaintiffs") motion for class certification (Docket Entry 347).  For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART, and the Named Plaintiffs' motion is GRANTED.

<u>BACKGROUND</u>

I.   <u>Procedural History</u>

        This action was commenced on May 27, 2011 by Plaintiff Rickey Lynch and nineteen others who were then-confined in the Suffolk County Correctional Facility ("SCCF").  The action was brought <u>pro</u> <u>se</u> on behalf of those individuals and all others similarly situated against Suffolk County, Vincent DeMarco as Sheriff of Suffolk County, and various John Doe Defendants seeking damages arising out of the allegedly unconstitutional conditions in the jail.  (Docket Entry 1.)  The plaintiffs all sought leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.  (Docket Entries 2-21.)  The plaintiffs filed an Amended Complaint on June 17, 2011, adding an additional eight plaintiffs detained in the

SCCF.   (Docket Entry 49.)   Their applications for in forma pauperis status were granted shortly thereafter, but their request to proceed as a class action was denied due to the fact that all of the class representatives were proceeding pro se. (Docket Entry 62.)

On June 30, 2011, the plaintiffs filed a motion to join an additional four plaintiffs (Docket Entry 67), which the Court granted on October 7, 2011 (Docket Entry 244).   Thus, there were a total of thirty-one plaintiffs asserting claims for damages arising out of the conditions at the SCCF.   On November 22, 2011, the Court determined that the appointment of pro bono counsel was appropriate and directed the Court's Pro Se Office to find counsel willing to represent the plaintiffs pro bono. (Docket Entry 286.)   On January 23, 2012, attorneys from Shearman & Sterling LLP were appointed pro bono counsel. (Docket Entry 327.)

In the interim, the Court began receiving an influx of substantially similar complaints from inmates at the SCCF, all seeking damages arising out of the unsanitary conditions in the facility.   By January 23, 2012, the Court had received fifty-nine separate complaints asserting (i) the existence of unhealthy, unsanitary, and hazardous conditions at the SCCF, including the presence of black mold, fungus, soap scum, and rust in the shower areas of the SCCF, drainage problems causing

back-ups of sewage and rusty water, and ventilation problems; (ii) injuries resulting from these conditions including headaches, breathing problems, skin rashes, itching, swelling, and infections; and (iii) that their grievances and/or complaints about these conditions were ignored. (See Docket Entry 327.) Given the similar conditions alleged in each of the complaints, the Court determined that consolidation of all fifty-nine actions would be in the interests of judicial economy and efficiency and thus consolidated them into the present action. Also, to save judicial time and resources, the Court directed the Clerk of the Court to consolidate any future complaints received complaining of the conditions at the SCCF into the present action.[1]  As of the date of this Memorandum and Order, 111 separate complaints naming 163 plaintiffs have been consolidated into this action. Shearman & Sterling's appointment was extended to all of the plaintiffs in the now-consolidated action. (Docket Entry 327.)

    Shearman & Sterling filed the Consolidated Amended Complaint on April 5, 2012, dropping all plaintiffs but the Named Plaintiffs--Butler, Sims, Lofton, Alver, King, and Lynch--but seeking to represent the interests of all 163 plaintiffs by

---

[1] Any plaintiff that did not wish to proceed as part of the consolidated action was directed to inform the Court in writing. To date, the Court has not received any requests to proceed independently from this consolidated action.

4

proceeding as a class action.   (Docket Entry 334.)   The Consolidated Amended Complaint asserts four claims:   (1) a claim on behalf of the pretrial detainees in the SCCF for violation of the Constitution's prohibition of cruel and inhuman treatment under the Fourteenth Amendment; (2) a claim on behalf of all sentenced prisoners in the SCCF for violation of the Constitution's prohibition of cruel and inhuman treatment under the Eighth Amendment; and (3) a claim on behalf of the pretrial detainees in the SCCF for violation of the New York Constitution's due process clause; and (4) a claim on behalf of all plaintiffs for negligence and ministerial negligence arising under New York common law.

II.   Allegations in the Consolidated Amended Class Action Complaint

A.   The Suffolk County Correctional Facility

The SCCF is comprised of two facilities:   the Riverhead Correctional Facility ("Riverhead"), a medium/maximum security jail, and the Yaphank Correctional Facility ("Yaphank"), a minimum security jail.   (CAC ¶ 29.)   Both Riverhead and Yaphank house pretrial detainees as well as sentenced prisoners.   (CAC ¶ 29.)   The sentenced prisoners are either serving a local jail sentence of one year or less or are awaiting transfer to a New York State prison.   (CAC ¶ 29.)   The stated capacity for the SCCF is 1,327 persons, yet Riverhead and

5

Yaphank house a daily combined average of 1,732 persons.  (CAC ¶ 33.)

The Consolidated Amended Complaint asserts that the men detained in the SCCF are "forced to live in squalid, unhygienic, and hazardous living conditions that pose a substantial and ongoing risk to the men's physical and mental health."  (CAC ¶ 38.)  The Court will summarize the allegations with respect to Riverhead and Yaphank separately.

1.  <u>Riverhead</u>

The Consolidated Amended Complaint asserts that the individuals housed at Riverhead are exposed to human waste on a regular and ongoing basis.  (CAC ¶ 40.)  This is due to what the Consolidated Amended Complaint describes as "ping-pong toilets."  (CAC ¶¶ 41-42.)  When one inmate flushes his toilet, his waste is not disposed of, but instead rises up in a nearby toilet in an adjacent cell.  (CAC ¶ 41.)  On occasion, this has occurred while someone is using the nearby toilet resulting in "other men's fecal matter and waste ris[ing] up through the pipes and spout[ing] onto [an inmate's] buttocks when using [his] own toilet."  (CAC ¶ 42.)  This also means that at night, while the men are sleeping, the toilets--which are located in each cell a mere two-to-three feet from the beds--accumulate fecal matter and other waste.  (CAC ¶¶ 44-45.)  This causes the men to "regularly vomit, cough, and suffer from nausea and severe

6

headaches due to the fumes." (CAC ¶ 45.) Further, the toilet seats have accrued "filth" over time as a result of the constant "ping-ponging" of waste, which has caused the men to suffer from rashes on their buttocks. (CAC ¶ 43.)

"The showers in Riverhead are decrepit, coated with thick, black mold, and reek of mildew" and "[t]he faucets and pipes are rusted over." (CAC ¶ 50.) The water is often brown and smells of sewage, and at times actual sewage has backed up out of the shower drains. (CAC ¶¶ 51-53.) Due to the unsanitary conditions in the shower, the men have suffered from severe fungal infections on their feet, dry and itchy feet, discolored green or black toenails, painful and itchy skin rashes that bleed and scab when scratched, and bumps on their backs, chests, arms, and buttocks. (CAC ¶ 53.) The mold and rust, however, are not limited to the showers, and they cover the walls and communal sinks where the inmates access their drinking water. (CAC ¶ 58.) The drinking water is "regularly brown or yellow in color, contains particles of unidentified sediment, tastes metallic, and smells 'like a cesspool.'" (CAC ¶ 113.) Drinking the tap water has caused the men to suffer from stomach aches and cramps, nausea, vomiting, and diarrhea. (CAC ¶ 117.) The food is also unsafe and inadequate as it is prepared with the drinking water, and it often contains flakes of rust, paint, and rodent droppings. (CAC ¶ 126.)

