UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MACK BUTLER, DASHAUN SIMS,    Docket No: 11-cv-02602 (JS)(AS))
CLYDE LOFTON, PAUL ALVER,
KEVIN KING, and RICKEY LYNCH,
on behalf of themselves and all others
similarly situated,

            Plaintiffs,

      -against-

SUFFOLK COUNTY

            Defendant.

-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DECERTIFICATION


RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 357-3000
Facsimile: (516) 357-3333

*Attorneys for Defendant Suffolk
County*

Of Counsel:
  E. Christopher Murray, Esq.
  Michelle A. Klein, Esq.
  Elizabeth S. Sy, Esq.
  Caitlyn M. Gibbons, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY ...................................................................................... 3

RELEVANT BACKGROUND ................................................................................. 5

    A.    The Class Action And Class Representatives ............................................. 5

    B.    Post-Certification Conditions At The SCCF ............................................. 7

    C.    The Class Cert. Order ................................................................................ 9

STANDARD OF LAW ............................................................................................. 10

ARGUMENT .......................................................................................................... 12

    POINT I      THE COURT SHOULD DECERTIFY THE CLASS .......................... 12

    A.    The Commonality Requirement Of FRCP 23(A)(2) Is Not Met As To Conditions Of Confinement ........................................ 12

    B.    The Proof That Alleged Physical Ailments Caused By The Conditions Of Confinement Are Not Common To The Class .......... 15

    C.    The Typicality Requirement Of FRCP 23(a)(3) Is Not Met ..................... 16

    D.    Common Questions Of Law Or Fact Do Not Predominate Over Questions Only Affecting Individual Members As Required by FRCP 23(b)(3) ........................................................................ 18

    POINT II    ALTERNATIVELY, THE COURT SHOULD AMEND THE CLASS DEFINITIONS ................................................................ 23

CONCLUSION ........................................................................................................ 25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re "Agent Orang" Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987)...................................................................................15

*Adashunas v. Negley*,
    626 F.2d 600 (7th Cir. 1980)................................................................................23

*Agostini v. Backus*,
    No. 14-CV-6188 (CJS), 2015 U.S. Dist. LEXIS 46588 (W.D.N.Y. Apr. 9,
    2015) .....................................................................................................................15

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................18

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................24

*Bauer-Ramazani v. Teachers Ins. and Annuity Ass'n of America—College
    Retirement and Equities Fund*,
    290 F.R.D. 452 (D. Vt. 2013) ..............................................................................24

*Betances v. Fischer*,
    No. 11-CV-3200 (RWL), 2023 WL 8699001 (S.D.N.Y. Dec. 15, 2023)..............13

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999)..................................................................................10

*Brazil v. Dole Packaged Foods, LLC*,
    No. 12-CV-1831, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ...........................21

*Brown v. American Honda*,
    522 F.3d 6 (1st Cir. 2008).....................................................................................21

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)..................................................................................16

*Butler v. Suffolk Cnty.*,
    289 F.R.D. 80 (E.D.N.Y. 2013) .........................................................................9, 10

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004), *cert. denied*, 543 U.S. 1051 (2005)........................21

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................................20

*Diaz v. Residential Credit Solutions, Inc.*,
297 F.R.D. 42 (E.D.N.Y. 2014) ....................................................................................24

*Didonato v. GC Servs. Ltd. P'ship*,
No. 20 Civ. 2154 (LGS), 2021 U.S. Dist. LEXIS 176555 (S.D.N.Y. Sept. 16,
2021) .............................................................................................................................19

*Doe v. Karadzic*,
192 F.R.D. 133 (S.D.N.Y. 2000) ...........................................................................12, 13

*Eastland v. Tennessee Valley Authority*,
704 F.2d 613 (11th Cir. 1983) .....................................................................................23

*Enriquez v. Cherry Hill Market Corp.*,
993 F. Supp. 2d 229 (E.D.N.Y. 2013) ..........................................................................22

*In re Fedex Ground Package System, Inc.*,
No. 05 Civ. 527(CAN), 2008 WL 927654 (N.D. Ind. Apr. 4, 2008) ...........................24

*Freeland v. AT&T Corp.*,
238 F.R.D. 130 (S.D.N.Y. 2006) ..................................................................................23

*Graff v. United Collection Bureau, Inc.*,
132 F. Supp. 3d 470 (E.D.N.Y. 2016) ..........................................................................23

*Hart v. Rick's Cabaret Int'l Inc.*,
967 F. Supp. 2d 901 (S.D.N.Y. 2013)...........................................................................24

*Hernandez v. AutoZone, Inc.*,
No. 15-CV-05593, 2021 WL 12101044 (E.D.N.Y. Mar. 31, 2021)..............................10

*Jacob v. Duane Reade, Inc.*,
293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x. 3 (2d Cir. 2015) .....................21

*Jensen v. Cablevision Sys. Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) ............................................................................16

*Jin v. Shanghai Original, Inc.*,
990 F.3d 251 (2d Cir. 2021)..........................................................................................12

*Johnson v. GEICO Casualty Co.*,
310 F.R.D. 246 (D. Del. 2015), *aff'd*, 672 F. App'x 150 (3d Cir. 2016)......................21

*Kloppel v. HomeDeliveryLink, Inc.*,
No. 17-CV-6296-FPG, 2022 U.S. Dist. LEXIS 74867 (W.D.N.Y. Apr. 25,
2022) .............................................................................................................................11

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
    571 F.3d 672 (7th Cir. 2009) ...............................................21

*Kowalski v. YellowPages.com, LLC*,
    No. 10 Civ. 7318 (PGG), 2012 U.S. Dist. LEXIS 46539 (S.D.N.Y. Mar. 31,
    2012) ...............................................................................17

*Lamarr-Arruz v. CVS Pharmacy, Inc.*,
    No. 15-CV-04261 (JGK), 2017 WL 4277188 (S.D.N.Y. Sept. 26 2017) ...............14

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016), *cert. denied*, 580 U.S. 1198 (2017)............10, 11, 12

*McDonald v. Franklin Cty., Ohio*,
    306 F.R.D. 548 (S.D. Ohio 2015) ...........................................17

