UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MACK BUTLER, DESHAUN SIMS,
CLYDE LOFTON, PAUL ALVER,
KEVIN KING, and RICKEY LYNCH,
on behalf of themselves and all
others similarly situated,

                             Plaintiffs,        <u>MEMORANDUM & ORDER</u>
                                        11-CV-2602(JS)(ST)

     -against-

SUFFOLK COUNTY,

                             Defendant.
----------------------------------------X

APPEARANCES
For Plaintiffs:    Daniel H.R. LaGuardia, Esq.
                 John Nathanson, Esq.
                 Elizabeth J. Stewart, Esq.
                 Benjamin Klebanoff, Esq.
                 ALLEN OVERY SHEARMAN & STERLING US LLP
                 599 Lexington Avenue
                 New York, New York  10022

                 Christopher T. Dunn, Esq.
                 Amy Belsher, Esq.
                 Gabriella Larios, Esq.
                 Veronica R. Salama, Esq.
                 NEW YORK CIVIL LIBERTIES UNION
                 125 Broad Street
                 New York, New York  10004

For Defendant:    E. Christopher Murray, Esq.
                 Michelle A. Klein, Esq.
                 Elizabeth S. Sy, Esq.
                 Caitlyn M. Gibbons, Esq.
                 RIVKIN RADLER LLP
                 926 RXR Plaza
                 Uniondale, New York  11556

SEYBERT, District Judge:

The instant class action case is premised upon Plaintiffs' complaints related to alleged conditions-of-confinement to which they had and have been subjected while pretrial detainees and/or inmates of the Suffolk County Correctional Facilities (hereafter, the "Action"). Pursuant to the Court's Certification Order, there are two Classes, i.e., the Injunctive Class and the Damages Class, with each Class consisting of subclasses. (See Butler v. Suffolk County, 289 F.R.D. 80 (E.D.N.Y. 2013) (ECF No. 375) (hereafter, the "Certification Order") (granting class certification; establishing an Injunctive Class (with subclasses) and a Damages Class (with subclasses)). The Court assumes the parties' familiarity with the factual background giving rise to this Action. See generally Butler v. Suffolk County, No. 11-CV-2602, 2023 WL 5096218 (E.D.N.Y. Aug. 9, 2023) (ECF No. 527) (hereafter, the "Summary Judgment Order"); Butler v. Suffolk County, No. 11-CV-2602, 2023 WL 5095432 (E.D.N.Y. Aug. 9, 2023) (ECF No. 528) (hereafter, the "Substitution Order"); Certification Order.[1]  Accordingly, the Court proceeds to address the County's request to decertify the Classes or, in the

---

[1] Familiarity with terms of art defined in the Summary Judgment Order, Substitution Order, and Certification Order is assumed. Herein, the Court may use said terms of art. For convenience, the Court reiterates it will refer to pretrial detainees and post-conviction inmates simply as "inmates". (See, e.g., Summary Judgment Order, 2023 WL 5096218, at *1 n.2.)

alternative, to amend the Class definitions, _i.e._, redefining them.  (See Decertification Motion, ECF No. 591; see also Support Memo, ECF No. 592; Opp'n, ECF No. 595; Reply, ECF No. 598; Reply Decl., ECF No. 599.)  For the reasons that follow, the Decertification Motion is **DENIED**.

DISCUSSION

I.   Applicable Law:  Rule 23

Pursuant to Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment."  FED. R. CIV. P. 23(c)(1)(C).  Moreover,

> [i]t is well-settled that under Rule 23(c) "[t]he court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies.  In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision."  Morangelli v. Chemed Corp., 275 F.R.D. 99, 114 (E.D.N.Y. 2011) (citations omitted); see also Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) ("[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly"); see Graff v. United Collection Bureau, Inc., 132 F. Supp. 3d 470, 483 (E.D.N.Y. 2016) ("[u]nder Rule 23 district courts have the power to amend class definitions") (internal quotation marks and citation omitted); see, e.g., Diaz v. Residential Credit Solutions, Inc., 297 F.R.D. 42, 54-55 (E.D.N.Y. 2014) (modifying the definition of the class where the court determined the class to be "over inclusive").  A district court is "often in the best

position to assess the propriety of the class action" and "has the ability . . . to alter or modify the class . . . where warranted." <u>Sumitomo Copper Litigation v Credit Lyonnais Rouse, Ltd.</u>, 262 F.3d 134, 139 (2d Cir. 2001); <u>see</u> <u>Rivera v. Harvest Bakery, Inc.</u>, 312 F.R.D. 254, 267-68 (E.D.N.Y. 2016).

