UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MACK BUTLER, DESHAUN SIMS,
CLYDE LOFTON, PAUL ALVER,
KEVIN KING, and RICKEY LYNCH,
on behalf of themselves and all
others similarly situated,

                         Plaintiffs,       <u>MEMORANDUM & ORDER</u>
                                            11-CV-2602(JS)(ST)

      -against-

SUFFOLK COUNTY,

                          Defendant.
----------------------------------------X

APPEARANCES
For Plaintiffs:     Daniel H.R. LaGuardia, Esq.
                  John Nathanson, Esq.
                  Elizabeth J. Stewart, Esq.
                  Benjamin Klebanoff, Esq.
                  ALLEN OVERY SHEARMAN & STERLING US LLP
                  599 Lexington Avenue
                  New York, New York  10022

                  Christopher T. Dunn, Esq.
                  Amy Belsher, Esq.
                  Gabriella Larios, Esq.
                  Veronica R. Salama, Esq.
                  NEW YORK CIVIL LIBERTIES UNION
                  125 Broad Street
                  New York, New York  10004

For Defendant:     E. Christopher Murray, Esq.
                  Michelle A. Klein, Esq.
                  Elizabeth S. Sy, Esq.
                  Caitlyn M. Gibbons, Esq.
                  RIVKIN RADLER LLP
                  926 RXR Plaza
                  Uniondale, New York  11556

SEYBERT, District Judge:

        The instant class action case is premised upon Plaintiffs' complaints related to alleged conditions-of-confinement to which they had and have been subjected while pretrial detainees and/or inmates of the Suffolk County Correctional Facilities (hereafter, the "Action"). The Court assumes the parties' familiarity with the factual background giving rise to this Action. *See generally* *Butler v. Suffolk County*, No. 11-CV-2602, 2023 WL 5096218 (E.D.N.Y. Aug. 9, 2023) (ECF No. 527) (hereafter, the "Summary Judgment Order"); *Butler v. Suffolk County*, No. 11-CV-2602, 2023 WL 5095432 (E.D.N.Y. Aug. 9, 2023) (ECF No. 528) (hereafter, the "Substitution Order"); *Butler v. Suffolk County*, 289 F.R.D. 80 (E.D.N.Y. 2013) (ECF No. 375) (hereafter, the "Certification Order") (granting class certification; establishing an Injunctive Class (with subclasses) and a Damages Class (with subclasses)).[1] Accordingly, in this Memorandum & Order, the Court proceeds to rule upon various Motions *In Limine* brought by Plaintiffs, *to wit*:

        (1) the Motion *In Limine* Regarding Plaintiffs' Witnesses' Personal Histories and Presentation In Court

---

[1] Familiarity with terms of art defined in the Summary Judgment Order, Substitution Order, and Certification Order is assumed. Herein, the Court may use said terms of art. For convenience, the Court reiterates it will refer to pretrial detainees and post-conviction inmates simply as "inmates". (*See, e.g.,* Summary Judgment Order, 2023 WL 5096218, at *1 n.2.)

(hereafter, the "PH-MIL") (see ECF No. 615; see also PH-MIL Support Memo, ECF No. 616; PH-MIL Opp'n, ECF No. 632; PH-MIL Reply, ECF No. 641);

(2) the Motion In Limine To Preclude James Balsamo's Testimony (hereafter, the "Balsamo MIL") (see ECF No. 619; see also Balsamo MIL Support Memo, ECF No. 620; Klebanoff Omnibus Decl., ECF No. 625; Balsamo MIL Opp'n, ECF No. 633; Balsamo MIL Reply, ECF No. 642); and

(3) the Motion In Limine on Sampling Evidence (hereafter, the SE-MIL") (see ECF No. 621; see also SE-MIL Support Memo, ECF No. 622; SE-MIL Opp'n, ECF No. 634; SE-MIL Reply, ECF No. 644).

<u>DISCUSSION</u>

I.   <u>In Limine Motions, Generally</u>

As thoroughly explained by Honorable Katherine B. Forrest of the Southern District of New York:

> In limine motions can play an especially important and useful role in a jury trial, allowing the parties to seek rulings in advance as to issues that otherwise may require extensive side bars or argument that can interrupt the proceedings. See Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); accord Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). Well-grounded in limine motions may also require the parties to sharpen their focus on the real issues in a case and streamline their presentations. See In re Methyl Tertiary Butyl Ether Prods. Liab.

Litig., 517 F. Supp. 2d 662, 666–67 (S.D.N.Y.
2007). . . .

The Court's role with regard to such pre-
trial rulings is grounded in [R]ule 104 of the
Federal Rules of Evidence. That rule
"requires that a court make a preliminary
determination of the admissibility of all
evidence." SEC v. Tourre, 950 F.Supp.2d 666,
675 (S.D.N.Y. 2013). In the context of a pre-
trial in limine ruling, challenged evidence
"should only be precluded when it is 'clearly
inadmissible on all possible grounds.'" Id.
(quoting Commerce Funding Corp. v.
Comprehensive Habilitation Servs., Inc., No.
01 Civ. 3796, 2005 WL 1026515, at *3 (S.D.N.Y.
May 2, 2005)).

In limine rulings are "necessarily
preliminary—and [ ] subject to change when the
case unfolds." Id. at 676 (citing Highland
Capital Mgmt., 551 F. Supp. 2d at 176;
Commerce Funding, 2005 WL 1026515, at *4). "A
foundation may be laid contrary to
expectations; relevance may appear where
previously considered unlikely; the balancing
of factors under Rule 403 may change as events
in the courtroom drama unfold. The Court
recognizes that trials often contain
unexpected moments and developments, and[,
thus,] the parties should bear those
developments in mind when determining whether
to drop or re-raise an issue decided by this
order." Id.

Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische

Industrie, No. 11-CV-0681, 2015 WL 5459662, at *1 (S.D.N.Y. Sept.

16, 2015); see also Williams v. Geraci, No. 14-CV-5742, 2020 WL

5848738, at *5 (E.D.N.Y. Sept. 30, 2020) (discussing MIL standard).

II.  The PH-MIL

    A.    Plaintiffs' Position

        Plaintiffs are seeking the preemptive exclusion of the
criminal histories of the 17 Plaintiff witnesses, identified in
the Parties' Proposed Joint Pretrial Order (ECF No. 667, Pls.'
List of Witnesses, ¶(d); see also, e.g., ECF No. 604, Pls.' List
of Witnesses ¶(d)), who were or are inmates in the Facilities
(hereafter, the "Subject Witnesses").   They assert the Subject
Witnesses'   criminal   histories   are   irrelevant   to   their
constitutional claims and, therefore, pursuant to FRE 401 and FRE
402, should be excluded.   (See PH-MIL Support Memo at 3-6.)   They
contend the atypical nature of this Action, "distinct from, for
example, a Section 1983 action against police officers for
excessive force during an arrest", guides the Court's discretion
to grant this in limine request.   (See id. at 5.)   Indeed, it is
sufficient for the Court to "provide an instruction to the jury
noting that at the time the incidents which gave rise to this
lawsuit took place, the [Subject Witnesses were] incarcerated at
the Suffolk County Correctional Center—a matter with which [the
jury] need not concern [itself]."    (Id. (quoting Dougherty v.
County of Suffolk, No. 13-CV-6493, 2018 WL 1902336, at *5 (E.D.N.Y.
Apr. 20, 2018)).)   Hence, Plaintiffs request the Court "reject any
attempt by the County to introduce evidence that is irrelevant to

the nature of Plaintiffs' constitutional claims." (Id. (citation omitted).)