Riverhead also suffers from a pest and rodent infestation, and the facility is not properly heated. (CAC ¶¶ 62, 64.) The cold temperature is compounded by the cold (often brown) water leaking from the ceilings. (CAC ¶ 68.) According to the Consolidated Amended Complaint, the ceilings are believed to be lined with asbestos, so the leaking water puts the men at risk of exposure to asbestos. (CAC ¶ 71.)

2. <u>Yaphank</u>

The conditions at Yaphank are not dissimilar to those at Riverhead. Yaphank also suffers from plumbing issues, and the toilets and showers are often overflowing with sewage. (CAC ¶¶ 82-83, 87.) The overflow will sometimes flood the sleeping or communal eating areas. (CAC ¶¶ 82-83.) The showers are covered with mold and mildew, and the water is sometimes brown and smells like sewage. (CAC ¶¶ 86-87.) The drinking water is similarly brown and smells like waste, and drinking it has caused the men to suffer from stomach aches, nausea, and vomiting. (CAC ¶¶ 134-36.) Many men forego drinking the water altogether and suffer from dehydration. (CAC ¶ 139.) Rust and mold cover the bars, walls, and vents throughout the facility, and bits of rust and mold often flake off of the walls and bars and fall onto the men's beds and into their food. (CAC ¶¶ 93-94, 96, 142-43.) Yaphank also suffers from a pest and rodent infestation as well as inadequate heating, leaking ceilings, and

exposure to asbestos.  (CAC ¶¶ 97, 99, 102-03.)  Due to these conditions, the men regularly suffer from nausea, vomiting, severe headaches, migraines, dizziness, nose bleeds, skin rashes, severe fungal infections, and intestinal and respiratory problems.  (CAC ¶ 150.)

    B.   <u>The Named Plaintiffs</u>

        The Named Plaintiffs have all been detained at the SCCF.  Butler has been detained in Riverhead since January 2011; he is awaiting trial.  (CAC ¶ 9.)  Sims was detained in Riverhead from May 2010 through April 20, 2012.  (CAC ¶ 10; Defs. Mot. 21; Pls. Opp. 11.)  Lofton has been detained in Yaphank since September 2011; he is awaiting trial.  (CAC ¶ 11.)  Alver was detained at Yaphank from September 2011 through May 18, 2012.  (CAC ¶ 12; Defs. Mot. 21; Pls. Opp. 11.)  King was detained in Riverhead from January 2011 through April 2012. (CAC ¶ 13.)  And Rickey Lynch was detained in Yaphank from July 2010 through November 2010 and in Riverhead from November 2010 through October 2011.  (CAC ¶ 14.)  While detained at the SCCF, each of the Named Plaintiffs was exposed to the conditions described above, which caused them to suffer from intestinal issues, skin conditions, respiratory infections, fungal infections, nose bleeds, headaches, blurred vision, and dizziness.  (CAC ¶¶ 9-15.)

C.    <u>The Defendants</u>

Defendant Suffolk County operates the SCCF through its Sheriff's Office.  (CAC ¶ 17.)  Defendant DeMarco has been the Sheriff of Suffolk County since November 8, 2005.  (CAC ¶ 18.) Defendants Caracappa and Meyerricks are undersheriffs and DeMarco's deputies.  (CAC ¶ 19.)  The Consolidated Amended Complaint asserts that Defendants "knew or should have known" of the inhumane conditions at SCCF due to, among other things, reports from the Suffolk County Budget Review Office, testimony before the Public Safety and Public Information Committee of the Suffolk County Legislature, a study published by the Suffolk County Criminal Justice Coordinating Council, and statements made by the New York State Commission of Corrections regarding the "seriously deficient" and possibly unconstitutional conditions at the SCCF.  (CAC ¶¶ 152-184.)

DISCUSSION

On May 16, 2012, Defendants moved to dismiss the Consolidated Amended Complaint, and, on May 17, 2012, the Named Plaintiffs moved for class certification.  These motions are presently pending before the Court.  The Court will address both motions here, starting with Defendants' motion to dismiss.

I.    <u>Motion to Dismiss</u>

The Court will discuss the applicable standards of review before addressing the merits of Defendants' arguments.

10

A.   Standards of Review

Although Defendants purport to move to dismiss solely under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, their motion also seeks dismissal on the grounds that this Court lacks subject matter jurisdiction, which is governed by Rule 12(b)(1).

1.   Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, --- U.S. ----, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).   In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.   See Makarova, 201 F.3d at 113.   The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of the plaintiff because subject matter jurisdiction must be shown affirmatively.   See Morrison, 547 F.3d at 170; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).   The plaintiff bears the burden of establishing

subject matter jurisdiction by a preponderance of the evidence. Morrison, 547 F.3d at 170.

        2.   Under Rule 12(b)(6)

        In deciding Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citation omitted); accord Harris, 572 F.3d at 72. Further, although Defendants have attached exhibits in support of their motion, in deciding a motion to dismiss for failure to state a claim, the Court is confined to "the allegations contained

12

within the four corners of [the] complaint." <u>Pani v. Empire</u>
<u>Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998).

    B.   <u>Subject Matter Jurisdiction</u>

       Defendants raise two arguments in support of their
application to dismiss for lack of subject matter jurisdiction:
(1) the Named Plaintiffs lack standing and (2) some of the
claims for injunctive relief are now moot.  The Court will
address each argument separately.

    1.   <u>Standing</u>

       Under Article III of the United States Constitution,
federal courts are confined "to adjudicating actual 'cases' and
'controversies.'"  <u>Allen v. Wright</u>, 468 U.S. 737, 750, 104 S.
Ct. 3315, 82 L. Ed. 2d 556 (1984); <u>see also</u> U.S. Const., art. III,
§ 2.  "This limitation is effectuated through the requirement of
standing."  <u>Cooper v. U.S. Postal Serv.</u>, 577 F.3d 479, 489 (2d
Cir. 2009) (citing <u>Valley Forge Christian Coll. v. Ams. United</u>
<u>for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471–72,
102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)); <u>see also</u> <u>United States</u>
<u>v. Grundhoefer</u>, 916 F.2d 788, 791 (2d Cir. 1990).  There are
three requirements to establish Article III standing:  "(1) the
plaintiff must have suffered an injury-in-fact; (2) there must
be a causal connection between the injury and the conduct at
issue; and (3) the injury must be likely to be redressed by a
favorable decision."  <u>Cooper</u>, 577 F.3d at 489; <u>see also</u> <u>Allen</u>,

468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Here, Defendants argue that the Named Plaintiffs have failed to plead that they suffered an injury-in-fact. The Court disagrees.

"To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003) (quoting Lujan, 504 U.S. at 560); cf. Amnesty Int'l U.S.A. v. Clapper, 667 F.3d 163, 171 (2d Cir. 2011) ("The critical inquiry for standing is whether the plaintiffs are simply citizens with an abstract claim that some action was unlawful, or whether they, in some particular respect not shared by every person who dislikes the action, are injured by that action."). Injury is "concrete and particularized" if it "affect[s] the plaintiff in a personal and individual way," Lujan, 504 U.S. at 560 n.1; accord Baur, 352 F.3d at 632, and injury is "actual or imminent" if the plaintiff "has sustained or is immediately in danger of sustaining some direct injury," City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (internal quotation marks and citation omitted).

14

Here, the Consolidated Amended Complaint asserts that the Named Plaintiffs were all "exposed to the conditions" in the SCCF (CAC ¶¶ 9-14) and that they suffered "intestinal illnesses, skin conditions, respiratory infections, fungal infections, nose bleeds, headaches, blurred vision, and dizziness" (CAC ¶ 15).[2] The Court finds that these injuries are sufficiently particularized and actual to satisfy the standing requirement at this stage of the litigation. See Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (alteration in original) (quoting Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)).