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2017)................................................20

*Morangelli v. Chemed Corp.*,
    275 F.R.D. 99 (E.D.N.Y. 2011) .............................................23

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016).................20

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010), *cert. denied*, 565 U.S. 930 (2011)....................12

*Neufeld v. CIGNA Health & Life Ins. Co.*,
    2023 WL 4366137 (D. Conn. July 6, 2023) ..................................19

*Nourse v. Cty. of Jefferson*,
    No. 17-cv-00807, 2020 U.S. Dist. LEXIS 106846 (N.D.N.Y. June 18, 2020)........17

*Omar v. 1 Front St. Grimaldi, Inc.*,
    No. 16 CV 5824 (LDH)(CLP), 2024 U.S. Dist. LEXIS 36483 (E.D.N.Y. Mar.
    1, 2024) ...........................................................................11

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ...............................................21

*Perez v. Allstate Ins. Co.*,
    No. 11-CV-1812 (JFB), 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ................16

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017)...........................................11, 12, 18

iv

*Pierce v. Cnty. of Orange*,
526 F.3d 1190 (9th Cir.), *cert. denied*, 555 U.S. 1031 (2008) ..................................................21

*Price v. L'Oreal USA, Inc.*,
No. 17 Civ. 614 (LGS), 2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018) ................................20

*Price v. L'Oréal USA, Inc.*,
No. 17 Civ. 614 (LGS), 2021 U.S. Dist. LEXIS 187099 (S.D.N.Y. Sept. 29, 2021) ....................................................................................................................................10

*Richardson v. Byrd*,
709 F.2d 1016 (5th Cir. ), *cert. denied*, 464 U.S. 1009 (1983) .................................................11

*Rivera v. Harvest Bakery, Inc.*,
312 F.R.D. 254 (E.D.N.Y. 2016) ............................................................................................23

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ............................................................................................16, 23

*Romberio v. UNUMProvident Corp.*,
385 Fed. App'x 423 (6th Cir. 2009) .......................................................................................21

*Scaggs v. New York State Dep't of Educ.*,
No. 06-cv-0799, 2009 WL 890587 (E.D.N.Y. Mar. 31, 2009)...................................13, 14, 17

*In re Sinus Buster Products Consumer Litig.*,
No. 12-CV-2429 (ADS), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ...............................16

*Sumitomo Copper Litigation v. Credit Lyonnais Rouse, Ltd.*,
262 F.3d 134 (2d Cir. 2001)....................................................................................................23

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2014).................................................................................................16, 20

*Thompson v. Carter*,
284 F.3d 411 (2d Cir. 2002).....................................................................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).................................................................................................................18

*In re U.S. FoodService Inc. Pricing Litigation*,
729 F.3d 108 (2d Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014)....................................19, 20

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001), *cert. denied*, 536 U.S. 917 (2002)...........................................20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..........................................................................................................12, 16

*Wu v. Pearson Educ. Inc.*,
    No. 09 Civ. 6557 KBF, 2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012)............................10, 15

**Statutes**

42 U.S.C. §1997e(e)......................................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

## PRELIMINARY STATEMENT

This punitive class action was commenced in 2011 alleging, *inter alia*, cruel and inhuman punishment in violation of the Eighth Amendment of the United States Constitution due to the confinement conditions at the then-existing Riverhead Correctional Facility ("Riverhead Facility") and Yaphank Correctional Facility ("Yaphank Facility") (collectively, the "Suffolk County Correctional Facility" or "SCCF"). The conditions complained of were allegedly caused by the large populations at the SCCF. When the purported conditions in the SCCF were brought to the attention of Suffolk County governmental leadership, however, millions of dollars were expended to build a new facility in Yaphank and to gut renovate the existing Yaphank Facility. Also, in 2019, following the grant of class certification in this action, New York State enacted bail reform that dramatically decreased the population of the SCCF. Accordingly, the population and the conditions of confinement of the SCCF today are not the same that existed more than 13 years ago when this action was commenced.

Further, in 2024, years after discovery had been completed, Plaintiffs designated new class representatives, disclosed new potential fact witnesses and designated two new/substitute expert witnesses. All but two of these newly disclosed parties and witnesses have now been deposed – except for one new class representative that Plaintiffs' counsel is unable to locate, and a fact witness whose deposition had to be rescheduled due to the recent CrowdStrike outage. Further, Plaintiffs' new expert witnesses have now submitted their reports. These recent depositions and new expert reports clearly demonstrate that class treatment in this case is inappropriate.

First, as more fully set forth below, accepting the contentions in the new expert reports as true for purposes of this motion, they clearly set forth that the conditions experienced by some of the detainees are not similar to the conditions experienced by others, even within the same facilities. For example, the reports identify one shower that did not meet the hot water temperature

standard while eight others did.  As for lighting, only eight cells did not have adequate lighting while 17 did.  These are just examples of how even Plaintiffs' own experts establish that the conditions for each detainee differ not only by the facility in which they are housed, and the time period in which they were detained, but also by where they are located within a given facility, precluding common findings of liability.

Further, the deposition testimony of the newly designated class representatives and witnesses establishes a wide range of purported ailments that are claimed to have been caused by the alleged conditions of confinement  As explained below, a physical manifestation caused by the alleged conditions of confinement is a necessary element for a monetary claim under the Eighth Amendment.  Here, the alleged ailments of the class representatives and newly disclosed witnesses range from rashes and upset stomachs due to consumption of an undercooked hot dog, to alleged heart conditions.  Since the recently concluded depositions establish that class members have vastly different physical complaints as needed to support monetary damage claims, individualized assessments of whether the alleged physical ailments were caused by the conditions of confinement would be required, making class treatment inappropriate under well-settled law set forth below.

Based upon the foregoing, defendant Suffolk County (the "County") now moves for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") decertifying the classes previously certified by this Court pursuant to its Order dated March 19, 2013 (the "Class Cert. Order").  Decertification is warranted because there are not common issues of fact as to the conditions of confinement which vary as to each class member depending on where and when they were detained, and there are not common issues of fact as to whether the physical ailments of any particular inmate was caused by the conditions of confinement.