<u>Butler v. Suffolk County</u>, No. 11-CV-2602, 2016 WL 11480705, at *5 (E.D.N.Y. June 15, 2016) (ECF No. 426), <u>report and recommendation adopted sub nom.</u>, <u>Lynch v. Suffolk County</u>, 2016 WL 4508343 (E.D.N.Y. Aug. 29, 2016) (ECF No. 428); <u>see also</u> <u>Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.</u>, 262 F.3d 134, 139 (2d Cir. 2001) ("[T]he district court is often in the best position to assess the propriety of the class [action] and has the ability . . . to alter or modify the class, create subclasses, and decertify the class when[] warranted." (citing Fed. R. Civ. P. 23(c)(4)(B)).

Yet,

"the Court may not disturb its prior [certification] findings absent 'some significant intervening event,' or 'a showing of compelling reasons to reexamine the question.'" <u>Doe v. Karadzic</u>, 192 F.R.D. 133, 136-137 (S.D.N.Y.2000) (internal citations omitted). Courts faced with a motion to decertify must also take account of the progression of the litigation. <u>Langley v. Coughlin</u>, 715 F. Supp. 522, 552 (S.D.N.Y. 1989) ("[T]he Court must take into consideration that an eve-of-trial decertification could adversely and unfairly prejudice class members, who may be unable to protect their own interests.")

Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 169 (S.D.N.Y., 2011) (further citation omitted); see also Gortat v. Capala Bros., 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013) ("The Court may not disturb its prior certification findings absent some significant intervening event, or showing of compelling reasons to reexamine the questions."). "[D]efendants bear a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class." Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D.N.Y. 1987); see also In re Vivendi Universal, S.A. Sec. Litig., No. 02-CV-5571, 2009 WL 855799, at *3 (S.D.N.Y. Mar. 31, 2009) ("[D]ecertifying or redefining the scope of a class should only be done where defendants have met their 'heavy burden' of proving the necessity of taking such a 'drastic' step." (quoting Gordon)). Further, where a court has previously granted class certification and a party later seeks to alter the class definition, the court may "incorporate[] its prior analysis by reference" when considering "whether modification of the class . . . impacts that analysis." Bitsko v. Weltman, Weinberg & Reis Co., LPA, No. 17-CV-0458, 2020 WL 8620130, at *1 (N.D.N.Y. Nov. 4, 2020).


[Remainder of page intentionally left blank.]

II.  Application[2]

A.  The County's Position

In seeking decertification or, alternatively, amendment of the Class definitions, on the eve of trial, the County focuses on the issue of overcrowding at the Facilities.  The essence of its contention is that, because the Facilities are no longer overcrowded, the conditions-of-confinement "experienced by inmates at the SCCF during the 2009-2012 period are not the same as those of the inmates incarcerated from 2013 to the present."  (Support Memo at 12; see also Reply at 7.)  In support of its position, Defendant points to the New Yaphank Facility ("New Yaphank"), opened in 2013, as well as the 2019 enactment of bail reform laws, both of which allegedly contributed to decreased populations in the Facilities.  (See id. at 7-9.)  It also asserts a "full gut rehabilitation" of the original Yaphank Facility ("Original Yaphank") was completed in 2016, so that "[f]or all intents and purposes, the original Yaphank Facility is now a new facility." (Id. at 7, 8; see also id. at 13-14.)

---

[2]  As a threshold matter, because the Court has granted Plaintiffs' Bifurcation Motion (see Bifurcation Order, ECF No. 678), in considering the instant Decertification Motion, the Court has not considered arguments directed towards the issue of damages.  See, e.g., Langley, 715 F. Supp. at 558 ("[S]eparate damage proceedings are not inconsistent with class certification when the bulk of the issues, at least insofar as they concern liability, can be addressed in a single joint proceeding.").  (See also infra at DISCUSSION, Part II(C)(2) ("The Alternative Request for Amendment").)