Further, Plaintiffs prophylactically request the exclusion of the Subject Witnesses' criminal histories as impeachment evidence. (See id. at 6-17.) Relying upon FRE 403, they generally argue that, in this purported violations of conditions-of-confinement Action, it is imperative to ensure "the jury's consideration of [the Subject Witnesses'] testimonial evidence is untainted by irrelevant, unduly prejudicial, and cumulative evidence of their criminal convictions, unrelated incarceration histories and conviction status during their SCCF incarceration(s)." (Id. at 6; see also id. at 6-7.) Plaintiffs further contend that, pursuant to FRE 609, the Subject Witnesses' criminal convictions should be precluded for impeachment purpose, since such evidence should be admitted only in narrow circumstances. (See id. at 8.) As to felony convictions less than ten years old, Plaintiffs assert this would affect ten of the 17 Subject Witnesses (see id. at 10-13), whom they do not identify; nor do they indicate the types of felony convictions at issue. (See id.) As to felony convictions more than ten years old, Plaintiffs contend at least 14 of the Subject Witnesses have such convictions; again, those Witnesses and their respective convictions, have not been identified. (See id. at 13.)

According to Plaintiffs, since "the County has not provided notice of its intent to rely on such evidence and because none of these convictions qualify as the sort of 'rare' exceptions required by Rule 609(b), they must be excluded." (Id. at 14.) Further, pursuant to FRE 609(d), Plaintiffs seek the preclusion of any juvenile adjudications of the Subject Witnesses. (See id. at 15.) They also request that, per FRE 609(a)(1), the subject Witnesses' misdemeanors be excluded from impeachment evidence, which, if more than ten years old, would be inadmissible under FRE 609(b). (See id.) To the extent the Court determines any of the Subject Witnesses' felony convictions are admissible for impeachment purposes, Plaintiffs request such "admission be limited to the fact of a prior felony conviction—without revealing the specific offense, sentence, or details—to minimize inherent prejudice." (Id. at 16.) Finally, Plaintiffs maintain "narrowing the County's impeachment of the [Subject Witnesses] based on their prior convictions would promote judicial efficiency by minimizing the risk of wasting time or needlessly presenting 'cumulative evidence' in this multi-day trial." (Id. at 17.)

Plaintiffs further request the County be precluded from introducing the Subject Witnesses' prison disciplinary histories, arguing such history "is irrelevant to their testimony about conditions of confinement as SCCF", thereby making it inadmissible pursuant to FRE 401 and FRE 402. (Id. at 17.) Moreover, even if

such evidence could be construed as relevant, it would also be excludable under FRE 404(d) as inadmissible propensity evidence. (See id. at 18.)  Plaintiffs claim the County's apparent attempt to introduce prison disciplinary histories is "an improper effort to suggest Plaintiffs disregard 'law and order,' potentially leading the jury to question the credibility of their accounts or the propriety of making findings in their favor."  (Id.) Plaintiffs aver, because the Subject Witnesses' prison disciplinary histories have no relevance to the conditions-of-confinement of which Plaintiffs complain, such evidence has no relevance other than to suggest propensity, making it excludable pursuant to FRE 404(b).  (See id. at 18-19 (case citations omitted).)

Additionally, Plaintiffs request the Subject Witnesses' substance abuse histories be excluded pursuant to: FRE 401 and FRE 402, since it is irrelevant to the claims at issue; FRE 403, since it is unduly prejudicial; FRE 404(b), since it is improper character evidence; and, FRE 608(b), since such history does not go the Subject Witnesses' "character for truthfulness". (See id. at 19-20.)  Similarly, Plaintiffs ask that the Subject Witnesses' prior arrests and other 'bad acts' also be excluded since it would violate FREs 401-404(b) as, other than propensity, its introduction has not legitimate purpose and would be prejudicial, and as it "is also impermissible as impeachment under Rule 608

because it is not probative of [the Subject Witnesses'] 'character for truthfulness'."  (Id. at 21 (quoting FRE 608(b)).)

    B.   <u>The County's Position</u>

      In opposition, the County asks the Court to "find that certain portions of Plaintiffs' [PH-MIL] motion are too sweeping in scope and reserve judgment on the admissibility of evidence not expressly raised . . . with the necessary specificity until trial when admission of the particular piece of evidence is at issue." (PH-MIL Opp'n at 1; see also, e.g., <u>id.</u> at 4 n.3, and at 6, 7, and 8.)  As to felony convictions less than ten years old, the County highlights Plaintiffs concession that there are at least ten of the Subject Witnesses with such convictions, some of which are for crimes of "stealth".  (See <u>id.</u> at 2, 3.)  Further, according to the County, "all felony convictions for drug-sales, robbery, grand larceny, and crimes of 'stealth' that are less than ten years old should be deemed admissible for impeachment purposes."  (Id. at 4.)  It underscores that the credibility consideration in deciding the admissibility of these convictions is particularly important in this Action and weighs in favor of admissibility.  (See <u>id.</u> (discussing the four relevant FRE 403 factors for determining admissibility pursuant to FRE 609(a)); see also <u>id.</u> at 2; see also <u>id.</u> at 5 (asserting, because the Subject Witnesses' credibility is "a central factor in this case", "the fourth factor weighs in favor of admissibility").)  In that vein, the County further asserts the

Subject Witnesses "are the only ones who can testify as to the specific conditions _they_ personally experienced." (Id. at 5 (emphasis in original.) Therefore, because "the jury will have to determine who is more credible", _i.e._, the Subject Witnesses or the County, the Subject Witnesses' felony convictions should be admitted for impeachment purposes (id.) and, "at a minimum", the Court should "allow the introduction of the statutory names, sentences imposed, and the date of the conviction, which will reduce any risk of unfair prejudice." (Id. at 6.)