Accordingly, to the extent that Defendants seek to dismiss for lack of standing, their motion is DENIED.

---

[2] Defendants appear to take issue with the fact that this paragraph refers to the Named Plaintiffs as "Plaintiffs," as opposed to the "named Plaintiffs" as they are defined earlier in the CAC. Thus, Defendants argue that paragraph 15 must be referring to the class plaintiffs and not the Named Plaintiffs specifically. The Court disagrees. Paragraph 15 follows descriptions of each of the Named Plaintiffs and is in a subsection titled "the Named Plaintiffs." On the other hand, elsewhere in the CAC, the purported class members are referred to generally as "the men" housed in the facilities and never as "Plaintiffs." Thus, the Court finds that it is clear that paragraph 15 is discussing the injuries sustained by the Named Plaintiffs.

    2.   <u>Mootness</u>

"A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" <u>Fox v. Bd. of Trustees of State Univ. of N.Y.</u>, 42 F.3d 135, 140 (2d Cir. 1994) (quoting <u>Cnty. of L.A. v. Davis</u>, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)); <u>see also</u> <u>Cnty. of Suffolk v. Sebelius</u>, 605 F.3d 135, 140 (2d Cir. 2010) (stating that under the doctrine of mootness, a court's "subject matter jurisdiction ceases when 'an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party.'" (quoting <u>United States v. Quattrone</u>, 402 F.3d 304, 308 (2d Cir. 2005)). Defendants argue that Plaintiffs Alvers and Sims' claims for injunctive and declaratory relief must be dismissed as moot because they are no longer incarcerated at SCCF.[3] The Court disagrees.[4]

---

[3] Plaintiffs King and Lynch are also no longer confined in the SCCF; however, they are not seeking declaratory or injunctive relief.

[4] The Court notes that this entire discussion is academic. Two of the Named Plaintiffs are still incarcerated in the SCCF and, thus, unquestionably have standing to seek the declaratory and injunctive relief requested in the Consolidated Amended Complaint, and the Named Plaintiffs that are no longer at SCCF may still seek monetary relief.

Although "[i]n this [C]ircuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility," Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006); see also Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996), in class actions, "an individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished," Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir. 1994) (internal quotation marks and citation omitted) (collecting Supreme Court decisions); see also id. ("[C]lass certification will preserve an otherwise moot claim.").  That a class has not yet been certified does not necessarily deprive this Court of jurisdiction.  See Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 52, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991); see also Krimstock v. Kelly, 306 F.3d 40, 70 n.34 (2d Cir. 2002).  The Supreme Court has held that a class plaintiff's standing will "relate back" to the filing of the complaint if the claims asserted are "so inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's interest expires."  McLaughlin, 500 U.S. at 52; see also Swisher v. Brady, 438 U.S. 204, 213 n.11, 98 S. Ct. 2699, 57 L. Ed. 2d 705 (1978).  For example, in Gerstein v. Pugh, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), the Supreme Court found that

17

claims challenging pretrial detention conditions were not moot, even though the named plaintiffs were no longer pretrial detainees, because "[p]retrial detention is by its nature temporary, and . . . [i]t is by no means certain that any given individual, named as a plaintiff, would be in pretrial custody long enough for a district judge to certify a class." Id. at 110 n.11; see also Amador v. Andrews, 655 F.3d 89, 100-101 (2d Cir. 2011).  The Court finds that the same rationale applies here, as inmates at the SCCF are either pretrial detainees or men serving sentences of one year or less.

Accordingly, the Court finds that Alvers and Sims' standing relates back to filing of the Consolidated Amended Complaint, at which time they were both incarcerated at the SCCF,[5] and Defendants' motion to dismiss their claims for injunctive and declaratory relief is DENIED.

C.    Failure to State a Claim

Defendants also move to dismiss for failure to state a claim.  The Court will address the arguments as they pertain to the Named Plaintiffs' federal and state claims separately.

---

[5] Although Sims was no longer at SCCF when the motion for class certification was filed, it is the date of the complaint, not the date of the certification motion, that is relevant.  See, e.g., Mental Disability Law Clinic v. Hogan, No. 06-CV-6320, 2008 WL 4104460, at *10 (E.D.N.Y. Aug. 29, 2008) ("[T]here is no requirement in the Second Circuit that a representative's claim must be live at the time that the motion to certify is filed." (collecting cases)).

1.  Section 1983 Claims

The Named Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of both the Eighth and Fourteenth Amendments of the United States Constitutions arising out of the allegedly "cruel and inhumane prison conditions" at SCCF. (CAC ¶¶ 186, 188.)  The Eighth Amendment prohibits "cruel and unusual punishments," and the Supreme Court has held that this requires the conditions of a prisoner's confinement to be "humane," Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), although not necessarily "comfortable," Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  See also Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012); Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001).  Although the Eighth Amendment's protection only applies to convicted prisoners, the right of pretrial detainees not to be subjected to cruel or unusual punishment is protected by the Fourteenth Amendment.  See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citing Graham v. Connor, 490 U.S. 386, 392 n.6, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)).  The same legal standard governs conditions-of-confinement claims brought under the Eighth and Fourteenth Amendments.  See Caiozzo v. Koreman, 581 F.3d 63, 71 & n.4 (2d Cir. 2009) (collecting cases).

Defendants argue that these claims must be dismissed because the Named Plaintiffs have failed to plead: (1) that they exhausted their administrative remedies and (2) that they suffered any physical injury.  Further, to the extent that the Named Plaintiffs assert their Section 1983 claims against Defendants DeMarco, Caracappa, and Meyerricks, Defendants assert that they must be dismissed for failure to adequately plead supervisory liability.  The Court will address each argument in turn.

a.   Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") provides, in relevant part, that:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).  Defendants argue that the Consolidated Amended Complaint must be dismissed because none of the Named Plaintiffs filed any grievances regarding the

20

conditions at SCCF prior to commencing this action.  The Court disagrees.

Because failure to exhaust is an affirmative defense, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." Roland v. Smith, --- F. Supp. 2d ----, 2012 WL 601071, at *2 (S.D.N.Y. Feb. 22, 2012) (citing McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).  Here, the Consolidated Amended Complaint asserts that "the men have raised the[] unsanitary and hazardous conditions [at SCCF] with corrections officials on many occasions" but that the "conditions have persisted unabated."  (CAC ¶¶ 78, 109.)  Thus, it is not clear from the face of the Consolidated Amended Complaint whether the Named Plaintiffs have exhausted their administrative remedies, so dismissal is inappropriate at this stage of the litigation. See McCoy, 255 F. Supp. 2d at 249 ("[I]f, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle."); see also, e.g., Benjamin v. Flores, No. 11-CV-4216, 2012 WL 5289513, at *5 (E.D.N.Y. Oct. 23, 2012) (collecting cases).