In addition, not only are the factual issues concerning the County's potential liability for the conditions of the SCCF different, but also sui generis to each potential class member is the amount of any potential damages sustained. For example, an inmate in 2013 may have suffered damages due to the alleged overcrowded conditions, but an inmate today may suffer no damages in the absence of any such conditions. Further evidencing the complete lack of any common means to establish damages for each class member is the fact that the alleged physical ailments run the gamut to a whole spectrum of physical harm. The damages sustained by a class member who arguably suffered severe breathing problems because of the alleged conditions would not be the same as those of a class member who vomited once because he ate an undercooked hot dog.

Alternatively, the Court should amend the class definitions to limit the members thereof to prisoners and/or detainees housed in the SCCF for the period beginning April 5, 2009 through and including April 5, 2013 (the time the new facility in Yaphank became operational). Only those individuals could plausibly have been subjected to comparable conditions so as to render class treatment appropriate, but there would still be discrepancies as to any manifestations of physical ailments. Simply put, the lengthy class period now renders class treatment improper, intervening events have made class treatment unmanageable and inappropriate, and recent depositions and Plaintiffs' own experts have established that common issues of fact do not exist – let alone predominate.

## PROCEDURAL HISTORY

In 2011, Plaintiffs commenced this action against the County (and others) on behalf of themselves and all others similarly situated, seeking damages arising out of the allegedly unconstitutional conditions at the SCCF, which at that time consisted of the Riverhead Facility and the original Yaphank Facility. On March 19, 2013 – more than a *decade* ago – the Court certified (i) an injunctive class (the "Injunctive Class") comprised of all persons who, now or at any time

in the future, are or will be detainees or prisoners in the custody of the Suffolk County Sheriff Department and housed in the SCCF, with separate subclasses for those persons detained in Riverhead and Yaphank; and (ii) a damages class (the "Damage Class") comprised of all persons who are or were detainees or prisoners in the custody of the Suffolk County Sheriff's Department and housed in the SCCF and who were or will be released from the SCCF on or after April 5, 2009, with separate subclasses for those persons detained in Riverhead and Yaphank. See Dkt No. 375 at page 52.

In or around April 2013, a brand-new jail facility in Yaphank, New York (the "New Yaphank Facility") became operational. See Franchi Decl. at ¶ 3. Subsequently, on August 29, 2016, the Court granted the County's motion to amend the class definitions to exclude all SCCF inmates "who were or have been housed exclusively at the [New Yaphank Facility]." See Dkt No. 428. In 2018, Plaintiffs and the County each moved for summary judgment, and in 2023 the Court denied both motions, except to the extent of dismissing the claims against the individual defendants. See Dkt No. 527.

After the denial of the summary judgment motions, the Court set a trial date. Plaintiffs then amended their list of class representatives and supplemented their witness list. See Murray Decl. at Exhibit "A". In addition, Plaintiffs requested new inspections of the SCCF because their prior expert was no longer available for trial. The County also supplemented its initial disclosures, which was largely necessitated by the change in personnel during the protracted period of time this action has been pending. See Murray Decl. at Exhibit "B".

Depositions of the new witnesses designated by Plaintiffs are nearly complete and those recently conducted depositions have disclosed that the physical injury caused by the alleged conditions vary greatly from inmate to inmate. For example, one witness's sole physical ailment

was that he ate an under cooked hotdog and threw up.  <u>See</u>  Murray Decl. at Exhibit  C (Transcript

of Mahki Taylor) at 17:20.  Another complained of, among other things, swollen feet.  <u>See</u>  Murray

Decl. at Exhibit  D (Transcript of John Stewart) at 13:14-18.  A different witness pointed to, among

other things, an abscess on his arm which was treated and went away.  <u>See</u>  Murray Decl. at Exhibit

E (Transcript of  Kenneth Tatum) at 27:20-28:11.  Another complained of, among other things,

testicular pain.  <u>See</u> Murray Decl. at Exhibit F (Transcript of Messiah Booker) at 11:4.

Further, Plaintiffs' substitute experts have now issued their reports that highlight that

detainees are subject to varied conditions of confinement. See Relevant Portions of Expert Reports,

Ex. G To the Murray Declaration.

<b><u>RELEVANT BACKGROUND</u></b>

**A.**  **<u>The Class Action And Class Representatives</u>**

As noted above, this is a purported class action in which present and former inmates

challenge the allegedly inhumane conditions at the SCCF.  In the Consolidated Amended Class

Action Complaint (the "Complaint"), Plaintiffs claim that the SCCF was overcrowded, and as a

result, inmates were exposed to inhumane conditions, including, *inter alia*, exposure to human

feces and sewage, leaks and flooding of dormitory and cell floors, poor air quality, extreme

temperatures, mold, rust, and vermin.  Dkt No. 334 (Complaint) at ¶¶ 1, 2, 44, 61, 63, 64. The

Complaint purports to assert four causes of action: (1) violation of the Fourteenth Amendment's

prohibition against cruel and inhuman treatment on behalf of the pretrial detainees at the SCCF;

(2) violation of the Eighth Amendment's prohibition against cruel and inhumane treatment on

behalf of all sentenced prisoners at the SCCF; (3) violation of the New York Constitution's due

process clause on behalf of the pretrial detainees at the SCCF; and (4) negligence and ministerial

negligence arising under New York common law on behalf of all Plaintiffs.  By way of damages,

5

Plaintiff seek actual and compensatory damages to be determined at trial, and attorneys' fees and costs.

Originally, the named plaintiffs and class representatives in this matter were Mack Butler ("Butler"), Dashawn Sims ("Sims"), Clyderaheem Lofton (suing herein as "Clyde Lofton") ("Lofton"), Paul Alver ("Alver"), Kevin King ("King"), and Rickey Lynch ("Lynch"). Butler and Sims were appointed class representatives for the Injunctive Class at the Riverhead Facility, and Lofton and Alver were appointed class representatives for the Injunctive Class at the Yaphank Facility. King and Lynch were appointed class representatives for the Damages Class in Riverhead and Yaphank, respectively. Subsequently, in 2023, the Court granted Plaintiffs' motion to intervene additional class representatives, and added (i) Daryl Miller ("Miller") and Kenneth Williams ("Williams")[1] as class representatives for the Injunctive Class; and (ii) Richard McMahon ("McMahon") and Jermaine Yates ("Yates") as class representatives for the Damages Class. Dkt No. 528.