### 1.    As to Commonality

According to the County, "the common questions identified in the Class Cert. Order relating to the allegedly unconstitutional conditions of the SCCF and whether the County was deliberately indifferent to those conditions are no longer subject to class-wide resolution."  (Id. at 12.)  Relatedly, the County argues an inmate's specific placement within a Facility could affect the conditions-of-confinement to which the inmate was subjected, i.e., it would be "fact specific to each" inmate and not a common question available for resolution on a class basis. (See id. at 14.)

### 2.    As to Typicality

Once more relying upon "the extensive renovations of the SCCF facilities," Defendant maintains decertification is warranted since the typicality requirement is no longer met "due to the variety of different conditions experienced by the inmates at the SCCF during the class period."  (Id. at 17.)  The County argues "[s]uch differences will only result in a wide variety of answers to questions whether [it] exhibited deliberate indifference as [to] the alleged unlawful conditions at the SCCF."  (Id. at 18.)

### 3.    As to Predominance

The County further argues that, even if the Court were to find common questions of fact or law still exist -- which it contends, no longer does -- such questions "certainly do not

predominate." (Id. at 19.)  In support of its non-predominance argument, the County maintains it is necessary to make individualized inquires regarding when inmates were incarcerated and the specific conditions during incarceration since "inmates who were incarcerated during 2009—2012 experienced vastly different conditions than those inmates who were incarcerated from 2013 through the present." (Id.)  Defendant contends, given the expansive class period, "mini-hearings" will be necessary to answer individualized questions. (See id.)  As such, in the County's view, predominance is no longer present. (See id. at 20.)

### 4.  Alternatively, Modifying the Class Definitions

The County recognizes that, "short of wholesale decertification," the Court may modify, redefine, or subclass a certified class. (Id. at 23 (quoting Freeland v. AT&T Corp., 238 F.R.D. 130, 142 (S.D.N.Y. 2006)).)  It requests that, if the Court finds decertification is not warranted, the Class definitions be modified to include a definitive cut-off date such that members include "prisoners and/or detainees housed in the SCCF for the period beginning April 5, 2009 though and including April 5, 2013." (Id.)  The County asserts such narrowing is called for because the Classes are overbroad, having been too open-ended. (See id. at 24.)  It puts forth that by injecting an end-date, appropriate narrowing of the Classes would occur.  Again, the County relies

upon the opening of New Yaphank and the renovation of Original Yaphank, as well as the span of time this Action has been pending,[3] as factors contributing to the purported unwieldy nature of the Classes as they are currently defined.  (See id.)  It also argues "the class now potentially includes inmates who have only been incarcerated for a short period of time and who have not experienced any conditions claimed in the original Complaint." (Id. at 24-25.)

    B.   <u>Plaintiffs' Position</u>

    In opposition, Plaintiffs principally argue:

> [D]ecertification at this late date is disfavored and requires new evidence or legal developments.  Each of the factual events identified by the County occurred prior to the last time the classes were amended.  And each legal argument raised in the decertification motion was raised in the County's initial class certification opposition and addressed by the Court.

(Opp'n at 1; <u>see also</u> <u>id.</u> at 8-9.)  Plaintiffs further assert: "The inhumane conditions suffered by the class have been admitted by the County's own employees and established by the County's own record."  (Id. at 2.)  They request the Action proceed as certified.

---

[3]  As the County observes:  "[T]his case was never expected to span more than a decade and only did so due to unforeseen circumstances (i.e., Covid)."  (Id. at 24.)