As to misdemeanors involving dishonest acts or false statements, regardless of their age, the County reserves the right to seek their introduction and requests "the Court reserve judgment on this portion of Plaintiffs' [PH-MIL] motion until trial." (Id. at 7.) As to the Subject Witnesses' prison disciplinary histories, the County asserts such histories are "admissible to demonstrate animus towards the SCCF and/or employees of the SCCF." (Id.) However, since "Plaintiffs have not stated the details of the specific prison disciplinary histories they seek to preclude," the County reserves its right to use such histories, invoking FRE 404(b) and FRE 608. (See id.) Similarly and finally, as to the Subject Witnesses' prior arrests or other 'bad acts", the County maintains a sweeping argument for preclusion is unavailing since certain 'bad acts' may be probative of a Witness's character for truthfulness. (See id. at 8.) By way of example, the County

provides an excerpt from the deposition of Named Plaintiff Mack Butler, who testified that, in the 1990s, he provided police with a false name when he was arrested after absconding from work release. (See id. at 9 (quoting Butler Dep. Tr., Ex. A, ECF No. 631-1, attached to Murray Decl., ECF No. 631).) Accordingly, the County contends this history should be admissible for impeachment purposes.

C.    The Court's Ruling[2]

The Court makes three initial observations. First, this MIL is directed towards the Subject Witnesses only. Second, a fair reading of Plaintiffs' PH-MIL Support Memo and the County's Opposition thereto, shows the overarching issue at hand is evidence that may be presented for impeachment purposes; indeed, in the absence of the County indicating otherwise, the Court deems the

---

[2]    In their PH-MIL, Plaintiffs also request the currently incarcerated Subject Witnesses be: (1) permitted to appear in "appropriate courtroom attire including regular pants and a belt"; (2) "free from handcuffs, shackles, or other restraints while in the presence of the jury"; and (3) be escorted in and out of the courtroom by corrections officers "outside of the jury's presence". (PH-MI Support Memo at 22-23.) At the January 24, 2025 Pretrial Conference, the Court stated the currently incarcerated Subject Witnesses (therein, designated the "Housed Witnesses") will be permitted to appear in street clothes for the trial, but will be remain in leg shackles (which will not be visible to the jury while said Witnesses are seated in the galley), and will be moved into and out of the courtroom, as well as to and from the witness stand, outside of the presence of the jury. For clarity: Unless safety concerns warranting otherwise are raised by either the assigned Deputy U.S. Marshals or the assigned N.Y.S. correctional officers, while they are in the courtroom, the incarcerated Subject Witnesses are permitted to wear belts.

County's proffer of evidence in the identified categories of personal histories to be for rebuttal purposes only.  Third, the Court agrees with Plaintiffs that, to the extent the County did not address certain categories of past histories of the Subject Witnesses and which, therefore, Plaintiffs argue should be excluded, the County has effectively conceded those categories of past history are excludable, thereby narrowing the issues before this Court.  The Court concurs, deeming such silence as acquiescence by the County.  Given those observations and findings, the Court proceeds with its rulings.

1.  <u>Juvenile Adjudications</u>

In the absence of any objection and pursuant to FRE 609(d), the juvenile adjudications of the Subject Witnesses are inadmissible impeachment evidence.

2.  <u>Histories of Substance Abuse</u>

In the absence of any objection and pursuant to FRE 402 and FRE 403, the histories of substance abuse of the Subject Witnesses, as well as any participation in related programs, are excluded as impeachment evidence.

3.  <u>Prison Disciplinary Histories</u>

Having carefully reviewed the record and considered the Parties' arguments, the Court agrees with Plaintiffs that as to the Subject Witnesses' prison disciplinary histories, the "County has failed to make appropriate countervailing arguments regarding

admissibility". (PH-MIL Reply at 8.) Indeed, any purported "animus" the Subject Witnesses might have is irrelevant to the issue at hand, i.e., whether Plaintiffs were subjected to unconstitutional conditions-of-confinement and whether the County was deliberately indifferent to those conditions. See FRE 402. Nor has the County addressed how the probative value of such evidence would outweigh the risk of unfair prejudice. See FRE 403. Similarly, the County has not articulated how such histories go the Subject Witnesses' character for truthfulness. See FRE 608(b). Rather, on the record before it, the Court finds the Subject Witnesses' prison disciplinary histories should be excluded since the County has failed to identify a proper purpose for their admissions. See, e.g., Dougherty, 2018 WL 1902336, at *6-7 (excluding plaintiff's prior bad acts evidence where Suffolk County failed to identify a proper purpose for its admission and attempted to "improperly shift" the burden to plaintiff).

### 4. Misdemeanors

In the absence of any objection to the use of misdemeanors more than ten years old, such misdemeanors of the Subject Witnesses are excluded for all purposes. See FRE 609(b). However, the County suggests it may seek to introduce for impeachment purposes misdemeanors which are less than ten years old and which involve dishonest acts or false statements (see PH-MIL Opp'n at 7). Pursuant to FRE 609(a)(2), since the length of

punishment is irrelevant, if the County can establish the proffered misdemeanor establishes the elements of a dishonest act or a false statement, it may proffer such misdemeanors on rebuttal.  Whether the County satisfactorily makes that showing will be determined at trial as is necessary.

       5.   Felony Convictions

      First, in the absence of any objection (see, e.g., PH-MIL Reply, at 2; compare PH-MIL Opp'n, in toto), any felony convictions of the Subject Witnesses more than ten years old are excluded from admission at trial for any purpose, including rebuttals.  See, e.g., FRE 609(b).  Second, as to the felony convictions less than ten years old, as observed, supra, the County intends to use such evidence for impeachment purposes only.  Hence, for clarity, the Court explicitly holds the County to that implicit position.

      It cannot be disputed that the introduction of certain felony convictions less than ten years old are subject to FRE 403. See FRE 609(a)(1)(A); see also Geraci, 2020 WL 5848738, at *6 (listing the factors courts consider when determining the admissibility of prior felony convictions, i.e., "(1) the impeachment value of the crime, (2) its remoteness, (3) similarity to the current conduct, and (4) the importance of the credibility of the witness").  Unfortunately, neither side has indicated the felony convictions at issue.  Thus, the Court is asked to rule in

a vacuum.  It declines to do so.  This is especially so given the Second Circuit's instruction that "the gradations among Rule 609(a)(1) crimes, in terms of their bearing on truthfulness, . . . lie at the heart of the Rule 403 analysis that district courts must undertake when determining whether to admit for impeachment purposes evidence of a witness's convictions . . . under Rule 609(a)(1)."  United States v. Estrada, 430 F.3d 606, 619 (2d Cir. 2005); see also id. at 620 (elucidating, further, that the FRE 403 analysis prescribed by FRE 609(a)(1)(A) "requires assessment of the probative value of a particular conviction on a witness's propensity for truthfulness in light of the risk of prejudice, confusion, and delay").  Similarly, since it has not been apprised of those convictions the County may seek to use for rebuttal, the Court is stymied in determining whether a potentially proffered felony conviction is one that must be admitted pursuant to FRE 609(a)(2), "as being per se probative of credibility", assuming the County can establish the requisite elements of a dishonest act or false statement.  Estrada, 430 F.3d at 615.  Hence, the Court reserves decision as to the use of the Subject Witnesses' felony convictions (that are not more than ten years old), if any, on rebuttal.