Further, even if the Named Plaintiffs[6] did not formally exhaust their administrative remedies, exhaustion may be excused if: (1) administrative remedies were unavailable; (2) the defendants forfeited the defense or acted in such a way as to estop them from raising it; or (3) "special circumstances" justify non-exhaustion. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004); see also Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011). Such a determination cannot be made on an undeveloped record. See Harris v. Westchester Cnty. Dep't of Corrs., No. 06-CV-2011, 2008 WL 953616, at *4 (S.D.N.Y. Apr. 3,

---

[6] The Named Plaintiffs assert that, even though Plaintiff King was in custody when he was joined as a party, he is not subject to the exhaustion requirement because he was released from custody prior to the filing of the CAC. (Pls. Opp. 19.) Although the exhaustion requirement does not apply to a former prisoner who institutes an action after he is released from custody, see Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999), it does apply to prisoners who, like King, are released from custody during the pendency of the action, see Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2003). That Plaintiff King filed the CAC after being released from custody does not relieve him of the PLRA's exhaustion requirement. See Prescott v. Annetts, No. No. 09-CV-4435, 2010 WL 3020023, at *4 (S.D.N.Y. July 22, 2010) ("There is no reason why his failure to exhaust should be excused merely because he amended his complaint after being released from custody."); see also DeFreitas v. Montgomery Cnty. Corr. Facility, No. 08-CV-5330, 2012 WL 2920219, at *6-7 (E.D. Pa. July 18, 2012). The cases cited by the Named Plaintiffs in their brief (Pls. Opp. 13 n.7) are either distinguishable or no longer good law. See, e.g., Gibson v. Comm'r of Mental Health, No. 04-CV-4350, 2006 WL 1234971, at *6 (S.D.N.Y. May 8, 2006) (discussing the "three-strikes" rule); Prendergast v. Janecka, No. 00-CV-3099, 2001 WL 793251 (E.D. Pa. July 10, 2001), abrogated by Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

2008); <u>Brown v. Austin</u>, No. 05-CV-9443, 2007 WL 2907313, at *3 (S.D.N.Y. Oct. 3, 2007).

Accordingly, to the extent that Defendants seek to dismiss the Consolidated Amended Complaint for failure to comply with the PLRA's exhaustion requirement, their argument is premature and their motion is DENIED.

b.   <u>Failure to Plead Physical Injury</u>

The PLRA further provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Defendants argue that the Consolidated Amended Complaint must be dismissed because the Named Plaintiffs have failed to plead that they personally suffered any physical injury. The Court disagrees. Although the majority of the Consolidated Amended Complaint discusses the conditions that were faced by "the men" confined in the SCCF and not specifically the Named Plaintiffs, the Consolidated Amended Complaint also states that the Named Plaintiffs, "[a]s a result of their confinement in the SCCF and exposure to the conditions described" therein, "suffered intestinal illnesses, skin conditions, respiratory infections, fungal infections, nose bleeds, headaches, blurred vision, and dizziness." (CAC ¶ 15.) <u>See also</u> <u>supra</u> note 2. These conditions clearly constitute

23

"physical injury" sufficient to satisfy the PLRA.  See Waters v.
Andrews, No. 97-CV-0407, 2000 WL 1611126, at *8 (W.D.N.Y. Oct.
16, 2000) ("A reasonable jury could find that the term 'physical
injury' as used in § 1997e(e) includes exposure to noxious
odors, including body odors from human discharges, and
'dreadful' conditions of confinement . . . ."). Further,
"Section 1997e(e) does not limit the availability of nominal [or
punitive] damages for the violation of a constitutional right"
or the ability to seek declaratory or injunctive relief.
Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002).
Accordingly, to the extent that Defendants seek to dismiss the
Consolidated Amended Complaint for failure to plead physical
injury, their motion is DENIED.

        c.   Failure to Plead Supervisory Liability

      A prison official may be held personally liable for a
claim of cruel and inhuman treatment "only if he knows that
inmates face a substantial risk of serious harm and disregards
that risk by failing to take reasonable measures to abate it."
Farmer, 511 U.S. at 847.  Here, the Consolidated Amended
Complaint asserts that DeMarco, Caracappa, and Meyerricks "knew
or should have known" of the "visibly deplorable and
unconstitutional conditions" at SCCF due to the numerous
complaints made by inmates as well as reports from the State and
several Suffolk County offices and agencies describing the

24

conditions in the facilities.  (CAC ¶¶ 179-182 (emphasis added),
see also id. ¶¶ 30-31, 34-36, 155-71.)  However, the Supreme
Court has made clear that "[a]n official's failure to alleviate
a significant risk that he should have perceived but did not,
while no cause for commendation," does not amount to a
constitutional violation.  Farmer, 511 U.S. at 838 (emphasis
added).  Rather, the official must "be aware of facts from which
the inference could be drawn that a substantial risk of serious
harm exists."  Id. at 837; see also Salahuddin, 467 F.3d at 280
(finding that the official must have "act[ed] or fail[ed] to act
while actually aware of a substantive risk that serious inmate
harm will result"); Caiozzo, 581 F.3d at 69-71.  As the
Consolidated Amended Complaint does not plead actual knowledge,
but rather constructive knowledge, the claims against Defendants
DeMarco, Caracappa, and Meyerricks must be dismissed.  See
Goodson v. Wright, No. 11-CV-0541, 2012 WL 3686222, at *5
(N.D.N.Y. May 23, 2012), adopted by 2012 WL 3655505 (N.D.N.Y.
Aug. 24, 2012); see also Broschart v. O'Connor-Ryerson, No. 11-
CV-0405, 2012 WL 555307, at *3 (N.D.N.Y. Jan. 17, 2012)
("'[K]new or should have known' is not the applicable test for
deliberate indifference."), adopted by 2012 WL 555407 (N.D.N.Y.
Feb. 21, 2012); Miller v. Rosini, No. 09-CV-7300, 2011 WL
924230, at *7 (S.D.N.Y. Mar. 17, 2011) ("[N]egligent conduct, no
matter how serious the resulting injury, does not rise to the

level of a constitutional violation." (citing <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 848, 855, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).[7]

In the alternative, the Named Plaintiffs argue that DeMarco, Caracappa, and Meyerricks can be held liable under a theory of supervisory liability. Although "'[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983,'" <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)); <u>Iqbal</u>, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."), a supervisory official can nonetheless be held liable if he "participated directly in the alleged constitutional violation [or] . . . created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom," <u>Colon</u>, 58 F.3d at

_____

[7] The Court notes that Plaintiffs' opposition brief asserts that the individual defendants did, in fact, have knowledge of the allegedly unconstitutional conditions at SCCF. (Pls. Opp. 20-21.) However, the Court, in reviewing a motion to dismiss for failure to state a claim, is limited to the allegations in the complaint, and, here, the Consolidated Amended Complaint asserts that the individual defendants "knew or should have known" of the conditions (CAC ¶¶ 179-182).

873.[8]    The   Named   Plaintiffs   argue   that   "the   Individual

Defendants' refusal to allocate funds" to the SCCF was part of

"a  longstanding  policy  created  or  continued  by  the  Individual

Defendants  to  allow  overcrowding  in  the  SCCF  in  a  specific

effort  to  lessen  the  financial  burden  of  alternative  housing,

and  to  otherwise  administer  the  SCCF  as  cheaply  as  possible."