The time frame and location of detention of the class representatives and newly named witnesses, vary greatly. For example, Butler and Sims were incarcerated at the Riverhead Facility for periods of time in 2011, 2012 and 2013. Lofton was incarcerated in the Yaphank Facility for periods of time in 2009, 2011, 2012 and 2013. Alver was incarcerated in Yaphank for approximately one day in 2010, one month in 2011, and 4.5 months in 2012. King was

---

[1] By letter dated July 2, 2024, Plaintiffs' counsel advised the Court that the grievance against the SCCF that was submitted in support of the motion for Kenneth Williams' appointment as a lead plaintiff was submitted by a different individual, Kenneth J. Williams. Plaintiff's counsel further advised that their contact with Kenneth J. Williams had been inconsistent, they are unable to submit a declaration on his behalf, and the classes will not seek to rely on his testimony at trial. Dkt No. 583.

incarcerated in Riverhead for parts of 2009, 2010, 2011 and 2012. Lynch was incarcerated in Yaphank in 2010 for approximately 32 days in 2010.

Jermaine Yates was incarcerated at the Yaphank Facility for periods of time in 2009 and 2010 and the Riverhead Facility for periods of time in 2004, 2004, 2006, 2009 and 2010. Messiah Booker was incarcerated at the Riverhead Facility for periods of time in 2009, 2013, 2014, 2015, 2016, 2017, 2020, 2022, 2023 and 2024. John Stewart was incarcerated at the Riverhead Facility for periods of time in 2023 and 2024. Cory Tibball was incarcerated at the Yaphank Facility for periods of time in 2009, 2015 and 2021, and the Riverhead Facility for a period of time in 2015. Timothy Butler was incarcerated at the Riverhead Facility from June 6, 2023 to June 22, 2023. Kenneth Tatum was incarcerated at the Yaphank Facility for periods of time in 2005 and 2013 and the Riverhead Facility in 2005 and 2013. Mahki Taylor was incarcerated at the Yaphank Facility for periods of time in 2018 and 2019 and the Riverhead Facility in 2019.

### B.    Post-Certification Conditions At The SCCF

The SCCF has been under capacity since approximately mid 2011-2012, about the time this case began. See Murray Decl. at Exhibit H (Decl., Demarco Tr. 42:24-44:8). Based upon the opening of the New Yaphank Facility in 2013, however, the inmate capacity at the SCCF is now 1816 inmates. In 2013 – the year the New Yaphank Facility became operational – the average SCCF population was 1556 inmates. See Declaration of Michael Franchi dated August 14, 2024 ("Franchi Decl"). In 2014, 2015, 2016, 2017 and 2018 to the present, the average daily population counts were 1427, 1366, 1253, 1319 and 1330, respectively. See Franchi Decl. at ¶ 3.

In addition to the opening of the New Yaphank Facility, all living areas in the original Yaphank Facility underwent a full gut renovation that began in 2015 and was completed in 2016. See id. at ¶ 4. Everything at the original Yaphank Facility was removed – down to the beams – and replaced with new equipment. See id. at ¶ 5. New walls were constructed and new plumbing was

installed, including a new waste line.  See id. New sinks, toilets, and showers were installed.  See id. New wiring was installed.  See id. All beds and mattresses were replaced.  See id. A new ventilation system was put in place.  See id. For all intents and purposes, the original Yaphank Facility is now a new facility.  See id.

Improvement of the SCCF is an ongoing process.  See id. at ¶ 6  In every budget year, there is an annual, dedicated capital budget line for both the Riverhead Facility and the Yaphank Facility for replacements and improvement.  See id. In addition, the SCCF, like all correctional facilities in New York, is under the supervision of the New York State Commission of Corrections ("SCOC.")  See id. As reflected on the SCOC's website, the agency is charged with, *inter alia*, evaluating, inspecting and supervising local correctional facilities.[2]  See id. and fn. 1. The SCOC makes the ultimate decision regarding how many inmates may be housed in the SCCF.  At no time has the SCCF housed more inmates than permitted by the SCOC. See id. at ¶ 6.

The SCOC makes both regular and unannounced inspections of the SCCF to examine the facility and evaluate virtually every aspect of its operation, including sanitary conditions and inmate counts.  See id. at ¶ 7. The SCCF can only operate with the permission of the SCOC.  See id. The SCOC has the authority to shut down the SCCF if it so chooses.  See id. Critically, it has never done so.  See id. Instead, SCOC evaluation reports for the years 2009 forward contain little recent criticism about living conditions for inmates in the SCCF.  See id. In fact, in February 2018, the SCOC issued a report entitled "The Worst Offenders, The Most Problematic Local Correctional Facilities of New York State."  See id. In this study, the SCOC listed the five municipal correctional facilities that it considers to be the worst in the State.  See id. The SCCF is

---

[2] *See*, http://www.scoc.ny.gov.

*not* on the list.  See id. Since 2015, the operation of the SCCF has not been restricted by the SCOC in any way.  See id.

The Suffolk County Department of Health Services regularly inspects the kitchens in the SCCF in the manner that it inspects restaurants in Suffolk County. See id. at ¶ 8.  The Department of Health Services has *not* restricted the SCCF kitchen operations in any manner. See id.

The County has spent considerable tax dollars to improve living conditions in the SCCF, including approximately $185 million to build the New Yaphank Facility and make it operational, and additional funds for the gut renovation of the original Yaphank Facility that is a subject of this action.  See id. at ¶ 9.

Further, in 2019, New York's bail reform law went into effect.  This new statutory scheme favors pretrial release over the setting of money bail.  As such, arrestees charged with certain crimes are released on their own recognizance pending trial rather than remanded until they can make bail.  This has resulted in the release of many inmates at the SCCF.  See id. at ¶ 10.

### C.    The Class Cert. Order

In the Class Cert. Order, the Court certified the classes and subclasses and appointed the class representatives described above.  In issuing its determination, the Court made several findings that are relevant to the instant motion.