1.    <u>The Record Supports Denial of the Motion</u>

Plaintiffs also aver that, in advancing its Decertification Motion, the County fails to "engage with the record at all." (<u>Id.</u> at 10.)  They would fault the County for relying upon the "conclusory affidavit" of Warden Michael Franchi "to suggest that the conditions at Yaphank have been ameliorated", as well as "cherry-pick[ing] observations" made by Plaintiffs' expert, Ms. Skipworth, in her report "to suggest that the conditions present within the SCCF are not perfectly uniformly horrendous, such that the class certification is no longer appropriate." (<u>Id.</u>)  Indeed, in comparison and in opposing the Decertification Motion, Plaintiffs cite to the Court's Summary Judgment Order, underscoring the Court "ruled that the unrebutted evidence demonstrated the conditions that Plaintiffs alleged, but that the jury would need to resolve questions of fact concerning the duration and severity of the issues, many of which would require assessing Plaintiffs' credibility." (<u>Id.</u> at 4.)  Further citing to evidence produced in supplemental discovery, Plaintiffs argue the conditions-of-confinement remain the same, with "[t]he County's own expert acknowledging that many of the issues Plaintiffs identified are notable and require immediate remediation," as well as with "newly disclosed County witnesses, many of whom agreed that specific conditions Plaintiffs complain of exist, are concerning, and have persisted until present day."

(Id. at 6 (omitting footnote regarding County's expert's deposition testimony; omitting citation to evidence).) Additionally, in providing an overview of the purported current conditions at the SCCF, which they contend remains "a substantial risk of harm to Plaintiffs", Plaintiffs cite a plethora of evidence. (See id. at 6-8.) Furthermore, Plaintiffs contend, while they have "repeatedly sought documentary evidence of relevant repairs or renovations, . . . the County has produced nothing to support their claims in" the Decertification Motion that such repairs were made. (Id. at 6.)

Moreover, in challenging the County's rationale for decertification, Plaintiffs argue, notwithstanding the County's claims regarding the opening of New Yaphank and the renovation of Original Yaphank, the County has failed to "produce any documents detailing either of these developments," and, assuming those events have occurred, they "allegedly took place prior to the last time the Court addressed class certification on June 29, 2016."[4] (Id. at 10 (citing Lynch v. Suffolk County, No. 11-CV-2602, 2016 WL 4508343, at *1 (E.D.N.Y. Aug. 29, 2016) (adopting, sub nom.,

---

[4]  The Court presumes Plaintiffs' reference to "June 29, 2016" is a mere scrivener's error; the Court issued the relevant order on August 29, 2016.  See Lynch, 2016 WL 4508343.

report and recommendation as modified[5])[6]); emphasis added).)   In other words, these were known situations and not new events.

Further, to the extent the County relies upon the Declaration of Warden Franchi (the "2024 Franchi Declaration") in support of its contention that the conditions-of-confinement have changed, Plaintiffs urge the Court to reject such reliance. (See id. at 10-11.)   Plaintiffs argue that, like the 2018 Franchi Declaration (ECF No. 483-2) upon which the County relied in moving for summary judgment and which reliance this Court found unavailing (see Butler, 2023 WL 5096218, at *33), Warden Franchi's current 2024 Declaration provides "no additional substance". (Id. at 10-11.)   Indeed, according to Plaintiffs, "[a]lthough the 2024 affidavit baldly asserts personal knowledge, it adds no other factual basis for such knowledge either before or after the Warden's tenure." (Id. at 11.)   Plaintiffs challenge the credibility of the 2024 Franchi Declaration "because it is entirely unsupported by any documentary evidence produced by the County." (Id. (citing Jeffreys v. City of N.Y., 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming refusal to credit testimony "largely

---

[5]  The modification is irrelevant to the present issue; it permitted notice packets to be distributed by first class mail rather than certified mail.  See Lynch, 2016 WL 4508343, at *2.

[6]  Found in the Case Docket at ECF No. 428.

unsubstantiated by any other direct evidence"); further citation omitted).)

Continuing, Plaintiffs maintain unconstitutional conditions-of-confinement persist as supported by the updated report of Ms. Skipworth. (See id. at 12.) To the extent the County would challenge the Skipworth Report because it is based on sampling, Plaintiffs assert: representative sampling is a viable method to establish classwide liability (see id. (citing Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 460 (2016)); the County's own expert has utilized the sampling approach in other cases (see id. (citation omitted); see also id. at 13); and, having secured a ruling that Ms. Skipworth be limited to examining the same locations as Plaintiff's prior expert, Mr. Pepper, "the County cannot be heard to argue that [the] sampling method didn't establish facility-wide conditions." (Id.) At bottom, "Ms. Skipworth's sample analysis establishes the persistence of issues at the SCCF identified in 2015 and memorialized in Mr. Pepper's 2017 report", and "[t]he County has not identified any inconsistency that would undermine Plaintiffs' ability to proceed as a class" (Id.)