### 6.  Other Issues

Plaintiffs also contend the County did not oppose other aspects of their PH-MIL Motion, i.e., excluding the Subject

Witnesses' conviction status while incarcerated at SCCF and beyond SCCF.  (See Reply at 2).  Indeed, the Court is perplexed how such information, if solicited, would be relevant to the issues at hand. See FRE 401, FRE 402.  It would certainly be prejudicial, especially as the jury will already have been informed of the nature of this Action: a prisons' conditions-of-confinement class action case.  See FRE 403.  In addition, such evidence could be confusing and could waste time, which are other reasons to exclude it.  See id.  Accordingly, such evidence is excluded.

Relatedly, because the Subject Witnesses' incarceration jackets are external evidence of their criminal convictions, incarceration histories, and conviction status while at SCCF, "and the County has not made any argument as to their relevance or admissibility for its case or for impeachment," Plaintiffs also seek their exclusion.  (See id. at 2 n.4 (citing Bermudez v. City of N.Y., No. 15-CV-3240, 2019 WL 136633, at *19 (E.D.N.Y. Jan. 8, 2019)).)  Given the absence of objection, and in light of FRE 608(b), the incarceration jackets are precluded, subject to the "door being opened" to their admission, which would necessitate an FRE 403 inquiry before determining whether the incarcerations jackets would then be admissible.  See, e.g., Bermudez, 2019 WL 136633, at *19.

As to prior bad acts, as the County asserts, Plaintiffs are seeking "to obtain blanket preclusion for all 'bad acts' as

impeachment evidence". (PH-MIL Opp'n at 8.) In the absence of any specific examples of prior bad acts by specific Subject Witnesses, the County "expressly reserves the right to raise any prior arrests and 'bad acts' as impeachment evidence under Rule 608 that are not specifically raised by Plaintiffs." (Id.) Thus, it requests the Court reserve judgment on this portion of the PH-MIL Motion. (See id.) The Court concurs; notwithstanding the general rule that prior bad acts are inadmissible, see FRE 404(b), without specific information as to individual Subject Witnesses, the Court is unable to ascertain whether any relevant exceptions apply. The County exemplifies its understanding of this concept, and the instances when the use of prior bad acts may be appropriate, with its proffer of Named Plaintiff Butler's deposition testimony regarding his use of an alias. (See PH-MIL Opp'n at 8-9 (arguing the use of an alias goes to the issues of credibility and truthfulness).) Hence, this branch of the PH-MIL Motion is denied; when, and if, the County seeks to use such evidence on rebuttal, the Court will rule whether it goes to the crucial issues of credibility and truthfulness and, therefore, whether its use is permissible.

* * *

To the extent the Court has not explicitly ruled on a portion of Plaintiffs' PH-MIL Motion, it is denied without prejudice to renew at trial, if warranted.

III. <u>The Balsamo MIL</u>

    A.   <u>Plaintiffs' Position</u>

        Plaintiffs seek to preclude the County from offering the opinions and testimony of James Balsamo ("Balsamo") pursuant to Federal Rules of Evidence ("FRE") 402 and 702 and pursuant to Federal Rule of Civil Procedure ("FRCP") 37(c), as a sanction. (<u>See</u> Balsamo MIL.)  Generally, Plaintiffs argue:  (1) pursuant to FRE 402, Balsamo's critiques of the opinions of Plaintiff's prior expert, Mr. Pepper, are irrelevant and, therefore, should be excluded; (2) because Balsamo's 2017 and 2024 opinions are not based on any accepted methodology, they are unreliable, thereby warranting their preclusion pursuant to FRE 702; and (3) given the County's malfeasance in failing to disclose Balsamo or his 2018 Inspection and 2019 Report, pursuant to FRCP 37(c), the County should be precluded from offering Balsamo at all.  (Balsamo MIL Support Memo at 8; <u>see also</u> <u>id.</u> at 17-18 (re: irrelevance); <u>id.</u> at 11-17 (re: unreliable methodology); and, <u>id.</u> at 18-24 (re: sanctionable non-disclosure).)

    B.   <u>The County's Position</u>

        In opposition, the County asserts it "does not intend to have Mr. Balsamo testify about anything not included in his 2024 report."  (Balsamo MIL Opp'n at 1; <u>see also</u> <u>id.</u> at 3 ("The County does not intend to have [Balsamo] testify during direct examination about the contents of his 2017 report or his 2019 draft report or

his observations from his 2018 visits to the SCCF."); id. at 7 ("Mr. Balsamo will only testify about his 2017 report, 2019 draft report, and observations from his 2018 inspection of the SCCF if plaintiffs open the door to those topics on cross-examination").)

Yet, tellingly, and as aptly stated by Plaintiffs:

> [t]he County does not deny or explain its failure to disclose Mr. Balsamo's 2018 Inspection at the same time that it was telling this Court the scope of Ms. Skipworth's inspection should be more limited. The County does not deny or even attempt to justify the fact that it failed to disclose Mr. Balsamo's 2018 Inspection and 2019 Report even while the Court was considering its summary judgment submission. And the County does not dispute that the 2019 Report was inconsistent with its summary judgment submission and could have changed the outcome of that motion.

(Balsamo MIL Reply at 1.) Moreover, the County's current position regarding Balsamo's 2019 Report is no longer consistent with its trial exhibit list, which included the 2019 Report (see ECF No. 667-4 at p.24 (listing Ex. WWWWWW, the "Balsamo 2019 Report")), or Balsamo's assertion, made during his September 2024 deposition, that he planned to testify at trial about his 2019 Report. (See Balsamo MIL Reply at 1.)

C.   The Court's Ruling

1.   Plaintiffs' FRE 402 Request Regarding the Pepper Report

First, given the County's concession regarding the proposed scope of Balsamo's testimony, Plaintiffs' initial request

to preclude as irrelevant Balsamo's 2017 opinions regarding the Pepper Report, see FRE 402, is GRANTED.  For clarity:  This ruling extends to Balsamo's 2017 Report, Exhibit VVVVVV, as well.  (See ECF No. 667-4 at p.24 (listing Ex. VVVVVV, the "Balsamo 2017 Report").)