(Pls. Opp. 23.)   However, the Consolidated Amended Complaint is

void  of  any  allegations  that  the  decision  not  to  invest

financially  in  improving  the  SCCF  was  made  by  any  of  the

individual  Defendants.     Rather,   the   Consolidated   Amended

Complaint  appears  to  assert  that  this  decision  was  made  by  the

---

[8] The Second Circuit in Colon actually listed five ways that a
plaintiff can establish supervisory liability--not just the two
described above--including failure to remedy a wrong after being
informed of the violation, grossly negligent supervision of
subordinates who committed the wrongful acts, and deliberate
indifference to the rights of inmates.  58 F.3d at 873.
However, the "continuing vitality" of these additional methods
has "engendered conflict within our Circuit" due to the Supreme
Court's decision in Iqbal.  Reynolds v. Barrett, 685 F.3d 193,
206 (2d Cir. 2012).  In Iqbal, the Supreme Court rejected the
argument that "a supervisor's mere knowledge of his
subordinate's discriminatory purpose amounts to the supervisor's
violating the Constitution."  556 U.S. at 677.  Although the
Second Circuit has yet to determine the effects of Iqbal on the
Colon-factors, the weight of authority among the district courts
in the Eastern District of New York suggests that only two of the
Colon-factors--direct participation and the creation of a
policy or custom--survive Iqbal.  See, e.g., Firestone v.
Berrios, --- F. Supp. 2d ----, 2013 WL 297780, at *9-10
(E.D.N.Y. Jan. 22, 2013); Doe v. New York, No. 10-CV-1792, 2012
WL 4503409, at *8 n.3 (E.D.N.Y. Sept. 28, 2012); Warrender v.
United States, No. 09-CV-2697, 2011 WL 703927, at *5 n.1
(E.D.N.Y. Feb. 17, 2011).  This Court agrees and, thus, will
limit its discussion to only those two factors.

County.   (See CAC ¶¶ 157-59 (discussing the County's allocation
of funds to the SCCF.)   Accordingly, the Section 1983 claims
asserted against DeMarco, Caracappa, and Meyerricks are
DISMISSED WITHOUT PREJUDICE.

> 2.   State Law Claims

Defendants argue that the Named Plaintiffs' state
common law claim for negligence must be dismissed for failing to
serve a notice of claim pursuant to New York's General Municipal
Law.   Section 50-e of the General Municipal Law requires a
plaintiff to file a notice of claim prior to commencing an
action in tort against a municipality or one of its employees.
N.Y. GEN. MUN. LAW § 50-e; see also id. § 50-m (extending the
notice of claim requirement of Section 50-e to police and peace
officers employed by Suffolk County).   This requirement
"appl[ies] equally to state tort claims brought as pendent
claims in a federal civil rights action," Warner v. Vill. of
Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003),
and a plaintiff's failure to file a notice of claim "prior to
the commencement of litigation ordinarily requires dismissal,"
Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 62, 484 N.Y.S.2d
533, 535, 473 N.E.2d 761, 763 (1984).

The Named Plaintiffs do not deny that they failed to
file a notice of claim prior to commencing suit.   Instead, they
argue that they are exempt from this requirement pursuant to

"the well-settled public interest exemption." (Pls. Opp. 24.)
The Court agrees.  The New York Court of Appeals has stated that
"the failure to timely file a notice of claim shall be fatal
unless the action has been brought to vindicate a public
interest . . . ." Mills v. Monroe Cnty., 59 N.Y.2d 307, 308,
464 N.Y.S.2d 709, 709, 451 N.E.2d 456, 456 (1983); see also
Union Free Sch. Dist. No. 6 v. N.Y. State Human Rights Appeal
Bd., 35 N.Y.2d 371, 379-80, 362 N.Y.S.2d 139, 144-45, 320 N.E.2d
859, 862-63 (1974).[9]  An action seeks to vindicate a public
interest and is "deserving of special treatment" if it was
"brought to protect an important right, and seek[s] relief for a
similarly situated class of the public, and whose resolution
would directly affect the rights of that class or group."
Mills, 59 N.Y.2d at 311, 464 N.Y.S.2d at 711, 451 N.E.2d at 458.
The Court finds that this action, which is seeking injunctive
and declaratory relief regarding the conditions at SCCF, more
than satisfies this test.

---

[9] Defendants argue that the exemption articulated in Mills only
applies to N.Y. COUNTY LAW § 52, which requires plaintiffs to file
a notice of claim in any action against a county to recover
damages under New York's Human Rights Law.  (Defs. Reply 9-10.)
Although the Court of Appeals in Mills applied the public
interest exemption in the context of COUNTY LAW § 52's notice of
claim requirement, courts in New York have extended the
exemption to GENERAL MUNICIPAL LAW § 50-e's notice of claim
requirement as well.  See, e.g., Garcia v. Bloomberg, 865 F.
Supp. 2d 478, 491 (S.D.N.Y. 2012); Green v. City of N.Y., 438 F.
Supp. 2d 111, 125 (E.D.N.Y 2006).  Thus, Defendants' argument is
without merit.

Defendants argue that the exemption does apply here because no class has been certified. (Defs. Reply 9.) This argument is illogical. If class certification was a prerequisite to the court's application of the public interest exemption, then the exemption would never apply. Defendants would just move to dismiss as early as possible in the litigation--before plaintiffs have an opportunity to move for class certification. Further, courts in New York have applied the exemption to cases without a certified class. See, e.g., Green, 438 F. Supp. 2d at 125; Scaggs v. N.Y. Dep't of Educ., No. 06-CV-0799, 2007 WL 1456221, at *1 n.1, 20 (E.D.N.Y. May 16, 2007).

Accordingly, Defendants' motion to dismiss the state law claims is DENIED.

II. Motion for Class Certification

The Named Plaintiffs seek to certify two classes: an Injunctive Class and a Damages Class. The Injunctive Class is comprised of those seeking injunctive and declaratory relief and is defined as follows:

> All persons who, now or at any time in the future, are or will be detainees or prisoners in the custody of the Suffolk County Sheriff's Department and housed in the Suffolk County Correctional Facilities located in Riverhead, New York and Yaphank, New York.

(CAC ¶ 21.)   Plaintiffs Butler, Sims, Lofton, and Alver are the proposed class representatives for the Injunctive Class. (Pls. Mot. 5.)   The Damages Class is comprised of those seeking monetary relief and is defined as follows:

> All persons who are or were detainees or prisoners in the custody of the Suffolk County Sheriff's Department and housed in the Suffolk County Correctional Facilities ("SCCF") located in Riverhead, New York and Yaphank, New York, and who were or will be released from the SCCF on or after April 5, 2009.

(Compl. ¶ 22.)   Plaintiff King is the proposed class representative for the Damages Class. (Pls. Mot. 6.)

For these putative classes to be certified under Rule 23, the Named Plaintiffs must establish, by a preponderance of the evidence, that the proposed classes meet the four prerequisites set forth in subsection (a) and fit into one of the categories of class actions enumerated in subsection (b). FED. R. CIV. P. 23; see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201-02 (2d Cir. 2008). Although "a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met," Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.), 471 F.3d 24, 41 (2d Cir. 2006); see also Teamsters, 546 F.3d at 204 ("[A] court [must] receive enough evidence, by affidavits, documents, or testimony,

31

to be satisfied that each Rule 23 requirement has been met."
(internal quotation marks and citation omitted)), the
requirements should be "given liberal rather than restrictive
construction," Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d
Cir. 1997).

A.    Rule 23(a) Prerequisites

To be certified under Rule 23, a putative class must
establish that:

> (1)  the class is so numerous that joinder
> of all members is impracticable;
>
> (2)  there are questions of law or fact
> common to the class;
>
> (3)  the claims or defenses of the
> representative parties are typical of
> the claims or defenses of the class;
> and
>
> (4)  the representative parties will fairly
> and adequately protect the interests of
> the class.

FED. R. CIV. P. 23(a). "Additionally, while it is not explicitly
spelled out in Rule 23, courts have added an 'implied
requirement of ascertainability' with respect to the class
definition." Colozzi v. St. Joseph's Hosp. Health Ctr., 275
F.R.D. 75, 83 (N.D.N.Y. 2011) (citing In re Initial Pub.
Offerings, 471 F.3d 24, 30 (2d Cir. 2006)).  The Court will
address each requirement separately.