First, the Court concluded that the commonality requirement of FRCP 23(a)(2) was met because "[w]hether the County was aware of and deliberately indifferent to the conditions at the SCCF is a common question subject to class-wide resolution."  See *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013). Further, the Court found that the Injunctive Class and Damages Class each had to be divided into subclasses – one for each facility – "so that the actual nature of the conditions at Riverhead and Yaphank and whether those conditions fall below constitutionally acceptable standards will be subject to (sub)class-wide resolution."  See *id.*

Second, the Court found that the named plaintiffs for the Riverhead and Yaphank subclasses satisfied the typicality requirement of FRCP 23(a)(3) as "for each subclass, they allege injuries arising out of the same allegedly unconstitutional conditions."  See *id.* at 99. Finally, in concluding that Rule 23(b)(3) was met, the Court held that, <u>inter</u> <u>alia</u>, the following questions are common to the class:

> (1) whether the conditions at Yaphank and/or Riverhead are cruel or inhuman in violation of the Eighth and Fourteenth Amendments; (2) whether [the County] w[as] deliberately indifferent to the conditions at the SCCF; and (3) whether administrative remedies were unavailable, whether Defendants are estopped from raising failure to exhaust as a defense and/or whether special circumstances justify non-exhaustion.  The Court finds that these issues predominate over the issues subject to individualized proof – namely the extent of each class members' damages.

<u>See</u> *id.* at 102.

## <u>STANDARD OF LAW</u>

A district court's "order denying or granting class status is inherently tentative" and is "subject to revision." *See Price v. L'Oréal USA, Inc.*, No. 17 Civ. 614 (LGS), 2021 U.S. Dist. LEXIS 187099 (S.D.N.Y. Sept. 29, 2021); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) (noting that courts are required to reassess their class rulings as the case develops). The standard for decertification is identical to the standard for certifying the class in the first instance, but the court may consider new evidence. *See Wu v. Pearson Educ. Inc.*, No. 09 Civ. 6557 KBF, 2012 WL 6681701, at *5 (S.D.N.Y. Dec. 21, 2012) (decertifying class previously certified). As such, "a district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met" at any point before the entry of final judgment. *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016), *cert. denied*, 580 U.S. 1198 (2017) (quotation omitted); *Hernandez v. AutoZone, Inc.*, No. 15-CV-05593 (FB-RLM), 2021 WL 12101044, at *2 (E.D.N.Y. Mar. 31, 2021). Such requirements include:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a). Additionally, the class must also be ascertainable, or capable of definition "by objective criteria," *see In re Petrobras Sec. Litig.*, 862 F.3d 250, 264 (2d Cir. 2017), and must satisfy at least one of the provisions of Rule 23(b), such as Rule 23(b)(3), which permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As such, "[t]he district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts". *Mazzei*, 829 F.3d at 266 (quoting *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. ), *cert. denied*, 464 U.S. 1009 (1983)).

The fundamental question a court must answer when deciding a decertification motion is whether, in light of post-certification events, "'it appears that the requirements of Rule 23 are not in fact met.'" *See Mazzei*, 829 F.3d at 266. But a court "may not disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *See Kloppel v. HomeDeliveryLink, Inc.*, No. 17-CV-6296-FPG, 2022 U.S. Dist. LEXIS 74867, *6 (W.D.N.Y. Apr. 25, 2022). Compelling reasons "include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* at *6-7. Relatedly, district courts may, in order to "manage the litigation as it develops," decertify a class where continued class treatment proves infeasible and there are no viable alternatives. *See Omar v. 1 Front St. Grimaldi, Inc.*, No. 16 CV 5824 (LDH)(CLP), 2024 U.S. Dist. LEXIS 36483, *21-22 (E.D.N.Y. Mar. 1, 2024).

Compliance with Rule 23 must be measured using a "rigorous analysis" that may "entail some overlap with the merits" of the underlying claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). After conducting this analysis, the Court "may decertify a class if it appears that the requirements of Rule 23 are not in fact met," *Jin v. Shanghai Original, Inc*., 990 F.3d 251, 262 (2d Cir. 2021), because "the reasons for granting class no longer exist or never existed," *Doe v. Karadzic*, 192 F.R.D. 133, 136 (S.D.N.Y. 2000). Even at decertification, the plaintiff bears the burden of proof, *see Mazzei*, 829 F.3d at 270, and must establish by a preponderance of the evidence that the requirements of Rule 23 are met. *See In re Petrobras Sec. Litig.*, 862 F.3d at 260.

<u>**ARGUMENT**</u>

**POINT I**

<u>**THE COURT SHOULD DECERTIFY THE CLASS**</u>

A.    **The Commonality Requirement Of FRCP**
      <u>**23(A)(2) Is Not Met As To Conditions Of Confinement**</u>

Simply put, the common questions identified in the Class Cert. Order relating to the allegedly unconstitutional conditions of the SCCF and whether the County was deliberately indifferent to those conditions are no longer subject to class-wide resolution. "What matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc*, 564 U.S. at 349-50 (emphasis in original); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010), *cert. denied*, 565 U.S. 930 (2011) (explaining that the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through

generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof"). Further, "[r]econsideration of class certification is appropriate where there is a 'significant intervening event or compelling reason that the Rule 23 requirements are no longer satisfied." *Betances v. Fischer*, No. 11-CV-3200 (RWL), 2023 WL 8699001 at *21 (S.D.N.Y. Dec. 15, 2023) (*quoting*, *Doe,* 192 F.R.D. at 136-37).

Here, it is indisputable that the conditions experienced by the inmates at the SCCF during the 2009-2012 period are not the same as those of the inmates incarcerated from 2013 to the present. Further, certain inmates may have been incarcerated both before and after these changes and thereby experienced different conditions at different times. In addition, as confirmed by Plaintiffs' recently produced expert report, whether a class member was treated in a cruel and unusual punishment would require an individual assessment.