2.    The Lack of Intervening Factual or Legal Development Justifying Decertification

Once more, Plaintiffs underscore that in 2016, when the County moved to amend the Class definition to exclude inmates

housed exclusively in New Yaphank, "the renovations the County contend occurred in 2015 <u>had also already happened</u>." (<u>Id.</u> at 13-14 (emphasis added).)  Since the County "had ample opportunity to raise identical arguments for decertification", it "should not be heard now." (<u>Id.</u> at 14.)

Relatedly, according to Plaintiffs, the County's arguments in support of decertification have already been considered and rejected. (<u>See id.</u>)  In that vein, as to the County's commonality argument, <u>i.e.</u>, whether any particular detainee was subjected to cruel and inhumane conditions is fact specific to each detainee, Plaintiffs would have the Court reject that argument since nothing has changed such that it is impossible to have a class-wide answer to the question "whether the County was aware of and deliberately indifferent to the conditions at the SCCF". (<u>Id.</u> at 15 (quoting Certification Order, 289 F.R.D. at 98).)  As to the County's typicality argument, <u>i.e.</u>, that the typicality requirement cannot be met because of the variety of different conditions experienced by the inmates at the Facilities, Plaintiffs contend this position was also rejected by the Court because "the representative claims need not be identical to the claims of every class member in order to meet the typicality requirement." (<u>Id.</u> at 16 (quoting Certification Order, 289 F.R.D. at 99).)  As to the County's predominance argument, Plaintiffs maintain "this Court recognized that irrespective of [damages]

inquiries, core questions of the County's liability predominate over the question as to the degree to which any individualized class member was harmed by or exposed to unconstitutional conditions," which inquiry remains to be answered today. (Id.) Hence, because this Court has already considered the County's arguments raised in its Decertification Motion when ruling upon Plaintiff's Certification Motion (see ECF No. 347), and rejected those arguments, and because the County offered nothing new here, there is no basis to grant the Decertification Motion. (See id. at 17.)

C.   The Court's Ruling[7]

---

[7]  The Court's ruling herein is framed by certain considerations. First, the Court has considered Plaintiffs' characterization of the 2024 Franchi Declaration, which Defendant relies upon in advancing its Motion; said characterization (see supra at 10, 12-13), carries weight.  Having compared Warden Franchi's 2024 Declaration (ECF No. 593) with his 2018 Declaration (ECF No. 483-3), submitted in support of the County's Cross-Motion for Summary Judgment, the Court finds the 2024 Declaration continues to suffer largely from the same deficiencies identified in the Court's Summary Judgment Order, to wit, it is "entirely conclusory" and lacks citation to any supporting evidence.  (Summary Judgment Order, 2023 WL 5096218, at *33.)  Moreover, while Warden Franchi summarily stated his 2024 Declaration that he has personal knowledge of the facts set forth in said Declaration, a fair reading of it does not indicate why that is so.  Moreover, other than stating he is currently the Warden of the Facilities (see 2024 Franchi Decl. ¶1), he has failed to establish he is competent to testify to many of the matters to which he avers.  (See 2024 Franchi Declaration, in toto.)  The Court is perplexed by this given it identified its reasons for finding the 2018 Franchi Declaration "unavailing".  It is, therefore, befuddling that the 2024 Franchi Declaration closely tracks the contents of Warden Franchi's 2018 Declaration.  At bottom, reliance upon the 2024 Franchi Declaration is, likewise, unavailing; it does not

The Court restricts its ruling to those relevant arguments raised by the County.

1.  The Request for Decertification

The Court finds Plaintiffs' arguments persuasive. As Plaintiffs astutely underscore, in 2016, when the County moved to have the Classes redefined to exclude those inmates housed

---

persuasively demonstrate either a significant intervening event or a compelling reason to reexamine certification.