### 2.   Plaintiffs' Sanction-of-Preclusion Request

The Court addresses, out-of-sequence, Plaintiffs' third request, i.e., implementing the sanction of precluding Balsamo from testifying because of the County's initial non-disclosure and, then, late disclosure of the 2018 Inspection and 2019 report. Plaintiffs raise serious issues regarding the County's failure to timely disclose Balsamo's 2018 Inspection and 2019 Report (see Balsamo MIL Support Memo at 18-24; Balsamo MIL Reply at 2-5), which the County has woefully failed to address in any meaningful way in its Balsamo MIL Opposition.  (See Balsamo MIL Opp'n, in toto.) Rather, the Court finds the County's paltry response to this issue is glib and disingenuous.  (See, e.g., Balsamo MIL Opp'n at 7 and note 3.)  Again, the Court agrees with Plaintiffs that "[t]he County does not deny that its disclosure failures impacted multiple rulings by this Court, including the scope of Plaintiffs' expert's inspections and, more critically, the Court's ruling on the motions for summary judgment."  (Balsamo MIL Reply at 2.)  Rather, the County's relative silence regarding the subject disclosure failures is deafening.

To the extent the County tries to explain away its nondisclosure of the 2019 Report as said Report being "merely a draft" which "did not need to be disclosed to Plaintiffs", is, as Plaintiffs describe it, "nonsensical". (Id. (citing Balsamo MIL Opp'n at 2).) More troubling, it is ipse dixit; the County has not produced an iota of evidence supporting such a claim. Nor does a review of the 2019 Report support such an attempted re-characterization. (See, e.g., Balsamo 2019 Report, ECF No. 625-2, at 1 (stating the 2019 Report "was submitted to The Suffolk County Attorney's Office through the Suffolk County Attorney, Mr. Dennis Brown, pursuant to Fed. R. Civ. P. Rule 26(a)(2)(B)" "on March 1, 2019").) Furthermore, as Plaintiffs argue, "[e]ven if the 2019 Report were in draft and was being withheld as work product, the County had an obligation to put it on a privilege log, which it never did." (Balsamo MIL Reply at 3.) Simply put: The County's "draft"-status claim is spurious.

Moreover, "[t]he duty to supplement arises when the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate." Lewis v. FMC Corp., 786 F. Supp. 2d 690, 705 (S.D.N.Y. 2011) (citing FRCP 26(e)). Rule 26(e), however, does not "permit a party to supplement an expert report at any time it wishes, 'but instead imposes an obligation to supplement the report when a party discovers the information that

it has disclosed is incomplete or incorrect.'" Coene v. 3M Co., 303 F.R.D. 32, 42 (W.D.N.Y., 2014) (quoting Lewis, 786 F. Supp. 2d at 705; further citation omitted).  Further,

> [w]here a party has failed to comply with a court-imposed deadline for expert disclosures and then seeks to avoid preclusion, courts consider (1) the reason for the non-compliance, (2) the importance of the witness to be precluded, (3) prejudice to the opposing party, and (4) any potential for continuance [(hereafter, the "Softel Factors")].

Scharrer v. United Sates, 2016 WL 3547933, at *2 (W.D.N.Y. June 30, 2016) (precluding expert testimony due to disclosing party's "utter failure to explain the reason for . . . six-month delay in making timely expert disclosure, effectively asking the court to ignore an apparent egregious disregard" of the court-ordered schedule (citing Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997))); see also Mills v. Steuben Foods, Inc., No. 19-CV-1178, 2024 WL 4223647, at *4 (W.D.N.Y. Sept. 18, 2024) (applying Softel Factors; finding party "should not be rewarded for having 'sandbagged'" its adversary with party's "extraordinary late expert disclosure"), appeal filed (2d Cir. Nov. 8, 2024).  It is well within the Court's discretion to preclude expert witness testimony where the expert's report is provided after a discovery deadline.  See Softel, 118 F.3d at 961–63 (affirming lower court's orders to preclude expert reports submitted past discovery cutoff date); Mills, 2024 WL 4223647

(applying _Softel_ Factors; striking as untimely plaintiff's expert's report and precluding expert from testifying); _Mobileye, Inc. v. Picitup Corp._, 928 F. Supp.2d 759, 766 (S.D.N.Y. 2013) (striking an untimely expert declaration).  The party against whom sanctions are sought bears the burden of establishing that noncompliance was either "substantially justified or harmless." _Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp._, No. 2016 WL 184407, at *2 (S.D.N.Y. Jan. 15, 2016).

      Applying the _Softel_ Factors here warrants precluding Balsamo from testifying.  Regarding the first _Softel_ Factor:  The County did not provide any reason for its non-disclosure of Balsamo's 2018 Inspections.  Further, its reason for not disclosing the 2019 Report, _i.e._, that it was a "draft", is patently incredible.  Regarding the second _Softel_ Factor:  As will be more fully addressed, _infra_, Balsamo's testimony is not crucial for the jury to understand Ms. Skipworth's opinion testimony.  Moreover, the unavailability of Balsamo will not impede the County's ability challenge Ms. Skipworth's testimony; it may do so with effective cross-examination.  Regarding the third _Softel_ Factor:  After Balsamo's 2108 Inspection and his 2019 Report, the County knew the position it had presented to the Court on summary judgment was inconsistent with the actual facts (_compare_ Franchi 2018 Decl., ECF No. 483-20; _see_ Balsamo MIL Reply at 4); yet, it took no steps to correct the inaccuracies.  And, at a minimum, what was uncovered

during the 2018 Inspection and what was contained in the 2019 Report was plainly responsive to Plaintiffs' discovery requests, but neither was not revealed until after close of supplemental discovery and only during Balsamo's September 2024 deposition, thereby thwarting Plaintiffs ability to further investigate what had been revealed. This is certainly prejudicial to Plaintiffs. Finally, regarding the fourth <u>Softel</u> Factor: Given the protracted length of this Action, the projected length of the trial, its nature as a large class-action case, the various and involved logistical considerations for making several of the Subject Witnesses available to testify, and that the trial has already been continued once, continuance of the Action is not a reasonable or pragmatic option. Additionally, the County has woefully failed to show its initial nondisclosure and subsequent late disclosure of the 2018 Inspection and 2019 Report was either substantially justified or harmless. Rather, having considered: (a) the various nuances of what transpired with Balsamo, from his undisclosed 2018 Inspection and 2019 Report, to their revelations at Balsamo's 2024 deposition, after the close of the supplemental discovery period; (b) the <u>Softel</u> Factors, which, in the aggregate weigh decidedly in Plaintiffs' favor; and (c) the County's inability to justify its conduct or demonstrate that said conduct was harmless, the Court finds preclusion of Balsamo is justified. Under the scenario presented, to hold otherwise would be tantamount to rewarding the

County "for having 'sandbagged'" Plaintiffs with its "extraordinary late expert disclosure". Mills, 2024 WL 4223647, at *4.

In sum, the County's failure to disclose Balsamo's 2018 Inspection or 2019 Report until after Balsamo's September 2024 depositions, during which deposition he disclosed same (see Balsamo MIL Support Memo at 19), warrants sanctions. It is not enough to preclude the County from introducing or relying upon the 2019 Report since, apparently anticipating the proverbial "writing on the wall", the County has proactively stated its current intention not to rely upon it--or Balsamo's undisclosed 2018 Inspection--notwithstanding having included the 2019 Report in its latest Exhibits List (see ECF No. 667-4 at p.24 (listing Ex. WWWWWW (Balsamo 2019 Report)).