1.   Numerosity

The first prerequisite that the Named Plaintiffs must establish is that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Defendants argue that the Named Plaintiffs have failed to establish numerosity because: (1) the number of actual potential class members is based on speculation because the Named Plaintiffs have "present[ed] no evidence that any particular plaintiff, named or potential, has actually suffered harm as a result of defendants' purported conduct" (Defs. Opp. 6); (2) "a presumption that there would be so many [class members] as to render joinder impracticable is dubious in light of the history of this class" (Defs. Opp. 7); (3) is it "questionable" that judicial economy would be furthered by a class action (Defs. Opp. 8), and (4) there is no evidence "that there are sufficient exhausting plaintiffs who may now proceed to sue" (Defs. Opp. 6).

Defendants' first three arguments are beyond frivolous, as more than 100 separate complaints alleging injuries resulting from the unsanitary and purportedly unconstitutional conditions at the SCCF have been consolidated into this action, and "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Further, if the motion for class

certification is denied, the claims of each of the plaintiffs whose complaints have been consolidated herein shall be severed, their prior cases reopened and reinstated, and their actions litigated separately because their interests will no longer be represented in the instant action. Thus, it is far from "questionable" that proceeding as a class action will save significant time and resources for both the Court and defense counsel.

Defendants' fourth argument warrants more discussion. Defendants argue that each class member must exhaust its administrative remedies, whereas the Named Plaintiffs argue that exhaustion is limited to the class representatives. Although there is no case law in the Second Circuit directly on point, other circuit courts across the country have held that the PLRA's exhaustion requirement is limited to the class representatives. See Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004) (holding that "a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through 'vicarious exhaustion,' i.e., when one or more class members ha[s] exhausted his administrative remedies with respect to each class claim raised by the class" (alteration in original) (internal quotation marks and citation omitted)); Gates v. Cook, 376 F.3d 323, 330 (5th Cir. 2004) (stating that one class member's

exhaustion "is enough to satisfy [the PLRA's exhaustion] requirement for the class"); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001) (explaining that so long as one member of the prisoner-class pursued the available administrative remedies, "the plaintiff class has met the filing prerequisite" (quoting Foster v. Gueory, 655 F.2d 1319, 1321-22 (D.C. Cir. 1981); see also In re Nassau Cnty. Strip Search Cases, No. 99-CV-2844, 2010 WL 3781563, at *8 (E.D.N.Y. Sept. 22, 2010) ("[G]iven that exhaustion allows prison officials an opportunity to address the merits of a claim and that requiring all class members to exhaust could unduly burden a complaint system, tethering exhaustion to named plaintiffs makes sense."); cf. U.S. ex rel. Sero v. Preiser, 506 F.2d 1115, 1130 (2d Cir. 1974) (finding that a class of prisoners seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 satisfied the exhaustion requirement through vicarious exhaustion). Therefore, the Court finds that whether the purported class members have exhausted their administrative remedies is irrelevant to the class certification analysis.

Thus, as there are at least 163 members of the purported class, numerosity has been satisfied.

2.   Commonality

Although Rule 23(a)(2) states that the commonality requirement is met if "there are questions of law or fact common

35

to the class," FED. R. CIV. P. 23(a)(2), the Supreme Court has
recently clarified the meaning of the Rule, stating that
"[c]ommonality requires the plaintiff to demonstrate that the
class members 'have suffered the same injury'" as opposed to
simply "suffer[ing] a violation of the same provision of law."
Wal-Mart Stores, Inc. v. Dukes, --- U.S. ----, 131 S. Ct. 2541,
2551, 180 L. Ed. 2d 374 (2011) (quoting Gen. Tele. Co. of Sw. v.
Falcon, 457 U.S. 147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740
(1982)); see also M.D. ex rel. Stukenberg v. Perry, 675 F.3d
832, 840 (5th Cir. 2012) ("After Wal-Mart, Rule 23(a)(2)'s
commonality requirement demands more than the presentation of
questions that are common to the class because 'any competently
crafted class complaint literally raises common questions.'"
(quoting Wal-Mart, 131 S. Ct. at 2551)).  Thus, "[w]hat matters
to class certification . . . is not the raising of common
'questions'--even in droves--but, rather the capacity of a
classwide proceeding to generate common answers apt to drive the
resolution of the litigation."  Wal-Mart, 131 S. Ct. at 2551
(omission in original) (internal quotation marks and citation
omitted).  In other words, the class claims "must depend upon a
common contention . . . of such a nature that it is capable of
classwide resolution--which means that the determination of its
truth or falsity will resolve an issue that is central to the
validity of each of the class claims in one stroke."  Id.

36

The Court finds that there is such a "common contention" here.  To state a claim for violation of the Eighth and Fourteenth Amendment's prohibition against cruel and unusual punishment, the Named Plaintiffs must show: "(1) a deprivation that is 'objectively, sufficiently serious' that [they] w[ere] denied the 'minimal civilized measure of life's necessities,' and (2) a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety." Gaston v. Coughlin, 249 F.3d at 164 (quoting Farmer, 511 U.S. at 834); accord Jabbar, 683 F.3d at 57.  Whether the County was aware of and deliberately indifferent to the conditions at the SCCF is a common question subject to class-wide resolution.  See Wal-Mart, 131 S. Ct. at 2556 ("[F]or the purposes of Rule 23(a)(2) [e]ven a single [common] question will do." (second and third alterations in original) (internal quotation marks and citation omitted)).

The Named Plaintiffs argue that there is an additional common contention subject to class-wide resolution:  "whether inmates have experienced chronic exposure to human waste, mold-covered, rusty showers smelling of sewage, inadequate ventilation, prolonged exposure to mold, rust, vermin, freezing temperatures, and leaking water, and contaminated drinking water and food."  (Pls. Mot. 10-11 (citations omitted).)  The Court disagrees.  The allegations in the Consolidated Amended

37

Complaint relate to two separate facilities: Riverhead and Yaphank. And although the conditions in the two facilities are alleged to be similar, a determination that the conditions at Riverhead are "objectively, sufficiently serious" enough to deny the Riverhead inmates "the minimal civilized measure of life's necessities," Gaston, 249 F.3d at 164 (internal quotation marks and citation omitted), does not answer the question of whether the conditions at Yaphank were also unconstitutionally inhumane and vice versa.

However, the Court "is not bound by the class definition proposed in the complaint," Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993), and "is empowered under [Rule 23(c)(5)] to carve out an appropriate class--including the construction of subclasses," Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir. 1993). Thus, the Court finds that the Injunctive and Damages classes must be divided into subclasses--one for each facility[10]--so that the actual nature of the conditions at Riverhead and Yaphank and whether those conditions fall below constitutionally acceptable standards will be subject to (sub)class-wide resolution. See, e.g., Langley v. Coughlin, 715 F. Supp. 522, 555 (S.D.N.Y. 1989)

---

[10] Butler and Sims shall represent the Riverhead Injunctive Subclass; Lofton and Alver shall represent the Yaphank Injunctive Subclass. King shall represent the Riverhead Damages Subclass, and Lynch shall represent the Yaphank Damages Subclass.

(finding the commonality requirement satisfied for a proposed class of inmates asserting conditions-of-confinement claims arising out of their confinement to the special housing unit ("SHU") at the Bedford Hills Correctional Facility because "common issues include[d] whether the alleged conditions on SHU --including noise, smell, lack of hygiene, smoke and fire, and potentially traumatic unusual incidents--can amount to a violation of constitutional standards; the actual nature of conditions on SHU throughout the time period in question; and the effect that such conditions are likely to have on a person confined in SHU").