First, the conditions of confinement for an individual housed in Yaphank or Riverhead in 2009 would not be the same – or even similar to – an individual housed in those facilities 14 years later *after* a new facility was built to relieve overcrowding, *after* there been a gut renovation of the original Yaphank Facility, and *after* the bail reform laws caused a vast decrease in the number of individuals housed in those facilities. Indeed, the census for these facilities have decreased.

Further, the original Yaphank Facility underwent a gut renovation beginning in 2015. After construction was completed, the Yaphank Facility was essentially a new facility. Many of the conditions complained of at the time the action was commenced in – i.e., plumbing, toilets, air quality, etc. – were directly addressed by the renovation (i.e., *new* plumbing was installed, including a *new* waste line, *new* toilets, and a *new* ventilation system) and many of the other alleged conditions were indirectly addressed by the renovation. Given the change in the conditions prior the opening of the New Yaphank Facility and the renovation of the original Yaphank Facility, the

13

question of whether the County exhibited deliberate indifference will necessarily relate to different conditions and cannot be addressed on a class-wide basis.   For example, the determination that a class member incarcerated at the original Yaphank facility in 2009 was treated with deliberate indifference would necessarily be different than an inmate at the original Yaphank facility that was housed after the new jail was built and the old facility went through a gut renovation.

Further, even Plaintiffs' own expert reports submitted in June of 2024 demonstrate that the conditions experienced by individual detainees not only differ by the time they were incarcerated, or which facility they were held, but also where in a facility an individual was housed. Exhibit  G to the Murray Decl. For example, although the experts point to the lack of hot water in showers as part of the inhumane conditions, the report identified that only one of the showers they tested did not meet the hot water standard, the other eight did.  Similarly, regarding lighting, eight cells inspected did not meet their standard while 17 did meet the standard.  See id.  at p. 27. And, while Plaintiffs' expert found that the temperatures in various cells were acceptable, the humidity readings where high, but the range were vast from 53% to 71%. See id.  at p. 21-22. *See Lamarr-Arruz v. CVS Pharmacy, Inc*., No. 15-CV-04261 (JGK), 2017 WL 4277188 at 6 (S.D.N.Y. Sept. 26 2017) (hostile work environment class action not appropriate where there were different work sites).

The expert reports also site to specific cells where they said conditions were not adequate. For example, the report states that two cells had "heavy accumulations of dirt and grime" and one cell had heavy accumulations of dust and debris. See id.  at p. 18. However, the substitute experts inspected over 20 cells and would have referenced if those same conditions existed in other cells.

Accordingly, the issue of whether any particular detainee was subjected to cruel and inhumane conditions is not common to class, but fact specific to each detainee,  and "whether the

conditions at Yaphank and/or Riverhead are cruel or inhuman in violation of the Eighth and Fourteenth Amendments" and "whether [the County] w[as] deliberately indifferent to the conditions at the SCCF" are no longer subject to class-wide resolution, and the class should be decertified. *See Wu*, 2012 WL 6681701, at *7 (decertifying class and explaining that commonality requires plaintiffs to "have suffered the same injury").

### B.  The Proof That Alleged Physical Ailments Caused By The Conditions Of Confinement Are Not Common To The Class

In order to sustain a claim for monetary damages based on conditions of confinement those conditions have to be of such as to manifest themselves in physical injury.  42 U.S.C. §1997e(e); *Thompson v. Carter*, 284 F.3d 411 (2d Cir. 2002); *Agostini v. Backus*, No. 14-CV-6188 (CJS), 2015 U.S. Dist. LEXIS 46588 (W.D.N.Y. Apr. 9, 2015).   Here the issue as to whether the conditions of confinement caused physical harm is peculiar to each class member.  This was demonstrated by the recent depositions.

One class representative claimed he ate an undercooked hot dog and vomited, another claimed he had an abscess that was treated and went away, and yet another claimed he developed heart ailments.  Each of these claims would have to be tested by their medical records, as would each member of the class.  Because one member or even a lot of other members could claim a physical ailment, does not mean that all class member had physical ailments.  The proof of each class member would be individualized.   Under these circumstances class treatment is inappropriate.  *See e.g. In re "Agent Orang" Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987) (whether a herbicide caused a physical injury "depends upon the characteristics of individual plaintiffs (e.g., state of health, lifestyle) and the nature of their exposure to [the herbicide]").

**C.      The Typicality Requirement Of FRCP 23(a)(3) Is Not Met**

Further, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *see also Perez v. Allstate Ins. Co.*, No. 11-CV-1812 (JFB), 2014 WL 4635745, at *24 (E.D.N.Y. Sept. 16, 2014) (same); *In re Sinus Buster Products Consumer Litig.*, No. 12-CV-2429 (ADS), 2014 WL 5819921, at *4 (E.D.N.Y. Nov. 10, 2014) (same).

"The commonality and typicality requirements often tend to merge into one another, so that similar considerations animate analysis of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citation and quotation marks omitted). Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2014) (quoting *Dukes*, 564 U.S. 338 at 349 n. 5) (alterations in original). The requirement is satisfied when the named plaintiff's claim arises from the same course of events and makes similar legal arguments as the rest of the proposed class. *See Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 122 (E.D.N.Y. 2019).

While the County acknowledges that minor variations in the fact patterns underlying individual claims does not defeat typicality, that is simply not the case here. *See Perez*, 2014 WL 4635745, at *24 (quoting *Robidoux*, 987 F.2d at 936-937) (finding that "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims"). The alleged unlawful conduct – i.e. subjecting

inmates to "cruel or inhuman" conditions – did not affect *every* class member. In fact, such alleged unlawful conduct and conditions did not even affect every named Plaintiff. Rather, similar to the commonality requirement discussed above, the typicality requirement is no longer met due to the variety of different conditions experienced by the inmates at the SCCF during the class period.

Such variations in conditions experienced due to the extensive renovations of the SCCF facilities create more than "minor variations" between individual class members. Of critical import, is the fact that inmates at the SCCF between 2009 and 2012 experienced *different* conditions than inmates incarcerated at the SCCF from 2013 to the present. Such a variety in the experiences of inmate class members destroys typicality amongst the class, quite similar to the way in which the commonality requirement fails for want of common answers, as analyzed above.