Second, in its Reply, in purported support of its assertion of "change in circumstances caused by the construction of a new jail facility and the renovation of the old Yaphank facility" as being "intervening events justifying class decertification," in addition to a general reference to the 2024 Franchi Declaration "as to the work undertaken" (Reply at 7), the County also includes a general citations to "work reports, Project Manual, Capital Budgets and the agreement with the contractor" (hereafter, the "Late-Proffered Evidence"). (Id. (citing generally "Exhibits E-G").) Again, for the reasons articulated above, the County's reliance on the 2024 Franchi Declaration is unavailing.

Moreover, the time to have proffered evidence in support of Defendant's change-in-overcrowding argument was in its opening brief. "Courts 'generally do not consider issues raised in a reply brief for the first time,' because the plaintiff 'may not have an adequate opportunity to respond.'". Videri, Inc. v. ONAWHIM (OAW) Inc., No. 23-CV-2535, 2024 WL 4027980, at *10 n.8 (S.D.N.Y. Sept. 3, 2024) (quoting United States v. Pepin, 514 F.3d 193, 203 n.13 (2d Cir. 2008) (quoting In re Harris, 464 F.3d 263, 268-69 n.3 (2d Cir. 2006))). A court's consideration of "issues raised", therefore, rightly extends to the consideration of evidence which would support the "issues raised" by a movant. The County was well aware of its Late-Proffered Evidence at the time it filed its Decertification Motion; thus, there is no rational basis for the County not to have included such Late-Proffered Evidence in its opening brief when it initially raised the issue of the purported change-in-overcrowding. Accordingly, because the Late-Proffered Evidence was raised for the first time in the County's Reply, the Court need not--and has not--considered it. Nonetheless, even if it had considered said Late-Proffered Evidence, for the reasons stated herein, the Court's conclusion would remain the same.

exclusively in New Yaphank, it was well-aware of its position that overcrowding at the Facilities had been alleviated.  The Court agrees with Plaintiffs this "is not 'new evidence,'" and it is not "a sufficient basis to argue—mere weeks before trial—a significant change requiring decertification, because doing so 'would prejudice members of the class who have not taken independent steps to protect their rights precisely because they were members of the class.'"  (Opp'n at 14 (quoting Gortat, 2012 WL 1116495, at *4).)

As the Gortat Court observed in denying decertification, it needed to "also consider the stage of the litigation and whether an 'eve-of-trial decertification could adversely and unfairly prejudice class members, who may be unable to protect their own interests.'"  Gortat, 2012 WL 1116495, at *2 (quoting Doe, 192 F.R.D. at 136 (further citation omitted)).  That court explained that, in moving for decertification, defendants "largely reprise arguments [which] the Court has previously considered and rejected."  Id.  Thus, as in its original ruling, the Gortat Court found the defendants' recycled arguments did not constitute compelling circumstances warranting decertification.  See id.  The same holds in this instance; the County's regurgitation of its previous arguments fails to meet its heavy burden in seeking decertification.

Here, as to commonality, the County again contends the Class does not present a common question, but one which must be

answered on an inmate-by-inmate basis since inmates' experiences differ. (<u>See</u> Support Memo at 14.)  In opposing certification, the County similarly argued the inmates did not allege they sustained the same injuries and presented "diffuse and abstract assertions of institutional wrongdoing", thereby failing to establish commonality. (<u>See</u> Certification Opp'n, ECF No. 363-19, at 12.) Upon the record presented, for the reasons articulated in its Certification Order, <u>see</u> 289 F.R.D. at 97-98, the Court continues to find commonality is met, <u>i.e.</u>, there remains a common contention of such a nature that it is capable of class-wide resolution. "Whether the County is aware of and deliberately indifferent to the conditions at the SCCF is a common question subject to class-wide resolution." (<u>Id.</u> at 98.)

As to typicality, in seeking decertification, the County repeats the crux of its opposition to certification:  The conditions-of-confinement the representative inmates experienced were not typical of those experienced by class members since said conditions "did not affect <u>every</u> class member"; instead, there was a "variety of different conditions experienced by the inmates at the SCCF during the class period." (Support Memo at 17 (emphasis in original).)  This is essentially the County's previous argument, <u>to wit</u>:

> [T]he suggestion that the claims of all potential plaintiffs arise out of the "same course of events" is facially untenable.