Finally, like the court in Paulus v. Holimont, this:

> Court is cognizant of the Second Circuit's counsel that district courts should consider "lesser sanctions prior to precluding evidence as a sanction for discovery violations." However, given the late stage of this litigation, on the eve of trial with no credible explanation for the failure to timely disclose [the 2018 Inspection and 2019 Report] and the inherent prejudice that [Plaintiff] would suffer if Mr. [Balsamo] was allowed to testify, the Court concludes that no sanction other than preclusion is appropriate. As a result, [the County is] precluded from offering Mr. [Balsamo]'s testimony at trial in accordance with Fed. R. Civ. P. 37(c)(1).

315 F.R.D. 13, 18 (W.D.N.Y., 2016) (quoting Coene, 303 F.R.D. at 42 (citing Outley v. City of N.Y., 837 F.2d 587, 591 (2d Cir. 1988)).

### 3.    Plaintiff's Alternative FRE 702 Request

The County produced Balsamo's revised 2024 Report on August 5, 2024, but did not make Balsamo available for deposition until September 2024.  Relying upon FRE 702 and asserting "Balsamo's opinions are not based on any recognized methodology or reliable basis," Plaintiffs also ask that Balsamo not be permitted to testify.  Plaintiffs highlight Balsamo did not visit the Facilities in preparing his 2024 Report, instead "limit[ing] his written opinions to critiques of Ms. Skipworth's observations and opinions."  (Balsamo MIL Support Memo at 7.)  Plaintiffs contend Balsamo's 2024 Report "reflects multiple deficiencies derived from [his] failure to apply any recognized methodology or approach that is either testable or supports his experience-based critiques", making "[h]is opinions and critiques . . . nothing more than his ipse dixit", thereby warranting exclusion.  (Id. at 10.)  More particularly, as to methodology, Plaintiffs complain about Balsamo's unjustified use of a 5% adjustment to certain of Ms. Skipworth's testing results, as a purported margin-of-error, and then using that 5% adjustment only in a manner that favored the County.  (See id. at 11.)  According to Plaintiffs, "By admitting he applied an adjustment inconsistently and without a factual basis

for doing so, Mr. Balsamo conceded that he did not follow a reliable or testable method when making these critiques of Ms. Skipworth, and his opinions should be excluded on that basis." (Id. at 12 (citing Rigel v. Medtronic, Inc., 451 F.3d 104, 127 (2d Cir. 2006) (upholding a district court's decision to exclude an expert where expert failed to provide an explanation as to how he reached his conclusion); further citation omitted).)

And, as to lack of factual foundation, Plaintiffs underscore that, for the 2024 Report, Balsamo "never made any personal observations of the conditions of the SCCF, and he did not state that he relied on any personal observations in rendering [his] opinions summarized in his . . . 2024 Report[]." Plaintiffs further underscore that Balsamo's 2019 Report—which was based on site visits—is inconsistent with his early 2017 Report. (See id.) Plaintiffs appear to theorize that, unlike in other instances where Balsamo based his opinions on site visits—including his 2019 Report--by not visiting the Facilities to prepare his 2024 Report, Balsamo would be able to avoid reaching results consistent Ms. Skipworth. (Id. at 12.) In sum, Plaintiffs contend Balsamo's opinions are unreliable since they are based upon unreliable analyses and lack factual support.

Plaintiffs provide examples of the unreliability of Balsamo's 2024 Report by category. As to lighting, Balsamo did not follow any particularized method, instead relying upon a

presumed 5% standard of error and applying it inconsistently, as well as rounding up observations without using fractions, which he conceded during his September 2024 deposition testimony was wrong. (See id. at 13-14.)    As to water temperatures, Balsamo made unfounded assumptions in rebutting Ms. Skipworth's observations, as well as adjusted various Skipworth-water-temperature-observations, which Balsamo did not do in his 2019 Report, where he recorded water temperatures registering below acceptable standards.    (See id. at 14 (citing 2019 Report).)    As to ventilation, among other things, while criticizing Ms. Skipworth for not using equipment that generated specific observations of airflow, Balsamo "conceded during deposition that his critique is not viable because he admitted that it is possible to make relevant observations of ventilation systems even without employing such equipment".    (Id. at 14-15 (noting further that, in his 2019 Report, Balsamo indicated humidity levels in inspected cells were high and "various cells and other areas in Riverhead lacked good air flow rates, consistent with Ms. Skipworth's opinion" (citing 2019 Report at 29-30)).)    As to mold, which Ms. Skipworth identified at the Facilities both by visual inspection and by collecting samples submitted for lab analysis, among other things, Balsamo "admitted that visual inspections to determine the scope of mold are important" and he never asked to review—nor did he—any of the Skipworth-related lab reports documenting mold

findings. (See id. at 15 (citing Balsamo's Sept. 2024 deposition testimony).) As to toilets and exposure to sewage, Balsamo acknowledged he had no basis for opining that inmate exposure to ping-pong toilets and sewage did not appear to be a real issue. (See id. at 15-16 (citing Balsamo's Sept. 2024 deposition testimony).) As to peeling paint and rust, while acknowledging these conditions, Balsamo "offered a baseless conclusion that these are not significant risks", despite his reaching an opposite conclusion for less serious conditions in reports he has prepared in other cases. (See id. at 16 (citing Balsamo's Sept. 2024 deposition testimony, and Workhouse Jail Report, Ex. 21, ECF No. 625-21, attached to Klebanoff Omnibus Decl.).) As to vermin, inter alia, Balsamo acknowledged he did not know the frequency with which exterminators visited the Facilities and his opinion was based solely upon the Skipworth Report, including reviewing photographs included therein. (Id. at 16 (citing Balsamo's Sept. 2024 deposition testimony).) As to food safety, "Balsamo conceded that he has no evidence as to whether the steps he believes should be taken to improve food safety and sanitation have been implemented". (Id. (citing Balsamo's Sept. 2024 deposition testimony).) Finally, as to leaks, notwithstanding his irrelevant comment regarding repairs, Balsamo conceded Ms. Skipworht's observations about leaks were valid. (See id. (citing Balsamo 2024 Report)).

In opposition, the County contends Balsamo will: first, critique the equipment used by Ms. Skipworth and her supposedly not properly calibrating said equipment; second, explain the differences between standards used to assess correctional facilities; and third, provide point-by-point responses to Ms. Skipworth's observations. (See Balsamo MIL Opp'n at 4.) The County maintains that Balsamo's opinions satisfy the Daubert requirements since they rest on a reliable foundation and are relevant to the issue at hand. (Id. at 5 (quoting In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II), 982 F.3d 113, 122-23 (2d Cir. 2020)).)