        3.   <u>Typicality</u>

Rule 23(a)'s typicality requirement "requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" <u>Marisol A.</u>, 126 F.3d at 376 (quoting <u>S.E.C. v. Drexel Burnham</u> <u>Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)</u>, 960 F.2d 285, 291 (2d Cir. 1992)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." <u>Robidoux</u>, 987

F.2d at 936-37.  Here, the Court finds that the Named Plaintiffs for the Riverhead and Yaphank subclasses have satisfied the typicality requirement, as, for each subclass, they allege injuries arising out of the same allegedly unconstitutional conditions.  Although the extent of their exposure to these conditions and the exact nature of their injuries will necessarily differ from those of the proposed class members, "[t]he representative claims need not be identical to the claims of every class member in order to meet the typicality requirement."  Marriot v. Cnty. of Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y. 2005) (citing McNeill v. N.Y.C. Hous. Auth., 719 F. Supp. 233, 252 (S.D.N.Y. 1989)).

Defendants argue that typicality is not satisfied here because:  (1) the Injunctive Class seeks to include all future inmates and (2) the Named Plaintiffs' claims are subject to defenses separate and apart from the rest of the class-- specifically mootness and failure to exhaust.

First, with respect to the Injunctive Class, it is not only proper, but preferred, to include future detainees.  See Inmates of Lycoming Cnty. Prison v. Strode, 79 F.R.D. 228, 231 (M.D. Pa. 1978) ("In the context of challenging prison conditions any action taken or not taken will, of course, have an effect on those who are incarcerated at the prison in the future.  The use of the class form is a desirable and logical

way to challenge prison conditions and it only make sense to
include future inmates."); see also, e.g., Clarkson v. Coughlin,
145 F.R.D. 339, 346-47 (S.D.N.Y. 1993) (defining classes to
include all present and future inmates); Powell v. Ward, 487 F.
Supp. 917, 921 (S.D.N.Y. 1980) (certifying class of "all persons
who are now and who may be incarcerated in Bedford Hills
Correctional Facility").   If, as Defendants suggest, the
conditions at SCCF improve dramatically, then the class will not
be entitled to injunctive relief.   This remote possibility of
improvement does not preclude the certification of a class of
all present and future detainees.

   Second, although Defendants are correct that
typicality is not satisfied "where a putative class
representative is subject to unique defenses which threaten to
become the focus of the litigation," Baffa v. Donaldson, Lufkin
& Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (internal
quotation marks and citation omitted), no such defenses exist
here.   The Court previously rejected the mootness argument.   See
supra pp. 15-18.   And the exhaustion defense is not unique to
the Named Plaintiffs because, as Defendants assert, none of the
proposed class members incarcerated in the SCCF has exhausted
his administrative remedies.   Thus, whether exhaustion should be
excused because administrative remedies were unavailable, or due

to estoppel or other special circumstances, see Hemphill, 380
F.3d at 686, is a question common to all members of the class.

Therefore, the Court finds that the typicality
requirement is satisfied here.

### 4.  Adequacy of Class Representation

The adequacy requirement under Rule 23(a)(4) "is
twofold: the proposed class representative must have an interest
in vigorously pursuing the claims of the class, and must have no
interests antagonistic to the interests of other class members."
Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).
Further, class counsel must be "qualified, experienced and able
to conduct the litigation."  Baffa, 222 F.3d at 60.

### a.  Class Representatives

Defendants argue that the class representatives are
inadequate: (1) "due to the fatal effects of the PLRA and
mootness defenses" (Defs. Opp. 15); (2) because some of the
class representatives are now serving lengthy jail sentences in
facilities across the state, which will make communications with
counsel difficult (Defs. Opp. 16); (3) because "they have not
shown that they have the financial ability to fund this
litigation" (Defs. Opp. 16); and (4) because some of the class
representatives have failed to provide Defendants with executed
releases for their grievance and medical files (Zwilling Decl.

42

¶¶ 7-10).  The Court finds that none of these arguments have any merit.

"Courts that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case."  In re Frontier Ins. Grp., Inc. Sec. Litig., 172 F.R.D. 31, 47 (E.D.N.Y. 1997) (internal quotation marks and citations omitted).  This is not such a case.  First, the Court has already rejected Defendants' exhaustion and mootness defenses.  See supra pp. 15-18, 20-22, 41.  Second, that some of the class representatives remain incarcerated does not affect their interest in vigorously pursuing the claims of the class. Third, Shearman & Sterling and the New York Civil Liberties Union ("NYCLU") have agreed to take on this case pro bono; thus, the Named Plaintiffs will not be responsible for legal fees and costs.  And finally, the purported discovery abuses alleged by Defendants are not the type of "'glaring violations of the discovery rules' that typically lead to the disqualification of class representatives for discovery violations."  Koss v. Wackenhut Corp., No. 03-CV-7679, 2009 WL 928087, at *7 (S.D.N.Y. Mar. 30, 2009) (quoting Dubowski v. Ash (In re AM Int'l, Inc.

43

Sec. Litig.), 108 F.R.D. 190, 197 (S.D.N.Y. 1985)).
Accordingly, the Court finds that the Named Plaintiffs are
adequate class representatives.

b. Class Counsel

Defendants argue that class counsel--attorneys from
Shearman & Sterling and the NYCLU--are not qualified to
represent the class. The Court strongly and fervently
disagrees. As Defendants acknowledge in their brief, the
adequacy of class counsel is satisfied "where the class
attorneys are experienced in the field or have demonstrated
professional competence in other ways, such as by the quality of
the briefs and the arguments during the early stages of the
case." Schwab v. Philip Morris USA, Inc., 449 F. Supp. 2d 992,
1106 (E.D.N.Y. 2006), rev'd on other grounds, McLaughlin v. Am.
Tobacco Co., 522 F.3d 215 (2d Cir. 2008). Here, it is
undisputed that Corey Stoughton and Tyler Pendergrass of the
NYCLU have significant experience in litigating large-scale
civil rights actions and the Shearman & Sterling attorneys who
have appeared in this action--namely, Daniel H.R. Laguardia,
Melissa J. Godwin, Edward G. Timlin, and Sheila Jain--have
demonstrated that they are more than competent. They have
invested significant time, money, and effort in investigating
the potential claims in this class action--including
communicating with a significant number of the plaintiffs in the

44

111 cases that were consolidated into the present action--
drafting and filing a comprehensive consolidated amended class
action complaint, successfully opposing a motion to dismiss, and
filing the present motion for class certification.  Their papers
to date reflect their skill and initiative, and the Court finds
that they will fairly and adequately represent and protect the
interests of the class.

    B.   <u>Rule 23(b) Categories</u>

In addition to satisfying the prerequisites
articulated in Rule 23(a), a party seeking class certification
must also establish that the putative class fits into one of the
categories enumerated in Rule 23(b).  The Named Plaintiffs
assert that the Injunctive Class may be maintained under Rule
23(b)(2) and the Damages Class may be maintained under Rule
23(b)(3).  The Court will address each separately.