Thus, there is no basis for a continued finding that Plaintiffs have maintained typicality. *See Scaggs v. New York State Dep't of Educ.*, No. 06-cv-0799, 2009 WL 890587, at *6 (E.D.N.Y. Mar. 31, 2009) (finding the plaintiff failed to show typicality where no evidence that potential class members at the other schools shared experiences similar to those that allegedly occurred at the defendant school); *Nourse v. Cty. of Jefferson*, No. 17-cv-00807 (BKS/DJS), 2020 U.S. Dist. LEXIS 106846, *23 (N.D.N.Y. June 18, 2020) (finding commonality and typicality not satisfied when the experiences had by inmates during intake strip searches would not generate "common answers apt to drive the resolution of the litigation") (also citing *McDonald v. Franklin Cty., Ohio*, 306 F.R.D. 548, 561-62 (S.D. Ohio 2015) (finding the plaintiff failed to meet commonality and typicality requirements because "each class member's claim [would] differ based on the activity in the booking area on the day [they were] admitted")); *Kowalski v. YellowPages.com, LLC*, No. 10 Civ. 7318 (PGG), 2012 U.S. Dist. LEXIS 46539, *58 (S.D.N.Y. Mar. 31, 2012) (finding the typicality requirement not met when there were "far too many variations" amongst the class).

Therefore, as a result of the renovated and new SCCF facilities, inmates experienced different conditions, depending on when they were incarcerated at the SCCF. Such differences will only result in a wide variety of answers to the question of whether the County exhibited deliberate indifference as the alleged unlawful conditions at the SCCF, and thus the typicality requirement for class certification is no longer met.

>    **D.    Common Questions Of Law Or Fact Do Not
>         Predominate Over Questions Only Affecting
>         Individual Members As Required by FRCP 23(b)(3)**

The class action must be decertified because the passage of time, recent depositions and plaintiffs' recent expert reports have revealed that there are no longer questions of law or fact common to the class and that those questions of fact or law no longer predominate over individual questions. "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed. 2012) (internal quotation marks omitted)) (modification in original).

"The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism, and is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." *In re Petrobas Securities*, 862 F.3d at 270. The requirement thus is "far more demanding" than the "commonality" requirement under Rule 23(a). *Id.* As the Second Circuit has explained, class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through

generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *In re U.S. FoodService Inc. Pricing Litigation*, 729 F.3d 108, 118 (2d Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014) (internal quotation marks omitted).

As noted above, there are no longer common questions of fact or law among the expansive class. Even assuming, arguendo, the Court were to find that common questions of law and fact do exist, they certainly do not predominate. Here, individualized inquiries are necessary to determine when inmates were incarcerated at the SCCF and what specific conditions they were exposed to during those times. Specifically, inmates who were incarcerated during 2009 – 2012 experienced vastly different conditions than those inmates who were incarcerated from 2013 through the present. Further, certain inmates may have been incarcerated during periods before and after the renovations and opening of the New Yaphank Facility. Moreover, even those class members who were incarcerated at the Riverhead Facility may have experienced a variety of different conditions over the lengthy class period due to a decrease in population and different conditions experienced by where they were housed. As such, individualized inquiries will be necessary to ascertain the specific conditions experienced, and whether any physical manifestations were experienced as a result of those conditions, resulting in "mini-hearings" for each class member. See *Didonato v. GC Servs. Ltd. P'ship*, No. 20 Civ. 2154 (LGS), 2021 U.S. Dist. LEXIS 176555 (S.D.N.Y. Sept. 16, 2021) (holding that questions of law and fact do not predominate over questions affecting only individual members of the proposed class, defeating class certification, because "mini-hearings" as to each potential class member would be necessary); *see also Neufeld v. CIGNA Health & Life Ins. Co.*, 2023 WL 4366137, at *7 (D. Conn. July 6, 2023) (denying certification and finding that "[w]hile the resolution of Plaintiffs' claims may involve a common question as to each proposed

class member. . . there can be no answer, and therefore no 'common answer,' without resorting to an individualized assessment of the particular plans").

Therefore, due to the very specific inquiries into the specific conditions experienced by each inmate at the SCCF, it is clear that common questions of law and fact certainly do not predominate over individualized questions.

Further, to satisfy the predominance requirement of Rule 23(b)(3), "plaintiffs must propose a damages model consistent with their theory of liability." *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2018 WL 3869896, at *9 (S.D.N.Y. Aug. 15, 2018) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-35 (2013)). Accordingly, the Court must "examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *In re U.S. Foodservice Pricing Litig.*, 729 F.3d at  123 n.8; *see also Sykes*, 780 F.3d at 82 ("[T]he plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." (internal quotation omitted)); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001), *cert. denied*, 536 U.S. 917 (2002) (requiring plaintiffs to show, "based on methodology that was not fatally flawed, that the requirements of Rule 23 were met"). Proceeding to trial on the basis of a "vague inquiry into damages," without any "meaningful means of estimating" the injuries to class members, is prohibited. *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 229-30 (2d Cir. 2017).

Applying these rules, courts have decertified classes in cases where problems with identifying, providing notice to, and calculating the damages of absentee class members emerge at a later stage in the litigation. See *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015), *cert. denied*, 577 U.S. 1138 (2016) (noting district courts' discretion to "decertify [a] class

at a later stage of the litigation" if problems pertaining to identification and class management prove "truly insoluble" (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), *cert. denied*, 543 U.S. 1051 (2005)); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1200 (9th Cir.), *cert. denied*, 555 U.S. 1031 (2008) (affirming decertification of a class of pre-trial detainees due to "expected difficulties identifying class members and determining appropriate damages"); *see also Johnson v. GEICO Casualty Co.*, 310 F.R.D. 246, 254-55 (D. Del. 2015), *aff'd*, 672 F. App'x 150 (3d Cir. 2016) (decertifying class for purposes of damages due to individualized issues); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-1831, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014) (decertifying class with respect to damages due to failure of model to show means of determining classwide damages with common proof); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 595 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x. 3 (2d Cir. 2015) (granting decertification with respect to damages because individualized nature of damages would defeat predominance).