> Class members were incarcerated in 2 different facilities, for shorter or longer time period over a span of several years, and obviously not all were housed in the few areas of the facilities in which the amended complaint alleges that the poor housing conditions existed.

(Certification Opp'n at 13.)  However, "[a]lthough the extent of their exposure to these conditions and the exact nature of their injuries will necessarily differ from those of the proposed class members, '[t]he representative claims need not be identical to the claims of every class member in order to meet the typicality requirement.'" (Certification Order, 289 F.R.D. at 99 (quoting Marriott v. County of Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y. 2005)).)  Thus, having considered the record presented and finding there is neither an intervening event nor the showing of a compelling reason, for these reasons and the reasons articulated in its Certification Order, see id., the Court continues to find typicality is met.

As to predominance, once more Defendant presses its contention that there are no longer common questions of law or fact that predominate over individual questions; instead, "individualized inquiries are necessary to determine when inmates were incarcerated at the SCCF and what specific conditions they were exposed to during those times." (Support Memo at 18, 19.) This mirrors the County's argument raised in opposition to certification:

> Plaintiffs challenge numerous aspects of
> diverse living conditions claimed to have
> existed in parts of 2 different buildings,
> during varying periods of incarceration from
> 2009 into the indefinite future, and
> accordingly, uniformity of violation and
> injury suffered (if any), cannot be assumed.
> Clearly, whether each inmate's rights were
> violated, and what, if any, injury he
> sustained, entails individualized inquiry.

(Certification Opp'n at 22.)  In seeking certification, Plaintiffs argued, inter alia, the conditions of which they complained "persisted unabated."  (Certification Order, 289 F.R.D. at 102 n.11; see also Certification Support Memo, ECF No. 350, at 17-18.) They maintain that position now, asserting both that "[t]he County has come nowhere close to offering evidence sufficient for this Court to reverse its" Certification Order and that "Plaintiffs' expert verified Plaintiffs' allegations by inspecting the exact locations criticized before [which inspection] establishes that the basis for allowing certification today is just as strong as it was in 2013."  (Opp'n at 23.)  Upon review, the Court agrees.

Given the present record, the County's current stance continues to be unpersuasive.  Rather, as it did when it certified the Classes in this Action, the Court continues to find the questions whether the conditions-of-confinement at the Facilities violated the inmates' Constitutional rights and whether Defendant was deliberately indifferent to said conditions to be common to the Classes, as well as continues to find "these issues predominate

over the issues subject to individualized proof." (Certification Order, 289 F.R.D. at 102.)

In light of these consistent findings, as Plaintiffs aptly put forth, the County "cannot meet its heavy burden [in] seeking to decertify [the] class[es] by simply recasting [its] arguments previously made against class certification.'" (Opp'n at 14 (citing Jermyn, 276 F.R.D. at 172 (denying decertification motion where defendant relied upon arguments and analyses "essentially identical" to ones previously raised)).) Therefore, decertification is not warranted.

### 2.   The Alternative Request for Amendment

In conjunction with its Bifurcation Order, ruling the February 10, 2025 trial shall be limited to the issue of liability, the Court denies without prejudice that branch of Defendant's Decertification Motion seeking an amendment of the Class definitions. The County would have the Court amend the Class definitions to, in essence, limit it to those members housed in the Facilities beginning April 5, 2009 through and including April 5, 2013 (approximately when New Yaphank opened). (Support Memo at 23.) Indeed, in support of its Decertification Motion, the County has consistently drawn a distinction between the periods from 2009 to 2012 (hereafter, the "Early Period") and from 2013 to the present (hereafter, the "Later Period"). (See, e.g., Support Memo at 13, 17, 19.) Its main contention regarding these two time-

periods is that while those inmates housed in the Facilities during the Early Period might have been subjected to overcrowding, those inmates housed in the Facilities during the Later Period could not have been; therefore, absent overcrowding, those inmates falling within the Later Period could not have been subjected to unconstitutional conditions. (See, e.g., Support Memo at 3, 13-14, 19; Reply at 7.) However, that is not a forgone conclusion.