The County puts forth three main arguments for its position. First, according to the County, "Balsamo's methodology was to compare Ms. Skipworth's observations to the relevant standards published by the APHA, ACA, and other bodies", the use of which "is generally accepted by sanitarians." (Id. at 6 (citation omitted).) Second, as to the 5% margin of error employed by Balsamo, which Plaintiffs contend was not used in a reliable manner, i.e., it was applied in a biased manner favoring the County, the County asserts issues of bias are best addressed in cross-examination and not a Daubert motion. (See id. (citing B&R Supermarket, Inc. v. Visa Inc., No. 17-CV-2738, 2024 WL 4252031, at *26 n.24 (E.D.N.Y. Sept. 25, 2024)).) Third, the County maintains, given Balsamo's 55 years of relevant experience and his

having applied universally accepted standards for prison conditions, Balsamo's vast experience "makes it possible for [him] to evaluate whether Ms. Skipworth's observations constitute violations of the relevant standards without relying upon his own observations."[3] (Id. at 7.)

Honorable Margo K. Brodie, Chief District Judge of this District, has recently thoroughly articulated the FRE 702 standard for determining the admissibility of expert testimony, which this Court adopts and incorporates by reference herein. See B&R Supermarket, 2024 WL 4252031, at *2-3. For convenience, the Court reiterates, here, that the party putting forth expert testimony carries the burden of establishing by a preponderance of the evidence its admissibility. See United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007); see also United States v. Jones, 965 F.3d 149, 161 (2d Cir. 2020) ("While the proponent of expert

---

[3] The Court notes – other than generally addressing the calibration of equipment, the application of standards and Balsamo's application of a 5% margin-of-error, and Balsamo's comparison of Ms. Skipworth's observations with published guidelines – the County failed to address the specific topics covered by Ms. Skipworth in her Report and addressed by Plaintiffs' in their opening brief. (Compare Balsamo MIL Support Memo at 13-16 (specifically addressing: lighting; water temperatures; ventilation; mold; toilets and exposure to sewage; peeling paint and rust; vermin; food safety; and leaks), with Balsamo MIL Opp'n at 4 (highlighting issues regarding vermin and ventilation).) Indeed, Plaintiffs argue the County "does not even bother to defend the majority of Mr. Balsamo's opinions" and, therefore, such undefended opinions "are inherently unreliable" and "should be precluded." (Reply at 6.) The Court finds this argument persuasive.

testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, . . . the district court is the ultimate gatekeeper." (alteration in original) (quoting Williams)); United States v. Gentile, No. 21-CR-0054, 2024 WL 3455834, at *2-3 (E.D.N.Y. July 17, 2024) (stating FRE 702 standard).

Here, even assuming arguendo Balsamo is qualified as an expert and notwithstanding valid challenges to the purported reliability of Balsamo's methodology and data, the County cannot satisfy its FRE 702 burden because it has failed to demonstrate Balsamo's testimony will assist the trier of fact in understanding Ms. Skipworth's observations. See, e.g., B&R Supermarket, 2024 WL 4252031, at *3 (stating, to permit a person to testify as an expert pursuant to FRE 702, a court must find: "(1) the witness is qualified to be an expert; (2) the opinion is based upon reliable data and methodology; and (3) the expert's testimony on a particular issue will "assist the trier of fact" (quoting Nimely v. City of N.Y., 414 F.3d 381, 396-97 (2d Cir. 2005); collecting cases)). As the Plaintiffs' persuasively argue: "[I]t does not require expert testimony to compare Ms. Skipworth's measurements with the measurements prescribed by guidelines. Such testimony is simply not the proper subject of expert testimony." (Balsamo MIL Reply at 7; see also id. ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not

capable of understanding on his or her own." (quoting <u>United States v. Mejia</u>, 545 F.3d 179, 194 (2d Cir. 2008)), further citation omitted)).)  The Court agrees; there is nothing in the record to dissuade the Court from finding that "[t]he jury is capable of understanding without Mr. Balsamo's assistance whether a particular measurement recorded by Ms. Skipworth falls above or below a published threshold." (<u>Id.</u> (collecting cases).)  Moreover, as aptly asserted by Plaintiffs, there can be little doubt that "the County will surely flag how Ms. Skipworth's observations compared to published thresholds when cross examining her," thereby "making any such testimony from Mr. Balsamo superfluous." (<u>Id.</u> at 8 (citing, <u>Luitpold Pharm.</u>, 2015 WL 5459662, at *3 ("Rule 403 is as applicable to expert testimony as it is to percipient witnesses or other evidence . . . ."); FRE 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time . . . .")).)  Accordingly, on this alternative basis, the Court finds preclusion of Balsamo's testimony is warranted.

IV.  <u>The SE-MIL</u>

    A.  <u>Plaintiffs' Position</u>

       The instant SE-MIL motion involves Plaintiff's expert's use of sampling as a means of of establishing that the conditions observed by her in the Facilities, in her restricted access to said Facilities, which restricted access was at the insistence of

the County, are representative of the conditions throughout the Facilities. (See SE-MIL Support Memo at 1.)  Plaintiffs highlight the Court agreed that Plaintiffs' "random sampling methodology was the generally appropriate means to assess conditions within the SCCF," notwithstanding its limiting that approach. (See id. at 1 (citing Sept. 4, 2015 Hr'g Tr., ECF No. 417).)  Thus, Plaintiffs contend, since the County insisted Plaintiff's replacement expert, Ms. Skipworth, be bound to this approach, it "cannot now be permitted to argue that the sampling evidence Plaintiffs have collected is not representative of the conditions in the SCCF or insufficient for extrapolation throughout the SCCF on the basis of an insufficient sample." (Id. at 1-2.)  Indeed, the Plaintiff underscores the County insisted Ms. Skipworth be restricted to inspecting only the precise areas previously inspected by Plaintiff's prior expert, Mr. Pepper, which scope-of-inspection the Court endorsed. (See ECF No. 571 (Joint Mot. Compel); ECF No. 572 (AYS Order).)  The Court maintained this limited scope-of-inspection even after Plaintiffs sought an expansion "due to irregularities suggesting the County had deliberately attempted to obfuscate the true state of conditions within the SCCF ahead of inspections." (Id. at 2 (citing, inter alia, ECF No. 578 (Pls.' Mot. Compel); ECF No. 581 (AYS Denial Order[4])).)