    1.   <u>Rule 23(b)(2)</u>

Rule 23(b)(2) provides that a class action may be
maintained if "the party opposing the class has acted or refused
to act on grounds that apply generally to the class, so that
final injunctive relief or corresponding declaratory relief is
appropriate respecting the class as a whole."  FED. R. CIV. P.
23(b)(2).  The Supreme Court recently clarified the standard
under Rule 23(b)(2) as follows:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a _different_ injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

_Wal-Mart_, 131 S. Ct. at 2557. The Named Plaintiffs seek to certify a class under Rule 23(b)(2) to obtain declaratory and injunctive relief as well as monetary damages that are incidental to the equitable relief. Defendants argue that class certification is inappropriate because: (1) it would be impossible to craft "meaningful equitable relief" that would apply equally to all inmates housed in the SCCF; (2) the class, which includes all future inmates, is not ascertainable; and (3) it includes classmates' claims for incidental damages.

With respect to Defendants' first argument, they assert that the only equitable relief that will effectively cure all of the alleged constitutional violations is an injunction barring Defendants from violating the law, which would be impermissibly broad under Rule 65. The Court disagrees. An injunction can both restrain actions or mandate that certain actions be taken, _see_ FED. R. CIV. P. 65(d)(1)(C); thus the Court can draft an injunction that requires Defendants to take specific actions to eliminate the allegedly cruel and inhuman

46

conditions in the SCCF.  For example, the Court can set a limit
on the number of inmates to be housed in Riverhead and Yaphank,
order that the plumbing systems be repaired/replaced and that
inmates be provided with proper cleaning supplies, and/or set
minimum standards of cleanliness that must be maintained.

      Next, Defendants argue that the class is not
ascertainable because it includes all unknown future inmates.
Ascertainability requires that the class be "defined by
objective criteria that are administratively feasible, without a
subjective determination." McBean v. City of N.Y., 260 F.R.D.
120, 133 (S.D.N.Y. 2009); see also Dunnigan v. Metro. Life Ins.
Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003).  Here, the Injunctive
Class and subclasses are defined solely by objective criteria:
whether the class members are currently confined in Riverhead or
Yaphank or will be confined in Riverhead or Yaphank prior to the
date of judgment.  This class is sufficiently ascertainable to
support class certification.  See, e.g., Mitchell v. Cnty. of
Clinton, No. 06-CV-0254, 2007 WL 1988716, at *1, 4, 7 (N.D.N.Y.
July 5, 2007) (finding a class of inmates placed in the custody
of the Clinton County Jail "from October 24, 2003 through the
date on which the Clinton County Sheriff's Department and/or the
County of Clinton cease or ceased, or are enjoined from,
enforcing their unconstitutional policy, practice and custom of

47

conducting strip searches absent reasonable suspicion" was "ascertainable").

Finally, Defendants argue that the Injunctive Classes and subclasses cannot be certified because they seek unidentified incidental damages in addition to equitable relief. "Generally, when monetary relief is requested in tandem with injunctive and declaratory relief, the court must determine whether the requested monetary relief predominates over the claims for equitable relief." Parker v. Time Warner Entm't Co., 331 F.3d 13, 18 (2d Cir. 2003). "[M]onetary relief predominates over equitable relief unless it is incidental to requested injunctive or declaratory relief." Id. at 19. The Named Plaintiffs, however, do not specify what their "incidental" damages are and how they are distinct from the damages sought by the Damages Class and subclasses; thus, the Court cannot determine whether they "predominate" over the claims for equitable relief. Therefore, the Court certifies the Injunctive Class and subclasses only to the extent that they seek declaratory and injunctive relief.

2.  Rule 23(b)(3)

Rule 23(b)(3) provides that a class action may be maintained if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to

48

other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

      a.   <u>Predominance</u>

"The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." <u>Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 107-08 (2d Cir. 2007). The Court finds that the following questions are common to the class: (1) whether the conditions at Yaphank and/or Riverhead are cruel or inhuman in violation of the Eighth and Fourteenth Amendments; (2) whether Defendants were deliberately indifferent to the conditions at the SCCF; and (3) whether administrative remedies were unavailable, whether Defendants are estopped from raising failure to exhaust as a defense and/or whether special circumstances justify non-exhaustion. The Court finds that these issues predominate over the issues subject to individualized proof--namely the extent of each class members' damages. Further:

> There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to

49

preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001), superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). Thus, as the Court has the flexibility to deal with issues regarding the management of this class action as they arise, the existence of individualized questions regarding damages does not warrant denying certification of the Damages Class and subclasses.[11]

    b.  Superiority

"For Rule 23(b)(3) certification to be proper, a class action also must be the most 'fair and efficient' method of resolving this case." Augustin v. Jablonsky (In re Nassau Cnty. Strip Search Cases), 461 F.3d 219, 230 (2d Cir. 2006) (quoting Fed. R. Civ. P. 23(b)(3)). In analyzing whether proceeding as a

---

[11] Defendants also argue that class certification is inappropriate because the class members were incarcerated during varying periods from 2009 through the present. Thus, Defendants assert that the class members have not been subject to the same conditions--in other words, the conditions may have worsened or improved over time. The Named Plaintiffs, however, assert that the conditions have persisted unabated. To the extent that during the course of discovery, it is determined that different classes of inmates incarcerated during different periods were exposed to different conditions, the Court can redefine and/or decertify the class at that time.

class action is superior to other options, the Court shall consider:

> (1) the interest of the class members in maintaining separate actions; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the difficulties likely to be encountered in the management of a class action."

Id. (quoting FED. R. CIV. P. 23(b)(3)). The first two factors weigh heavily in favor of class certification. Every complaint filed in the District related to the allegedly unconstitutional conditions at the SCCF has been consolidated into the present action. And upon consolidation each plaintiff was given the opportunity to proceed independently, but not a single plaintiff opted to litigate his case separately. Further, the Court finds that the difficulties likely to be encountered in managing this class action far outweigh the difficulties in managing over 100 separate actions litigating identical issues. See supra pp. 33-34. Thus, the Court finds that proceeding as a class action is by far the superior method of adjudicating this controversy.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and the claims against Defendants DeMarco, Caracappa, and Meyerricks are

DISMISSED WITHOUT PREJUDICE.  All other claims survive.  The
Named Plaintiffs are GRANTED leave to file a Second Consolidated
Class Action Complaint that corrects the pleading defects with
respect to the claims against the Individual Defendants.  Such
amended pleading shall be filed within thirty days (30) of the
date of this Memorandum and Order.

Further, the Named Plaintiffs' motion for class
certification is GRANTED.  It is therefore hereby:

ORDERED that the following classes and subclasses are
certified:

(1)  an Injunctive Class comprised of all persons who, now
     or at any time in the future, are or will be detainees
     or prisoners in the custody of the Suffolk County
     Sheriff's Department and housed in the SCCF, with
     separate subclasses for those persons detained in
     Riverhead and Yaphank; and

(2)  a Damages Class comprised of all persons who are or
     were detainees or prisoners in the custody of the
     Suffolk County Sheriff's Department and housed in the
     SCCF and who were or will be released from the SCCF on
     or after April 5, 2009, with separate subclasses for
     those persons detained in Riverhead and Yaphank.

The Injunctive Class and subclasses are certified to seek
declaratory and injunctive relief only; whereas the Damages
Class and subclasses is certified to seek any and all monetary
relief available to the class.

It is further ORDERED that Butler and Sims are
appointed the class representatives for the Riverhead Injunctive
Subclass; that Lofton and Alver are appointed class

representatives for the Yaphank Injunctive Subclass; that King is appointed class representative for the Riverhead Damages Subclass; and that Lynch is appointed class representative for the Yaphank Damages Subclass.

And it is further ORDERED that the Named Plaintiffs' attorneys of record are appointed class counsel.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March   19  , 2013
         Central Islip, NY

53