A class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006); *Romberio v. UNUMProvident Corp.*, 385 Fed. App'x 423, 431-432 (6th Cir. 2009); cf. *Brown v. American Honda*, 522 F.3d 6, 28-29 (1st Cir. 2008); *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677-78 (7th Cir. 2009) (explaining that class certification is inappropriate if the proposed class contains "a great many persons who have suffered no injury at the hands of the defendant" because of the "*in terrorem* character" of class actions).

Here, it is quite evident that there are individualized questions with respect to damages due to the differences in conditions experienced by class members over the expansive class period. Further, while some members of the class may have suffered physical ailments because of the

alleged conditions, other clearly did not.  Accordingly, the amount of damages to be awarded are not typical or easily subject to class wide proof.  There is no proof whatsoever that every single one of the inmates at SCCF from  2009 through 2024 experienced some physical ailment tied to the alleged conditions, a necessary element of a claim for monetary claims for cruel and unusual treatment under the Eighth Amendment.

In addition, that inmates incarcerated at the SCCF have experienced different conditions over the years due to the renovations and opening of the New Yaphank Facility and the adoption of bail reform. As a result, the issue as to whether class members who were only incarcerated after the renovations and bail reform suffered  "cruel and inhuman" conditions are not common with the claims of class members at the outset of this matter. Therefore, there are individualized and uncommon answers as to whether a number of class members even suffered any injury. Damages on such an individualized basis destroy predominance, as it will be impossible to have class wide damages with common proof. *See Enriquez v. Cherry Hill Market Corp.*, 993 F. Supp. 2d 229, 235 (E.D.N.Y. 2013) (class certification denied for a class of workers whose entitlement to overtime damages required an individualized examination of how much each employee worked and was paid during a given week).

Therefore, in sum, there are no longer common questions of law or fact that predominate as to the conditions experienced by inmates or the damages Defendants may potentially be liable for, and thus the predominance requirement fails and class decertification is appropriate.

## POINT II

## ALTERNATIVELY, THE COURT
## SHOULD AMEND THE CLASS DEFINITIONS

To the extent the Court finds that decertification is not warranted, the Court should amend the class definitions to limit the members thereof to prisoners and/or detainees housed in the SCCF for the period beginning April 5, 2009 through and including April 5, 2013.

It is well-settled that under Rule 23(c) "[t]he court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies. In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision." *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011) (citations omitted); *see Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 483 (E.D.N.Y. 2016) ("[u]nder Rule 23 district courts have the power to amend class definitions") (internal quotation marks and citation omitted); A district court is "often in the best position to assess the propriety of the class action" and "has the ability . . . to alter or modify the class . . . where warranted." *Sumitomo Copper Litigation v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001); *see Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 267-68 (E.D.N.Y. 2016). In addition, short of wholesale decertification, "the Court remains free to define, redefine, [or] subclass . . . as appropriate in response to the progression of the case from assertion to facts." *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 142 (S.D.N.Y. 2006) (internal quotation omitted).

If the class definition clearly were overbroad, this would be a compelling reason to require that it be narrowed. *Adashunas v. Negley,* 626 F.2d 600, 603-04 (7th Cir. 1980); *Robidoux*, 987 F.2d at 937; *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 617-18 (11th Cir. 1983); *see,*

23

*e.g., Diaz v. Residential Credit Solutions, Inc.*, 297 F.R.D. 42, 54-55 (E.D.N.Y. 2014) (modifying the definition of the class where the court determined the class to be "over inclusive").

Further, courts have amended the end date for the class when it was determined that the class was too open-ended and that such "open-ended end-date is untenable" because it fails to take account of the possibility that material facts might change. *See Hart v. Rick's Cabaret Int'l Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013). Such an open-ended class denies the parties, after the close of fact discovery, a practical vehicle for exploring whether there have been material factual changes. *Id*. (quoting *also Bauer-Ramazani v. Teachers Ins. and Annuity Ass'n of America—College Retirement and Equities Fund*, 290 F.R.D. 452, 462 (D. Vt. 2013) ("[a] class definition must be precise, objective, and presently ascertainable"); *In re Fedex Ground Package System, Inc.*, No. 05 Civ. 527(CAN), 2008 WL 927654, at *4 (N.D. Ind. Apr. 4, 2008) ("Without an end date, the class could potentially continue to grow exponentially as time passed, which would result in a never ending line of notices"); *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n. 2 (S.D.N.Y. 2001) ("[i]n my discretion, and in the interests of fairness and efficiency of case management, [the Judge] fix[ed] the end date of the class period as the date of this decision").

Here, for the reasons noted above, the class definition is overbroad and open-ended.  The conditions experienced by inmates in the immediate years following the commencement of this action are not the same as the conditions that inmates were exposed to following the opening of the New Yaphank Facility and the renovation of the original Yaphank Facility.  Indeed, this case was never expected to span more than a decade and only did so due to unforeseen circumstances (i.e., Covid). With such passage of time, the conditions of the SCCF have changed  and the class has grown far past what was originally expected. As a result, the class now potentially includes inmates who have only been incarcerated for a short period of time and who have not experienced

any of the conditions claimed in the original Complaint.   Accordingly, should the Court find that decertification is not warranted, the County respectfully contends that the Court should amend the class definitions to limit the members thereof to prisoners and/or detainees housed in the SCCF for the period beginning April 5, 2009 through and including April 5, 2013.

## CONCLUSION

For the reasons set forth herein, the County respectfully requests that this Court issue an Order pursuant to FRCP 23 decertifying the classes previously certified by this Court via the Class Cert. Order, or, in the alternative, amending the class definitions to limit the members thereof to prisoners and/or detainees housed in the SCCF for the period beginning April 5, 2009 through and including April 5, 2013.

Respectfully submitted,

**RIVKIN RADLER LLP**

By:     */s/ E. Christopher Murray*
E. Christopher Murray
Michelle A. Klein
Elizabeth S. Sy
Caitlyn M. Gibbons
926 RXR Plaza
Uniondale, New York 11556
Telephone:     (516) 357-3000
Facsimile:     (516) 357-3333

*Attorneys for Defendant Suffolk County*

4873-0957-2300, v. 8

25