Overcrowding is but one of many conditions of which the Class members complain. (See Summary Judgment Order, 2023 WL 5096218, at *7 (listing "persistent and severe overcrowding" as one of six conditions at the SCCF which Plaintiffs allege violated their constitutional rights during the class period).) In ruling on the Parties' Cross-Motions for Summary Judgment, the Court considered the complained-of conditions-of-confinement in combination. (See id. at *34.) Importantly, as to overcrowding, the Court found Plaintiffs had shown the Facilities were overcrowded. (See id.) Yet, that finding did not distinguish between the Early and Later Periods. (See id.) Moreover, the Court's overcrowding finding "d[id] not compel the automatic conclusion Plaintiffs were exposed to conditions-of-confinement which violated their constitutional rights." (Id.) Rather, "[w]hile it may likely be that the overcrowding which led to system strains and deteriorations also caused exposure to unconstitutional conditions-of-confinement, 'likely' is not

'absolutely'." (Id. (emphasis added).)  Accordingly, the Court explained that the duration and severity of exposure to the conditions-of-confinement must be assessed "to determine a condition's implication upon an inmate's constitutional rights." (Id.)  Thus, the fair reading of the Court's overcrowding ruling is that the Court recognized overcrowding was but one factor which led to or caused the other complained-of conditions, i.e.: "ping pong" toilets (see id. at *34-36); poor ventilation, exposure to extreme temperatures, and inadequate heat (see id. at *37-38); persistent flooding of dorms and cells (see id. at *38-39); and other unsanitary conditions, e.g., unsanitary food, polluted water, and exposure to vermin (see id. at *39-42).  The presence or absence of overcrowding is not the definitive factor for assessing whether the inmates were exposed to unconstitutional conditions; it is but one consideration.  Therefore, the County's argument for amending the definition of the Classes falls flat.

During the liability phase, the County is free--to the extent not precluded by relevant Court rulings--to argue that, at a certain time, overcrowding was lessened or eliminated as a condition-of-confinement.  It is for the fact-finder to determine whether such purported lessening or elimination of that factor had any implication on the conditions-of-confinement to which the Class members were exposed.

Furthermore, in its Certification Order, in finding proceeding as a class action in this instance was the superior method for fairly and efficiently adjudicating this prisoners' conditions-of-confinement case, and that resolving the liability issue, i.e., whether the County was aware of and deliberately indifferent to the conditions at the SCCF, since such inquiry was subject to generalized proof (see generally Certification Order), the Court also recognized it has "a number of management tools available to [it] to address any individualized damages issues that might arise," including "decertifying the class after the liability trial", "creating subclasses" or "altering or amending the class". (Id. at 102 (citation omitted).) Hence, given the bifurcation of the trial, during which the Damages Class will be seeking a finding of liability, and depending on the fact-finders' determinations regarding liability, as well as the management tools available to the Court, the Court finds the County's request to amend the Class definitions at this juncture to be premature. As Plaintiffs readily concede, the Classes "may be decertified after a finding of liability if, at that time, the [C]lass[es] no longer meet[] the requirements for class certification." (Opp'n at 23 (citing 7AA WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE §1785.4 (3d ed. Westlaw) ("[A]fter a determination of liability it may be permissible to amend the class definition or subdivide the class if it becomes necessary in order to define the remedy or if

decertification is warranted.")).)  Finally, the Court agrees with
Plaintiffs that this approach "is particularly prudent, where, as
here, 'the action has proceeded as a class for many years in this
forum; resulting in substantial efficiencies;' and 'the class is
composed of individuals who, as former or current prisoners, may
lack the resources or know-how to proceed individually.'"  (Id.
(quoting Betances v. Fischer, No. 11-CV-3200, 2024 WL 3848485, at
*5 (S.D.N.Y. Aug. 16, 2024)).)


## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that, in its
discretion, for the reasons stated herein, and especially
considering the eleventh-hour nature of this request in tandem
with considering the Action's protracted existence, the County's
Decertification Motion (ECF No. 591) is **DENIED**.  This denial is
without prejudice to either Party seeking to decertify the Damages
Class or an amendment to or modification of the Damages Class
definition, if warranted, after the conclusion of the liability
phase of the Action.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    January 22, 2025
          Central Islip, New York