---

[4]   Among other things, Magistrate Judge Shields ruled:  "Any observations made by Plaintiffs' expert that indicate maintenance

Plaintiffs rely upon the Supreme Court's decision in Tyson Foods, Incorporated. v. Bouaphakeo, in which the High Court instructed: "A representative sample may be used to establish classwide liability." 577 U.S. 442, 460 (2016); (see also SE-MIL Support Motion at 3 (quoting Tyson Foods)). In that vein, Plaintiffs explain: (1) Ms. Skipworth assessed "the precise sample of cells" that Mr. Pepper sampled in his inspection; (2) Mr. Pepper "explained the basis and validity of his sampling selection" in his Report (SE-MIL Support Motion at 3 (citing Pepper Report at 4-5)); and (3) using a sampling methodology is the same "approach taken by the County's own expert in other cases." (Id. (citing Ex. 20, ECF No. 625-20, 8, 24, 29 (Balsamo's Inspection Report for a Missouri medium security correction facility, for which inspection Balsamo used sampling), attached to Klebanoff Omnibus Decl.).) Given this background, Plaintiffs argue the County should not "be heard to argue that Plaintiffs' sample was deficient to its purposes in any way." (Id. (citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an

_____

or painting conducted just prior to the inspection can be referenced in Plaintiffs' expert report, along with any other observations. Subject to the rulings of the District Court, the finder of fact will be allowed to make any appropriate inferences that flow from such observations." (ECF No. 581 at 1.)

incompatible theory." (quoting WRIGHT & MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 4477))).)   Likewise, Plaintiffs contend the County should not be able to suggest to the jury that Ms. Skipworth's findings cannot be extrapolated to apply to the Facilities as a whole or that her samplings are insufficient.   (See id.)

　　　B.　The County's Position

　　　　　In opposition, the County asserts it "does not plan to argue that Ms. Skipworth's observation of only select areas of the SCCF was not sufficient," but it argues against the "Plaintiffs' position that Ms. Skipworth should be able to testify that her findings can be 'extrapolated' throughout the SCCF." (SE-MIL Opp'n at 1; see also id. at 4 ("The County does not intend to re-argue the issue regarding the parameters of the inspection, nor do they [sic] intend to contest the sampling method that Plaintiffs' new expert, Ms. Skipworth[,] employed . . . .").)   Therefore, the County requests Ms. Skipworth's testimony be limited to "only the areas of the SCCF that she observed and inspected."   (Id.)

　　　　　The County's opposition is premised upon the contention that courts are to exclude expert testimony which is speculative or conjectural or which is based upon unrealistic assumptions or is contradictory.   (See id. at 4.)   More specifically, the County argues that to allow Ms. Skipworth to testify regarding areas of the Facilities she did not personally observe or inspect "and claim that those un-inspected areas are all the same as the areas she

Page 36 of 40

did inspect" is tantamount to mere conjecture and speculation. (Id. at 5.)    Therefore, according to the County, such testimony should be excluded.   (See id. (citations omitted).)   Similarly, testimony inviting "the jury to speculate is the type of improper expert testimony that should be excluded."    (Id. (citation omitted).)    The County further advances the argument that an expert's testimony must be based upon sufficient facts or data, as another reason to limit Ms. Skipworth's testimony to only the areas she inspected.   (See id. at 6 (citing FRE 702(b); further citation omitted).)

C.   The Court's Ruling

As persuasively articulated by Plaintiffs, "[b]y arguing Ms. Skipworth cannot opine on areas in the SCCF she did not directly observe, the County is effectively seeking to challenge the adequacy of Ms. Skipworth's sample" (SE-MIL Reply at 2); however, since the County does not contest the adequacy of the sample, it must be precluded from challenging extrapolation from said sample.   (See id.)   The Court agrees.

If the County had challenged the sufficiency of Ms. Skipworth's sample, which, given its insistence on having the scope-of-inspection contained, it could not do in good faith, then there might be a basis to challenge the sufficiency of the facts or data in the Skipworth Report.   See FRE 702(b).   But, the County's concession to the sufficiency of Ms. Skipworth's sample (see, e.g.,

SE-MIL Opp'n at 1 ("The County does not plan to argue that Ms. Skipworth's observations of only select areas of the SCCF was not sufficient."), negates this basis to object.  Indeed, as astutely put forth by Plaintiffs:  "When a sample is representative of the greater population, 'data from the sample can be extrapolated to describe the characteristics of that population'" since "'the very purpose of creating a representative sample of sufficient size is so that, despite the unique characteristics of the individual members populating the underlying population, the sample is nonetheless reflective of the proportion of the individual members in the entire population exhibiting any given characteristic.'" (SE-MIL Reply at 2-3 (first quoting David H. Kaye & David A. Freedman, Reference Guide on Statistics, in FED. JUD. CTR., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, at 226-27 (3d ed. 2011), available at https://www.fjc.gov/sites/default/files/2015/    SciMan3D01.pdf.; then quoting Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) (cites cleaned up)).) Accordingly, Plaintiffs' request for a protective order precluding the County "from challenging Plaintiffs' experts on the basis that the sampling approach they employed . . . was deficient and does not establish that the observed conditions are representative of the conditions throughout the Suffolk County Correctional Facilities" (SE-MIL Motion) is GRANTED.  Finally, as Plaintiffs themselves state, granting this Motion in no way restricts the

County from "challeng[ing] whether Ms. Skipworth's observations are accurate and whether they support the conclusions she draws from them." (SE-MIL Reply at 1.)

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED:**

**I.**      The <u>Motion *In Limine* Regarding Plaintiffs' Witnesses' Personal Histories and Presentation In Court</u> (ECF No. 615) is **GRANTED in part and DENIED in part**. As more fully explained herein, for the portion of the MIL that is GRANTED, the following categories of evidence are precluded:

A.    juvenile adjudications;

B.    histories of substance abuse;

C.    prison disciplinary histories;

D.    misdemeanors more than ten years old;

E.    felony convictions more than ten years old;

F.    the Subject Witnesses' conviction statuses; and

G.    incarceration jackets.

To the extent the Court reserves decision regarding the following categories of evidence:

H.    misdemeanors less than ten years old;

I.    felony convictions less than ten years old; and

J.    prior bad acts,

(hereafter, the "Crimes & Bad Acts Evidence"), for administrative purposes, the MIL is deemed DENIED in part; however, <u>said denial</u>

is without prejudice.  If the County seeks to use any Crimes & Bad Acts Evidence, Plaintiffs may move for preclusion.  After hearing the Parties' arguments, the Court will render its ruling(s).  In conjunction with this ruling, **by no later than Monday, February 10, 2025, at 9:00 a.m.,** the County is to file a document[5] (in table format) identifying: (1) each of the Subject Witnesses for which it seeks to use any Crimes & Bad Acts Evidence; and (2) for each Subject Witness: (a) a brief description of each specific Crimes & Bad Acts Evidence sought to be introduced, including, the date of occurrence, as well as (b) the proposed basis its admission;

**II.**      The Motion *In Limine* To Preclude James Balsamo's Testimony (ECF No. 619) is GRANTED; and

**III.**      The Motion *In Limine* on Sampling Evidence (ECF No. 621) is GRANTED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    February 5, 2025
          Central Islip, New York

---

[5]   The County is advised to use the "Witness List" event when filing this document to ensure it is restricted to court users and case participants.